ORIGINAL

VAN VLECK TURNER & ZALLER LLP
    Brian F. Van Vleck, State Bar No. 155250
    Daniel J. Turner, State Bar No. 207654
6310 San Vicente Boulevard, Suite 430
Los Angeles, California 90048
Telephone: (323) 592-3505
Facsimile: (323) 592-3506

Attorneys for Plaintiff
William H. Gradie

**FILED**
Superior Court of California
County of Los Angeles

APR 20 2016

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Shaunya Bolden

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

BC 617647

| | |
|---|---|
| WILLIAM H. GRADIE, Individually and on behalf of all others similarly situated | CASE NO: |
| Plaintiff, | **CLASS ACTION** |
| vs. | **COMPLAINT FOR UNPAID WAGES** |
| C.R. ENGLAND, INC., and DOES 1 through 100 inclusive | (1) **UNLAWFUL DEDUCTIONS FROM WAGES** |
| Defendants. | (2) **UNPAID MINIMUM AND OVERTIME WAGES** |
| | (3) **MISREPRESENTATION** |
| | (4) **FAILURE TO PROVIDE OFF-DUTY MEAL BREAKS** |
| | (5) **FAILURE TO PROVIDE OFF-DUTY REST BREAKS** |
| | (6) **FAILURE TO ISSUE ACCURATE ITEMIZED PAY STATEMENTS;** |
| | (7) **FAILURE TO TIMELY PAY WAGES DUE** |
| | (8) **USURY** |
| | (9) **UNLAWFUL AND UNFAIR COMPETITION (UCL)** |
| | (10) **LABOR CODE PRIVATE ATTORNEY GENERAL ACT (PAGA)** |

CLASS ACTION COMPLAINT

CIT/CASE:
LEA/DEF#:        BC617647

RECEIPT #:       CCH465980045
DATE PAID:       04/20/16
PAYMENT:         $1,000.00
RECEIVED:                    12:02 PM
                                310
    CHECK:       $1,000.00
    CASH:        $0.00
    CHANGE:      $0.00
    CARD:        $0.00

CIT/CASE:
LEA/DEF#:        BC617647

RECEIPT #:       CCH465980045
DATE PAID:       04/20/16
PAYMENT:         $435.00
RECEIVED:                    12:02
                                310

Van Vleck
Turner & Zaller, LLP

Plaintiff William H. Gradie ("Plaintiff"), on behalf of himself and all others similarly situated (collectively "Plaintiffs" or the "Class"), hereby files this Complaint against C.R. England, Inc. ("Defendant" or "CRE"), and DOES 1-100, (collectively, "Defendants").  Plaintiff is informed, believes and alleges as follows:

## THE PARTIES

1.     Plaintiff was formerly employed by Defendants as a driver in Los Angeles County, and has resided in California at all times relevant hereto.

2.     Defendant C.R. England is a corporation engaged in various trucking related businesses including a for-profit training program and a related interstate transportation business. At all times relevant hereto, Defendant has done business throughout the State of California.

3.     At all times mentioned herein, Defendants were acting as an individual, corporate, affiliate, employer, employee, supervisor, agency, associate aider and abetter and/or alter ego of each remaining Defendant, and were acting with permission and consent of each other, and within the course and scope of said agency and/or employment.  On information and belief, Defendants, and each of them, acted as joint employers, alter egos, and an integrated enterprise, and jointly exercised control over the employment practices alleged herein.  On information and belief, Defendants, by and through their officers, directors or managing agents, ratified, authorized and approved, expressly or impliedly, all of the conduct alleged hereinafter.

4.     Does 1 through 100, inclusive, are sued as fictitious names since their true names and capacities are unknown to Plaintiff.  When their true names and capacities are ascertained, Plaintiff will amend the Complaint to state the same.  On information and belief, some of the fictitiously named defendants are officers, directors, employees and/or agents of Defendants.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court by virtue of California statutes, decisional law, and regulations.  Venue in this Court is proper in that Los Angeles is the county in which the cause, or some part of the cause, arose, pursuant to Cal. Civ. Proc. Code § 393.

VAN VLECK
TURNER & ZALLER, LLP

## CRE'S UNLAWFUL EMPLOYMENT PRACTICES

6.     CRE advertised throughout California and the nation in order to induce applicants to relocate to Fontana, California (and other locations) in order to enroll in its for-profit, in-house "premier truck driving school" (the "CRE Training Program"). CRE induced applicants by representing that if they would travel to Fontana CA and enroll in the Training Program they would be provided with a "guaranteed job" as a well-paid, full-time truck driver.

7.     The material true facts regarding the nature of the work, which CRE deliberately failed to disclose, were that:

   a.   The approximately $5,175 which CRE charged for its 17-day Training Program was far above its actual cost for the program.

   b.   The business objective of the Training Program was not to prepare drivers for long term employment with CRE. Instead, the Training Program was designed and run as an independent profit-making enterprise. CRE's profit in the transaction was generated not by its continued employment of its own trainees, but rather by the volume of aspiring drivers which it could charge for its Training Program.

   c.   CRE did not intend to treat the applicant's job as "guaranteed" or even terminable only for good cause. In fact, notwithstanding its representations and the drivers' substantial financial investment in their employment, CRE always intended to, and did, treat the drivers' employment as terminable at-will.

   d.   In fact, CRE's for-profit Training Program churned out far more student drivers than it could ever actually employ. As a result, CRE had to actively find ways to cull the ranks of its drivers and to replace them with more profitable paying applicants.

   e.   As a result, far from having a "guaranteed job," virtually all of the drivers who pay to complete the Training Program are destined to have their employment terminated within less than a year.

   f.   In anticipation of this treatment, upon arriving at Fontana, drivers were required as a mandatory condition of employment to execute a series of unconscionable legal

documents, which they had little or no opportunity to read or comprehend. These included:

    i.  An illegal purported waiver of the driver's right to enforce the provisions of California law against CRE.

    ii.  An illegal agreement to work as an indentured worker who would be obligated to pay CRE a penalty or "liquidated damages" of approximately $2,500 as the price of leaving employment with CRE.

    iii.  An illegal agreement to refrain from working for any competitor of CRE for a period of at least nine months.

    iv.  An illegal agreement allowing CRE to accelerating the payment of principal owed for the Training Program and to assess penalties, wage deductions, and usurious interest payments in the event the driver's employment is terminated.

    g.  CRE further failed to disclose that drivers would be expected to work without legally required off-duty meal breaks and paid rest breaks.

    h.  CRE further failed to disclose that drivers would be required to work numerous hours without any compensation or for compensation below the applicable minimum wage rate.

8.    Plaintiff and other members of the Class were employed pursuant to an agreement substantially similar to the "C.R. England, Inc. Driver Education and Employment Contract," (the "Employment Contract"), and attached hereto as Exhibit "A."

9.    Under the stated terms of this contract, CRE claimed that it would provide a guaranteed job to Plaintiff. Plaintiff, however, was effectively required to "buy" this job opportunity from CRE by agreeing to the following illegal and unconscionable terms:

    a.  Plaintiff was required to pay CRE approximately $5,175, which CRE represented as the cost of its in-house job training program (which CRE refers to as the "Premier School").

b. Plaintiff was required to work exclusively for CRE for at least nine months, at the compensation rate and terms set by CRE.

c. Plaintiff was required to pay a penalty or "liquidated damages" of $2,500 to CRE in the event his employment was terminated by CRE, or if he resigned his employment prior to the nine-month period.

d. Plaintiff was required to agree that CRE could deduct these "liquidated damages" from any of his compensation which was earned but unpaid at the time of the termination of his employment.

e. Plaintiff, a California resident who was recruited, hired, trained, and based in California, was required to waive any right to pursue the protections of California labor law.

10. As a further part of the employment agreement, CRE required Plaintiff to execute a Promissory Note in favor of "CR England dba Premier Truck Driving School," a copy of which is attached hereto as Exhibit "B." This Promissory Note, included the following misleading, illegal, and unconscionable terms:

a. The Promissory Note failed to include the applicable annual percentage rate and finance charge applicable to the balance of the borrowed funds as part of the Special Regulation Z Disclosures Box contained in the Note.

b. The actual rate of interest was to be 18%, compounded daily, which is far in excess of the maximum rate permitted by California law.

c. The Promissory Note purported to allow CRE to make self-help deduction for repayment of the Note from any amounts owed to Plaintiff by CRE, in violation of applicable debt collection and labor laws.

d. The Promissory Note falsely represented that "if I complete the term of my employment with C.R. England, C.R. England will satisfy this note in its entirety on my behalf."

11. Following Plaintiff's execution of the Employment Contract, CRE required Plaintiff to perform numerous forms of work without compensation, including:

CLASS ACTION COMPLAINT

VAN VLECK
TURNER & ZALLER, LLP

a.  Completing CRE's in-house driver training program;

b.  Completing CRE's orientation and new-hire paperwork;

c.  Completing CRE's road driving evaluation;

d.  Completing the mandatory DOT physical examination, drug test, and other requirements for beginning employment with CRE in compliance with the Employment Contract;

12.  Following Plaintiff's execution of the Employment Contract with CRE, CRE deducted substantial sums from Plaintiff's compensation and required him to personally pay required out-of-pocket costs which were reasonably necessary to comply with the terms of the Employment Contract, including:

a.  Deductions from Plaintiff's earned compensation of approximately $550 per month as repayment of "tuition" for CRE's in-house work training program.

b.  Requiring Plaintiff to directly pay for the costs of the required drug test, physical examination, the cost of obtaining the Commercial Driver's License ("CDL"), and other costs which were reasonably required in order to comply with the terms of his Employment Contract.

13.  During Plaintiff's employment, CRE did not maintain any policy to provide Plaintiff with at least one 30-minute, uninterrupted, off-duty meal break for each continuous work period of at least five hours. Nor did CRE maintain any policy that authorized or permitted off-duty rest breaks of at least 10-minutes for each four hours of work, or major fraction thereof.

14.  During his employment, Plaintiff was also subject to CRE's uniform policy and practice of failing to provide accurate itemized pay statements setting forth, *inter alia,* all hours worked and all applicable rates of pay.

15.  From the time he executed the Employment Contract until his termination by CRE Plaintiff performed all material terms of the Employment Contract, even including the requirements to perform uncompensated work and the requirement that he personally pay necessary, work-related expenses.

CLASS ACTION COMPLAINT

VAN VLECK
TURNER & ZALLER, LLP

16.   CRE promised according to the terms of the Employment Contract that it would not terminate Plaintiff's employment except upon a showing of "Due Cause," defined as a breach of Employment Contract by Plaintiff, a breach of CRE's Driving Manual, or a violation of law. However, notwithstanding this promise CRE knew at the time it entered into the contract that its true policy was to deem Plaintiff's employment to be terminable at-will without any requirement of good cause.

17.   In approximately October, 2015, following an incident in which one of CRE's vehicle's suffered an equipment malfunction due to no fault of Plaintiff, CRE terminated Plaintiff's employment without any good faith finding of "Due Cause."

18.   Despite the absence of any finding of "Due Cause" for the termination of Plaintiff's employment, CRE nevertheless deducted $2,500 in alleged "liquidated damages" from his earned compensation.

19.   CRE also did not issue any final pay statement immediately upon Plaintiff's termination as required by California law. Instead, it willfully waited until at least its next regularly scheduled pay day to issue his final pay statement. Plaintiff's final pay upon termination was therefore both untimely calculated as well as never paid in full due to the improper deductions taken by CRE.

20.   As a result of CRE's failure to pay for all hours worked, its methods of calculating compensation due, its deductions from the wages actually earned by Plaintiff, and its failure to reimburse necessary employment-related expenses, Plaintiff consistently earned less than the applicable California and federal minimum wage for all hours worked during his employment.

**CLASS ALLEGATIONS**

21.     This action is being brought on behalf of Plaintiff and all others similarly situated (collectively, "Plaintiffs" or "the Class"), as a class action pursuant to California Code of Civil Procedure section 382.

22.     Plaintiff thus seeks to represent a class of similarly situated California Drivers (i.e., drivers who were residents of California, who completed CRE's driver training program in California, or who performed substantial compensable work in California), who worked for CRE during the applicable four-year statute of limitations.

23.     Plaintiff reserves his right under Rule 3.765 of the California Rules of Court to amend or modify the Class description with greater specificity or by further division into subclasses or limitation to particular issues.

24.     Plaintiff is a member of the Class he seeks to represent and is the proposed representative of the Class in the present litigation.

25.     While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the class is readily ascertainable from the records Defendant is required to keep by law.  Plaintiff is informed and believes that the Class is sufficiently numerous that individual joinder of all members is impractical and the resolution of the claims alleged through the class action procedure will be beneficial to the parties and the court.

26.     Plaintiff will fairly and adequately represent the interests of the Class which he proposes to represent.  Plaintiff is an adequate representative as he has no interests which are adverse to the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and, to that end, has retained counsel who is competent and experienced in handling employment-related class action litigation.

27.     The claims of Plaintiff are typical of the claims of the other members of the Class because Plaintiff and each member of the Class have been subjected to the same systemic violations of their statutory rights and, as a result, have been denied the same types of wages and benefits required by law.

VAN VLECK
TURNER & ZALLER, LLP

CLASS ACTION COMPLAINT

28.     Common questions of law and fact exist as to the claims of the members of the Class.  Such common questions predominate over the questions, if any, which affect only individual members.  Such common questions include, but are not limited to:

a.  Whether Defendants followed a consistent policy and practice of imposing unlawful wage deductions and payment of expenses by, *inter alia*: requiring class members to pay out of their own pockets for CRE's own internally-mandated training program; requiring class members to patronize CRE's own for-profit training and finance program; and deducting from wages for training costs, alleged "liquidated damages," usurious interest rates, and other sums supposedly owed to CRE.

b.  Whether Defendants failed to pay any wages for the substantial numbers of compensable hours worked by class members completing employer-mandated training programs, and waiting for assignments.

c.  Whether Defendants made false representations to relocating class members that: (a) the actual out-of-pocket cost to CRE for its training was in excess of $5,000; (b) full-time work would be "guaranteed" by CRE for at least the mandated nine-month term of employment; (c) that during this "guaranteed" employment period their employment would not be terminable "at will" on the same basis as other CRE employees, but rather would be terminable only for demonstrated "good cause"; and (d) that CRE would fully pay the cost of training on their behalf and thereby cause the Promissory Note to be satisfied and discharged upon completion of their nine-month term of employment.

d.  Whether Defendants failed to discharge their legal duty to provide off-duty meal and rest periods as required by California law.

e.  Whether Defendants failed to provide accurate, itemized wage statements to the Class.

f.  Whether Defendants failed to immediately pay all wages owed to class members upon termination of their employment.

CLASS ACTION COMPLAINT

8

g.  Whether Defendants charged usury interest rates in excess of 18% to members of the class pursuant to the terms of Promissory Notes which they were required to execute to obtain employment with CRE.

29.  A class action is superior to other available methods of adjudicating the claims asserted in this action for reasons including, but not limited to:

a.  The expense and burden of individual litigation make it economically unfeasible for each member of the Class to seek a separate, individual remedy;

a.  If separate lawsuits were brought individually by each member of the class it would cause undue hardship and expense to the Court and litigants by necessitating multiple trials of similar factual and legal issues;

b.  The prosecution of separate individual actions would create the risk of inconsistent adjudications of similar factual and legal issues; and

c.  Absent a class action, there would be a failure of justice, as Defendants would retain the benefit of their illegal conduct and wrongdoing.

30.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole and necessitating that any other such relief be extended to the Class on a mandatory, class wide basis.

31.  Plaintiff is aware of no difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

32.  The names and addresses of many, if not all, of the members of the Class are available from Defendant's own records.  Notice can be provided to members of the Class via first class mail or otherwise using techniques and a form of notice similar to those customarily used in employment class actions under California law.

33.  In addition, Plaintiff intends to proceed with a representative action pursuant to the Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"). Plaintiff has provided notice of the violations of the Labor Code alleged herein to the Labor Workforce Development Agency as required by law.

CLASS ACTION COMPLAINT

## PLAINTIFFS' CAUSES OF ACTION

## FIRST CAUSE OF ACTION

UNLAWFUL DEDUCTIONS FROM WAGES

**(By Plaintiff and the Class against all Defendants)**

34.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

35.     Pursuant to California Labor Code Sections 221-223, 451(a), and 2802-2804, and Wage Order 9-2001, an employer may not: deduct from the wages of an employee; require the employee to patronize the employer's services; require employees to pay for amounts incurred in the course and scope of his employment; or shoulder the employer's normal costs and expenses of doing business.

36.     Notwithstanding these legal requirements, Defendants imposed unlawful deductions and expenses upon Plaintiff and the Class by, inter alia: requiring class members to pay out of their own pockets for CRE's own mandated training program; requiring class members to patronize CRE's own for-profit training and finance programs; requiring class members to incur wage deductions for training costs, "liquidated damages," usurious interest, and other sums supposedly owed to CRE.

37.     As a result, Plaintiffs are entitled to damages and restitution under the Labor Code, as well as the California Unfair Competition Law ("UCL"), for all wrongfully withheld and deducted amounts; and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e); 226.3, 256; 432.5, 450, 558, 1194.2, 1197, 1197.1, 1198, and 2699 et seq.

## SECOND CAUSE OF ACTION

UNPAID MINIMUM AND OVERTIME WAGES

**(By Plaintiff and the Class against all Defendants)**

38.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

CLASS ACTION COMPLAINT

VAN VLECK
TURNER & ZALLER, LLP

39.     Pursuant to California Labor Code Sections 1182.12, 1194, and Wage Order 9-2001, Section 4, an employer is required to pay no less than the mandated minimum wage for each hour of compensable time worked.  Compensable time includes all hours during which the employee is performing labor for the benefit of the employer or during which he is subject to the control of the employer.

40.     Labor Code Sections 510(a), 1194, and Wage Order 9-2001, Section 3, require that an employer must compensate such hours worked at premium overtime rates to the extent they exceed eight hours in a day or 40 hours in a week.

41.     Notwithstanding these legal requirements, Defendants failed to pay any wages for substantial numbers of compensable hours worked by Plaintiff and the Class, including time spent completing employer-mandated training programs, and time spent waiting for assignments.

42.     As a result, Plaintiff and the Class are entitled to damages and restitution under the Labor Code, as well as the California Unfair Competition Law ("UCL"), for all wrongfully withheld and deducted amounts; and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1194.2, 1197, 1197.1, 1198, and 2699 et seq.

### THIRD CAUSE OF ACTION

<u>MISREPRESENTATION IN VIOLATION OF LABOR CODE SECTION 970</u>

**(By Plaintiff and the Class against all Defendants)**

43.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

44.     Pursuant to California Labor Code Sections 970-972, an employer may not directly or indirectly, influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, based on false representations regarding the kind, character, or existence of such work.

45. Notwithstanding these legal requirements, Defendants persuaded and engaged Plaintiff and other members of the class to relocate to, and remain in, Fontana, California, on the basis of misrepresentations regarding the nature of the work they could expect to receive from CRE. These knowingly false misrepresentations included, inter alia: (a) that the actual out-of-pocket cost to CRE of their training was in excess of $5,000; (b) that full-time work would be "guaranteed" by CRE for at least the mandated nine-month term of employment; (c) that during this time their employment would not be terminable "at will" on the same basis as other CRE employees, but rather would be terminable only for demonstrated "good cause"; and (d) that CRE would fully pay the cost of training on their behalf and thereby cause the Promissory Note to be satisfied and discharged upon completion of their nine-month term of employment.

46. As a result of Defendants conduct, Plaintiff and the Class are entitled to recover damages, back pay, front pay, liquidated damages, and restitution under the Labor Code; as well restitution and disgorgement under the California Unfair Competition Law ("UCL"), for all amounts wrongfully obtained by CRE; and for recovery of all statutory penalties authorized by law, including civil penalties under Labor Code §§ 558, 972, and 2699 et seq.

## FOURTH CAUSE OF ACTION

### FAILURE TO PROVIDE OFF-DUTY MEAL BREAKS
### OR PREMIUM PAY IN LIEU THEREOF
**(By Plaintiff and the Class against all Defendants)**

47. Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

48. Pursuant to California Labor Code Section 512 and Wage Order 9-2001, section 11, an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, during which time the employee must be fully relieved of all duty. Pursuant to Labor Code section 226.7 and Wage Order 1-2001, sections 11(b), each failure to provide the specified meal period entitles the employee to receive an additional compensation premium equal to one hour of pay.

CLASS ACTION COMPLAINT

12

Van Vleck
Turner & Zaller, LLP

49.     Notwithstanding these legal requirements, Defendant failed and refused to affirmatively authorize and permit off-duty meal breaks or to pay the premium compensation due as a consequence of requiring Plaintiffs to work without legally compliant off-duty break periods.

50.     As a result, Plaintiffs are also entitled to restitution of all earned but unpaid premium wages under the California Unfair Competition Law ("UCL"), and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE OFF-DUTY REST BREAKS OR
### PREMIUM PAY IN LIEU THEREOF

**(By Plaintiff and the Class against all Defendants)**

51.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

52.     Pursuant to Wage Order 9-2001, section 12, every employer shall authorize and permit all employees to take rest periods, at the rate of 10 minutes of rest per four hours of work, or major fraction thereof. Pursuant to Labor Code section 226.7 and Wage Order 9-2001, section 12(b), each failure to provide the specified rest period entitles the employee to receive an additional compensation premium equal to one hour of pay.

53.     Notwithstanding these legal requirements, Defendant failed and refused to affirmatively authorize and permit off-duty rest breaks or to pay the premium compensation due as a consequence of requiring Plaintiffs to work without legally compliant off-duty break periods.

54.     As a result, Plaintiffs are also entitled to restitution of all earned but unpaid premium wages under the California Unfair Competition Law ("UCL"), appropriate injunctive and declaratory relief, and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

CLASS ACTION COMPLAINT

VAN VLECK
TURNER & ZALLER, LLP

## SIXTH CAUSE OF ACTION

<u>FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS</u>

**(By Plaintiff and the Class against all Defendants)**

55.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

56.     Labor Code Sections 226(a), 1174, and Wage Order 9-2001, Section 7(B), also require that Defendants shall record certain data, and provide its California employees with accurate, itemized statement showing, inter alia, "total hours worked by the employee," "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis," and "the name and address of the legal entity that is the employer."

57.     Notwithstanding this requirement, Defendant conformed to a consistent policy and practice whereby it failed and refused to provide itemized wage statements containing an accurate itemization of the required data.

58.     As a result of this conduct Plaintiff and the class have been injured and are entitled to recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

## SEVENTH CAUSE OF ACTION

<u>FAILURE TO PROVIDE TIMELY WAGE PAYMENTS</u>

**(By Plaintiff and the Class against all Defendants)**

59.     Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 33, as though fully set forth herein.

60.     Labor Code section 200 provides that commissions constitute a form of earned wages.  Labor Code § 204 requires that earned wages "are due and payable twice during each calendar month" and must be distributed at regular scheduled paydays.  Labor Code §§ 201-203 require that all earned wages are due and payable "immediately" upon termination of employment,

CLASS ACTION COMPLAINT

1  except upon resignation with less than 72 hours' notice, in which case all wages are due within 72

2  hours of resignation.

3      61.    Notwithstanding these provisions of law, Defendant's consistent policy and practice

4  was to delay the payment of earned wages until weeks or months after the wages had been earned.

5  Even where an employee's employment was terminated, Defendant failed to accelerate the

6  payment of such earned wages as required by law and also failed to pay all wages due.

7      62.    As result, Defendant has consistently violated the provisions of Labor Code sections

8  200-204 as to Plaintiff and the Class, who are thereby entitled to seek recovery of all authorized

9  penalties, including penalties under Labor Code sections 203, such other legal and equitable

10  remedies as are provided by law, of all derivative statutory and civil penalties thereby triggered and

11  authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223,

12  225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

13

14  **EIGHTH CAUSE OF ACTION**

15  **USURY**

16  **(By Plaintiff and the Class against all Defendants)**

17      63.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1

18  through 33, as though fully set forth herein.

19      64.    The California Constitution, Article XV, Section 1, and Civil Code §§ 1912, et seq.,

20  set the maximum rate of interest at 10% per annum for loans of money used primarily for personal,

21  family, or household purposes, such as loans used to pay for educational and vocational training

22  expenses.

23      65.    Notwithstanding these provisions of law, Defendants' consistent policy and practice

24  was to require Plaintiff and the Class to pay interest of 18% or more on the outstanding balances of

25  the Promissory Notes which they were required to execute as a condition of their training and

26  employment.

27      66.    As result, Defendant has consistently violated the provisions of the California usury

28  law as to Plaintiff and the Class, who are thereby entitled to seek all authorized remedies, including

CLASS ACTION COMPLAINT

voiding of the Promissory Notes, forfeiture of all interest charged or purportedly due pursuant to these usurious Promissory Notes, an award of treble damages, and all derivative statutory and civil penalties thereby triggered and authorized by law, including under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### (By Plaintiff and the Class against all Defendants)

67.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 66, as though fully set forth herein.

68.    The California Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, et seq. prohibits unlawful, unfair, or fraudulent business practices.

69.    Notwithstanding this provisions of law, Defendants' consistent policy and practice in doing the acts alleged herein have been to engage in unfair business practices in violation of the UCL. As a result, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.

70.    As result, Plaintiff and the Class, are thereby entitled to seek all authorized remedies under the UCL, including equitable, injunctive and declaratory relief, imposition of a constructive trust, and restitution and disgorgement of all ill-gotten gains by which Defendants have been unjustly enriched.

## TENTH CAUSE OF ACTION

## LABOR CODE PRIVATE ATTORNEY GENERAL ACT OF 2004 ("PAGA")

### (By Plaintiff and the Class against all Defendants)

71.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 66, as though fully set forth herein.

CLASS ACTION COMPLAINT

72. The California Labor Code Private Attorney General Act of 2004 ("PAGA"), Labor Code §§ 2698, et seq. authorizes recovery of cumulative civil penalties and other remedies for violations of the Labor Code on behalf of Plaintiff and all similarly situated aggrieved employees.

73. Notwithstanding the provisions, Defendants' consistent policy and practice in doing the acts alleged herein have been to violate multiple provisions of the Labor Code for which civil penalties are authorized.

74. By certified letter of December 7, 2015, attached hereto as Exhibit "C," Plaintiff provided notice of the Labor Code violations alleged herein to the California Labor and Workforce Development Agency ("LWDA").  Following expiration of 33 days, the LWDA declined to exercise its jurisdiction over the present claims for violation of the Labor Code.  Plaintiff has thus exhausted the administrative remedies required as a prerequisite for the present private action pursuant to Labor Code §2699.3.

75. As result, Plaintiff and the Class, pursuant to PAGA, are thereby entitled to seek all equitable remedies and all authorized civil penalties available under the Labor Code, including under Labor Code §§ 201, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For a declaration that Defendant has engaged in unfair competition in violation of the California Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq.*, and for restitution of all wrongfully withheld amounts according to proof;

2. For liquidated damages pursuant to Labor Code sections 1194(b), and 972;

3. For all statutory penalties authorized by law, including PAGA penalties under Labor Code § 2699 et seq;

4. For preliminary and permanent injunctive relief requiring Defendant to cease and desist from further unfair competition and violations of law and to make restitution to those injured by its prior course of illegal wrongful conduct.

CLASS ACTION COMPLAINT

5.    For prejudgment interest on all amounts owed;

6.    For attorney fees and costs pursuant to all applicable provisions of law.

7.    For such other and further relief the court deems just and proper.


Dated:  April 20, 2016                    VAN VLECK TURNER & ZALLER, LLP
                                          Brian F. Van Vleck
                                          Daniel J. Turner


                                    By: _____
                                          Brian F. Van Vleck
                                          Attorneys for Plaintiff
                                          William E. Grady

1

## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands trial of his claims and the claims of the class by jury to the extent

3 authorized by law.

4

5 Dated: April 19, 2016

6

VAN VLECK TURNER & ZALLER, LLP
Brian F. Van Vleck
Daniel J. Turner

7

8

By: _____

9    Brian F. Van Vleck

Attorneys for Plaintiff

10 William H. Gradie

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

VAN VLECK
TURNER & ZALLER, LLP

04/20/2016

**EXHIBIT A**

EXHIBIT A

# C.R. ENGLAND, INC.

## DRIVER EDUCATION AND EMPLOYMENT CONTRACT

### (California)

This Driver Education and Employment Contract ("Contract") is entered into this ⊙3 day of AUGUST , 20 15 , (the "Effective Date") in the State of California by and between C.R. England, Inc. ("England"), a Utah corporation located at 4701 West 2100 South, Salt Lake City, Utah 84120 and William    Gradle    ("you" or "Driver"). In consideration of the parties' respective promises in this Contract and other good and valuable consideration, you and England agree as follows:

1.     EDUCATION AND EMPLOYMENT. In exchange for your promise to work as a truck driver exclusively for England for nine months as provided in this Contract and your execution of a promissory note for the unsubsidized cost of tuition ("Tuition Note"), England will provide its Premier Truck Driving School Driver Education Program to you on the terms described in the Enrollment Agreement. England also agrees to employ you subject to the terms and conditions stated below.

**You will not be employed by England during your Driver Education Program and thus will receive no pay during this period. You will not become an employee of England, and will not receive any pay, until you meet all the conditions listed below.**

England agrees to employ you and you agree to be employed by England as a truck driver when you meet all of the following conditions:

    (a)    You successfully complete all requirements of England's Premier Truck Driving School Driver Education program;

    (b)    You submit a written application to England, in form provided by England, and satisfy England's standard criteria regarding work history, motor vehicle record and criminal background check;

    (c)    You pass a Department of Transportation drug test and hair follicle test;

    (d)    You submit to, and pass, a medical examination in accordance with regulations issued by the Department of Transportation;

    (e)    You successfully complete road and range driving evaluation administered by England;

    (f)    You obtain a valid CDL.

You agree to use your best efforts and to work diligently to meet all of these conditions.

2.     DUTIES OF DRIVER. You agree that at all times during the term of your employment as defined in paragraph 3 below, you shall devote all of your working time to the performance of your duties to England under this Contract. Your duties are to act as a commercial truck driver for England and fulfill all related duties, including all of the requirements and conditions set forth in the England Driver Employee Policy Manual (the "Manual") as amended from time to time. You agree that you will not, directly or indirectly, engage or participate in any activities at any time during the term of this Contract in conflict with your duties under this Contract.

3.     TERM OF EMPLOYMENT. You agree that, after the conditions stated in paragraph 1 are met, you will work as a truck driver for England for a period of **nine months** after the date you are first dispatched by England, subject to termination by England prior to the end of

the term pursuant to paragraph 4, below. After the nine (9) month term, you or England may terminate your employment at any time and for any reason. You acknowledge that, at great cost, England has provided, or will provide, your driver education, and that England would be damaged by your failure to complete the nine month term of this Contract.

4.   TERMINATION OF EMPLOYMENT.  During the nine (9) month term, your employment may only be terminated for the following reasons: (a) England for Due Cause, effective immediately; (b) by mutual agreement between you and England; (c) upon your death or upon your developing a disability such that you are no longer able to legally drive; or (d) by England without Due Cause.  For the purposes of this Contract, "Due Cause" means (i) your breach of this Contract; (ii) your violation of any of the requirements or conditions set forth in the Manual; or (iii) your violation of or failure to remain in compliance with any federal or state regulations applicable to your position as a driver of commercial motor vehicles in interstate commerce.  If you are terminated by England *without Due Cause*, England shall cancel the Tuition Note and, in addition, paragraphs 5 shall not apply.

5.   LIQUIDATED DAMAGES FOR BREACH OF YOUR PROMISE TO WORK FOR ENGLAND.  You agree that if you fail to complete the full nine (9) month term of your employment with England because (a) you quit, or (b) your employment is terminated for Due Cause, then England will suffer damages because of its inability to realize the full benefit of its financial investment in your recruitment, training and employment.  You and England agree that it will be difficult to determine the precise amount of the financial harm to England in the event either of these things happens and that the liquidated damages amount provided for in this Contract represent a fair, reasonable and appropriate estimate of this harm.  Accordingly, you agree that if you quit or are terminated for Due Cause before you have completed your 9-month commitment, you will be immediately liable to pay to England liquidated damages in the amount of $2,500.00.

6.   EARLY BUYOUT.  At any time prior to your completion of the full nine (9) month term of your employment with England, you may terminate your employment by 1) paying in full the balance of your Tuition Note, and 2) paying to England $2500 (the "Buyout Cost").  Your obligations under this Agreement will continue until both the Tuition Note and the Buyout Cost are paid in full.  England will not accept installment payments on either the Tuition Note or the Buyout Cost.  The Buyout Cost is to compensate England for its substantial investment in your recruiting and training and the return on that investment it would have received if you had completed the entire term of this Agreement.

7.   DRIVER COMPENSATION.  As compensation for the driving services to be rendered by you under this Contract, and as consideration for your promises and covenants herein, England will pay you the wages, benefits and other compensation set forth in the Manual and as stated by England from time to time, and will also provide the Educational Assistance Program described below.  Upon the termination of employment, as defined in paragraph 4 of this Contract, you authorize England to deduct and recoup any amount remaining due and owing to England pursuant to paragraph 5 of this Contract from any compensation due and owing to you from England.  England may unilaterally change at any time, by written amendment, the terms and conditions of the compensation set forth in the Manual so long as your overall compensation is not materially reduced, and you hereby consent to all such amendments and agrees that such amendments shall be binding upon you.

8.   EDUCATIONAL ASSISTANCE PROGRAM.  When you have completed the nine month term of this Contract, you will automatically become eligible for England's Educational

Assistance Program, which is described in the summary plan description that you may obtain from the England Department of Human Resources. The Educational Assistance Program will pay, on your behalf, any amounts owing on the Tuition Note, up to $5,200 per calendar year.

9.  **ENTIRE AGREEMENT.** This Contract, together with the Enrollment Agreement and the Tuition Note, contains the entire agreement and understanding by and between England and you with respect to the subject matter contained herein and no representations, promises, agreements or understandings, written or oral, concerning this subject matter, shall be of any force or effect. This Contract may not be modified except by a writing signed by both you and England. This Contract shall be binding upon and inure to the benefit of England and you, England's legal representatives, and England's successors and assigns. However, you may not assign your duties under this Contract.

10.  **SEVERABILITY.** If one or more of the provisions contained in this Contract is deemed invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity and enforceability of the other provisions.

11.  **GOVERNING LAW AND VENUE.** You and England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and any claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. You hereby consent to personal jurisdiction and venue in such court. Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with England, the terms of the arbitration agreement shall govern any claims or disputes between you and England arising from or related to this Agreement.

YOU ACKNOWLEDGE THAT YOU HAVE READ THE TERMS OF THIS CONTRACT AND HAVE HAD THE OPPORTUNITY, IF YOU DESIRED, TO CONSULT WITH AN ATTORNEY OF YOUR CHOICE PRIOR TO SIGNING BELOW.

IN WITNESS WHEREOF, C.R. England, Inc. and Driver have duly executed this Contract as of the date, year and place first above written.

C.R. ENGLAND, INC.

By: _____

_____

Title: _____

DRIVER,

By: _____

Name: **William** **Gradie**

Address: **5200 Clark Ave 65**

**Lakewood** **CA** **90714**

Phone: 562·805·0052

Social Security Number: **318646498**

Driver ID#: U3030744

3

# Facts about your contract with C.R. England

- The contract is an employment agreement, where you agree to work for C.R. England for at least 9 months.

- In exchange for your employment commitment of at least 9 months, C.R. England agrees to proudly provide you top-notch driving school training, paid on-the-job training, and an Educational Assistance Program which will repay your Tuition Note IN FULL as soon as you have worked 9 Months for C.R. England.

- You are expected to meet your obligation to work for C.R. England for at least 9 months.

- Other carriers, in an attempt to hire you, will tell you <u>many untrue things</u> to make the grass look greener.

- They will tell you that they will pay for your school and that the contract is taken care of if they do.  THAT IS NOT TRUE!

- They will tell you that the contract does not matter or that C.R. England cannot enforce it.  THAT IS NOT TRUE!

- If you leave before meeting your employment obligation, it is a <u>BREACH OF CONTRACT</u> unless you first pay IN FULL your Tuition Note and the Buyout Cost under the contract.  These must be paid IN FULL before you leave.  C.R. England will not accept installment payments.

- Due to our significant investment in your training, C.R. England takes any contract breach very seriously.  We have been forced to take legal action against several drivers in FEDERAL COURT because they have breached their contract.

- Be sure to keep your word!  C.R. England will absolutely keep its word and provide you fantastic training and great driving jobs.

- Be sure to read the agreement closely so you understand its terms.

04/20/2016

**EXHIBIT B**

EXHIBIT "B"

## PROMISSORY NOTE AND DISCLOSURE STATEMENT

CREDITOR:  CR England dba Premier Truck Driving School

DEBTOR:  William              Gradle                    5200 Clark Ave 65        Lakewood        CA 90714
         NAME                                           ADDRESS

DEBTOR:  _____
         NAME                                           ADDRESS

In this Promissory Note and Disclosure Statement (also called Note) the words I, me, my, mine and us mean each and all of those signing the Note. The words you, your, and yours mean the Creditor identified above. In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of: U.S. $ 5,175.00  (the "principal"), according to the Contract terms as set forth below in the Special Regulation Z Disclosures (to the extent applicable) and according to other Note terms as provided below.

Interest: No interest will be charged on his Note unless and until I default. After default, interest will be charged at the rate of 18% per annum on that part of the principal which has not been paid and will be charged beginning on the date of default and continuing until the full amount has been paid:

### SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE<br><br>The cost of my credit as a yearly rate | FINANCE CHARGE<br><br>The dollar amount the credit will cost me | Amount Financed<br><br>The amount of credit provided to me or on my behalf | Total of Payments<br><br>The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|
| 0            % | 0 | $5175 | $5175 |

MY PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $5175 | Upon Termination of Employment with C.R. England, Inc. |

PREPAYMENT: If I pay off early, I will not have to pay a penalty.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.

### ITEMIZATION OF AMOUNT FINANCED

The Amount Financed of $5175 is distributed as follows:

Amount paid on my behalf to Premier Truck Driving School for tuition and fees: $5175

NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The contract terms on the reverse side of this Note are part of and incorporated into this Note.

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

THE UNDERSIGNED ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY OF THIS NOTE AND DISCLOSURE CONTAINED HEREIN WHICH DISCLOSURES WERE MADE PRIOR TO SIGNING.

Debtor _William Gradle_____  Date: 08-03-2015        Debtor _____  Date: _____

**Payments.** I have promised to repay this Note as set forth above in the Special Regulation Z Disclosure box. I may repay this Note at any time without penalty.

**Employee Educational Assistance Program.** I understand that if I complete the term of my Employment Agreement with C.R. England, C.R. England will satisfy this note in its entirety on my behalf.

**Estimated Credit Terms.** I understand that the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits.

**Assignment.** I understand that you may sell or assign your interests under this Note, without my consent.

**Credit Reporting.** I understand that you may report information about this Note, including payment history, late payments and/or defaults, to credit bureaus, and such information may be reflected on credit reports respecting my credit history.

**Enrollment Agreement.** I am entering into this Note to pay amounts owed to Premier Truck Driving School under a separate Enrollment Agreement for truck driver training ("Enrollment Agreement"). If, under the terms of that Enrollment Agreement, I am entitled to a refund of any amounts paid, any such refund is assigned to you, and shall be applied to the last payments owed by me under this Note.

**Events of Default.** I will be in default under this Note if I fail either to make a payment on time, or to perform all of my obligations under this Note.

**Remedies.** Upon the occurrence of any event of default as described above, and at any time thereafter, you may declare the entire balance due and payable at once, without notice or demand.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Note.

**Collection Fees.** If I default under this Note, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees.

**Responsibility of Persons Under This Note.** If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Note. Any guarantor, surety, or endorser of this Note is also obligated to do these things. You may enforce your rights under this Note against each of us individually or against all of us together, and all of us severally waive presentment for payment, protest, demand, notice of protest, and notice of dishonor.

**Governing Law.** This Note shall be governed by the law of the State of Utah. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document.

EXHIBIT C

EXHIBIT "C"

December 7, 2015

William H. Gradie
5200 Clark Ave., #65
Lakewood, CA 90714

**VIA CERTIFIED MAIL**
Attn. PAGA Administrator
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102

**VIA CERTIFIED MAIL**
C.R. England, Inc.
c/o CT Corporation System
818 West Seventh St.
Ste. 930
Los Angeles CA 90017

Re: Notice of Labor Code Violations by C.R. England

Dear Sirs:

This letter constitutes notice of Labor Code violations pursuant to the Private Attorneys General Act of 2004, codified in the Labor Code section 2698 et seq. on behalf of aggrieved employee William E. Gradie, and those similarly situated who have worked for C.R. England ("CRE") in California over the last four years as truck drivers.

During this time period, CRE engaged in a series of consistent practices throughout the state of California which were illegal and unfair in violation of numerous Labor Code provisions. CRE's conduct, as described in greater specificity below, violates, *inter alia,* Labor Code sections 201-203, 204, 206, 206.5, 208, 210, 212, 218.6, 221, 223, 225.5, 229, 256, 432.5, 450, 510, 512, 558, 970-972, 1171.1, 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802-2804, and Wage Order 9-2001, Sections 3-4, 7, 8, 9, and 11-12. The conduct alleged also violates Business and Professions Code sections 16600 and 17200 et seq. and California Const. Art. I, Section 15.

William H. Gradie

Labor Workforce Development Agency
December 7, 2015
Page 2

## I. CRE's Unlawful Employment Practices.

### A. Misrepresentations Regarding the Nature of the Work and Illegal Contract Terms.

CRE advertised throughout California and the nation in order to induce applicants to relocate to Fontana, California (and other locations) in order to enroll in its for-profit, in-house "premier truck driving school" (the "CRE Training Program"). CRE induced applicants by representing that if they would travel to Fontana CA and enroll in the Training Program they would be provided with a "guaranteed job" as a well-paid, full-time truck driver.

The true facts regarding the nature of the work, which CRE concealed and failed to disclose, included the facts that:

- o The approximately $5,000 which CRE charged for its relatively perfunctory 17-day Training Program was far above its actual cost for the program.

- o The Training Program was never intended to prepare drivers for long term employment with CRE. Instead, the Training Program was designed and run as an independent profit-making enterprise. CRE's profit in the transaction was generated not by its continued employment of its own trainees, but rather by the volume of aspiring drivers which it could charge for its Training Program.

- o Contrary to its representations, CRE did not intend to treat the applicant's job as "guaranteed" or even terminable only for good cause. In fact, notwithstanding the drivers' substantial financial investment in their employment, CRE always intended to, and did, treat the drivers' employment as terminable at-will.

- o In fact, CRE's for-profit Training Program churned out far more student drivers than CRE could ever actually employ. As a result, CRE had to actively cull the number of drivers who were actively employed with terminations and coerced resignations.

- o Far from having a "guaranteed job," virtually every driver who is induced to pay for the Training Program is terminated within less than a year.

- o In anticipation of this treatment, upon arriving at Fontana, applicants are required, as a condition of employment, to execute a series of illegal and unconscionable contract provisions which they were given little or no time to read or comprehend. These included

William H. Gradie

Labor Workforce Development Agency
December 7, 2015
Page 3

- A illegal waiver of the driver's right to enforce the provisions of California law against CRE;

- An illegal agreement to work as an indentured servant who was required to pay CRE a penalty or "liquidated damages" of approximately $2,500 in order to leave CRE's employment.

- An illegal agreement to refrain from working for any competitor of CRE for a period of at least nine months.

- An illegal agreement to penalize the driver in the event of termination of his employment by accelerating the payment of principal owed for the Training Program and assessing illegal penalties and usurious interest on the unpaid balance.

o CRE further failed to disclose that drivers would be expected to work without legally required off-duty meal breaks and paid rest breaks.

o CRE further failed to disclose that drivers would be required to work numerous hours without any compensation or for compensation below the applicable minimum wage rate.

This conduct violates, *inter alia,* Labor Code sections 970-972; as well as sections 206, 206.5, 210, 432, 432.5, 221, 223, 225.5, 1171.1 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, and Wage Order 9-2001, Sections 3-4, 7, 8, 9, 11-12. The conduct alleged also violates Business and Professions Code sections 16600 and 17200 et seq., and California Constitution Art. 15, Section 1.

### B. Failure to Provide Off-Duty Meal and Rest Breaks

Federal Department of Transportation regulations limit the number of consecutive hours of service a driver may work. In order to ensure that its drivers will travel the maximum number of cargo-miles during this window, CRE discourages and prohibits drivers from taking off-duty meal or rest breaks required by California law. Such breaks are also prohibited as a consequence of CRE's policies requiring drivers to be constantly on-duty and responsible for their truck and its load.

To the extent drivers are ever able to take a compliant 10-min rest break notwithstanding CRE's he is not separately compensated for this rest time. CRE also fails to keep any record of when meal periods begin and end.

William H. Gradie

Labor Workforce Development Agency
December 7, 2015
Page 4

As a result of its federally-mandated tracking of the drivers' activity and time spent on-duty CRE is fully aware that its drivers do not meal and rest breaks required by law. Despite this knowledge, CRE also willfully fails to pay the premium wages required by these statutes in lieu of compliant meal and rest breaks. This conduct violates, *inter alia,* California Labor Code Sections 226.7, 512, 558, 1198, and Wage Order 9-2001, Sections 7, 11-12.

A. **Unlawful Charges and Deductions From Wages; Untimely Payment of Wages**

CRE also regularly required drivers to make payments out of their own pockets for items that are a regular part of its own business operating expenses for which it is legally responsible. CRE also improperly deducted sums from wages and withheld earned wages from drivers. Such improper deductions and withholdings included: Deductions to pay for CRE's internal costs for job training; penalties or "liquidated damages" assessed by CRE; late fees; costs of CDL testing and physical examination.

Based on the number of hours worked, these deductions and withholdings caused drivers' actual wages to fall below the applicable minimum wage and stated contract rate for numerous time periods.

Moreover, this withholding and deduction of wages (as well as the failure to pay earned minimum wage, wages for all hours worked, and premium wages for meal and rest breaks), also prevented drivers from receiving all earned wages due at the time of the termination of their employment. In addition, even as to those wages which CRE concededly owed to drivers, it followed a consistent pattern and practice of refusing to pay such earned wages at the location of employment immediately upon termination or voluntary resignation with 72 hours' notice (or within 72 hours of resignation if less than 72 hours' notice is provided by the driver).

This conduct violates, *inter alia,* California Labor Code Sections Labor Code sections 201-203, 204, 206, 206.5, 208, 210, 212, 218.6, 221, 223, 225.5, 256, 432.5, 450, 510, 512, 558, 970-972, 1171.1, 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802-2804, and Wage Order 9-2001, Sections 3-4, 7, 8, 9, and 11-12.

B. **Failure to Pay Applicable Minimum Wages For all Hours Worked**

CRE routinely paid less than applicable minimum wage for all hours worked (currently $9.00 per hour for each hour worked) by, *inter alia,* refusing to pay compensation for numerous categories of work that CRE deemed to be "non-productive." These include:

William H. Gradie

Labor Workforce Development Agency
December 7, 2015
Page 5

  a. Time spent completing CRE's in-house driver training program;
  b. Time spent completing CRE's orientation and new-hire paperwork;
  c. Time spent completing CRE's road driving evaluation;
  d. Time spent completing the mandatory DOT physical examination, drug test, and other requirements for beginning employment with CRE in compliance with the CRE's Employment Contract;
  e. Time spent waiting for an assignment following receipt of a CDL;
  f. Time spent when the driver was under the control of CRE but not "on-duty" for purposes of federal DOT safety logs, such as time spent in a sleeper berth during team driving assignments.

  CRE also paid less than minimum wage by failing to fully account for, and record, all hours worked and to accurately report that number of hours on the drivers' pay statements. A correct tally of hours worked would establish that the amounts actually paid to drivers were frequently below the applicable minimum wage. This conduct violates, *inter alia,* California Labor Code Sections Labor Code sections 201-203, 204, 206, 206.5, 208, 210, 212, 218.6, 221, 223, 225.5, 256, 432.5, 450, 510, 512, 558, 970-972, 1171.1, 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802-2804, and Wage Order 9-2001, Sections 4, 7, 8, and 9.

## C. Failure to Provide Accurate, Itemized Pay Statements

  CRE failed to provide wage statements that contain all items required by LC 226(a). Omitted items included the correct number of hours worked, the applicable hourly rate for all hours worked, the correct amount of wages earned, and a correct itemization of the deductions withheld from wages.

  This conduct violates, *inter alia,* California Labor Code Sections Labor Code sections 204, 206, 206.5, 210, 212, 218.6, 221, 223, 225.5, 226(a), 226(e), 256, 432.5, 450, 510, 512, 558, 970-972, 1171.1, 1174.5, 1182.11, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802-2804, and Wage Order 9-2001, Sections 4, 7, 8, and 9.

  Please let me know if you have any questions and whether you intend to proceed with any investigation of these allegations.

William H. Gradie

Labor Workforce Development Agency
December 7, 2015
Page 6

Very truly yours,

WILLIAM H. GRADIE

# C.R. ENGLAND, INC.

## DRIVER EDUCATION AND EMPLOYMENT CONTRACT

### (California)

This Driver Education and Employment Contract ("Contract") is entered into this 03 day of AUGUST , 2015 , (the "Effective Date") in the State of California by and between C.R. England, Inc. ("England"), a Utah corporation located at 4701 West 2100 South, Salt Lake City, Utah 84120 and William    Gradie    ("you" or "Driver").  In consideration of the parties' respective promises in this Contract and other good and valuable consideration, you and England agree as follows:

1.    EDUCATION AND EMPLOYMENT.  In exchange for your promise to work as a truck driver exclusively for England for nine months as provided in this Contract and your execution of a promissory note for the unsubsidized cost of tuition ("Tuition Note"), England will provide its Premier Truck Driving School Driver Education Program to you on the terms described in the Enrollment Agreement.  England also agrees to employ you subject to the terms and conditions stated below.

**You will not be employed by England during your Driver Education Program and thus will receive no pay during this period.  You will not become an employee of England, and will not receive any pay, until you meet all the conditions listed below.**

England agrees to employ you and you agree to be employed by England as a truck driver when you meet all of the following conditions:

(a)    You successfully complete all requirements of England's Premier Truck Driving School Driver Education program;

(b)    You submit a written application to England, in form provided by England, and satisfy England's standard criteria regarding work history, motor vehicle record and criminal background check;

(c)    You pass a Department of Transportation drug test and hair follicle test;

(d)    You submit to, and pass, a medical examination in accordance with regulations issued by the Department of Transportation;

(e)    You successfully complete road and range driving evaluation administered by England;

(f)    You obtain a valid CDL.

You agree to use your best efforts and to work diligently to meet all of these conditions.

2.    DUTIES OF DRIVER.  You agree that at all times during the term of your employment as defined in paragraph 3 below, you shall devote all of your working time to the performance of your duties to England under this Contract.  Your duties are to act as a commercial truck driver for England and fulfill all related duties, including all of the requirements and conditions set forth in the England Driver Employee Policy Manual (the "Manual") as amended from time to time.  You agree that you will not, directly or indirectly, engage or participate in any activities at any time during the term of this Contract in conflict with your duties under this Contract.

3.    TERM OF EMPLOYMENT.  You agree that, after the conditions stated in paragraph 1 are met, you will work as a truck driver for England for a period of **nine months** after the date you are first dispatched by England, subject to termination by England prior to the end of

the term pursuant to paragraph 4, below.  After the nine (9) month term, you or England may terminate your employment at any time and for any reason.  You acknowledge that, at great cost, England has provided, or will provide, your driver education, and that England would be damaged by your failure to complete the nine month term of this Contract.

4.     <u>TERMINATION OF EMPLOYMENT</u>.  During the nine (9) month term, your employment may only be terminated for the following reasons: (a) by England for Due Cause, effective immediately; (b) by mutual agreement between you and England; (c) upon your death or upon your developing a disability such that you are no longer able to legally drive; or (d) by England without Due Cause.  For the purposes of this Contract, "Due Cause" means (i) your breach of this Contract; (ii) your violation of any of the requirements or conditions set forth in the Manual; or (iii) your violation of or failure to remain in compliance with any federal or state regulations applicable to your position as a driver of commercial motor vehicles in interstate commerce.  If you are terminated by England *without Due Cause*, England shall cancel the Tuition Note and, in addition, paragraphs 5 shall not apply.

5.     <u>LIQUIDATED DAMAGES FOR BREACH OF YOUR PROMISE TO WORK FOR ENGLAND</u>.  You agree that if you fail to complete the full nine (9) month term of your employment with England because (a) you quit, or (b) your employment is terminated for Due Cause, then England will suffer damages because of its inability to realize the full benefit of its financial investment in your recruitment, training and employment.  You and England agree that it will be difficult to determine the precise amount of the financial harm to England in the event either of these things happens and that the liquidated damages amount provided for in this Contract represent a fair, reasonable and appropriate estimate of this harm.  Accordingly, you agree that if you quit or are terminated for Due Cause before you have completed your 9-month commitment, you will be immediately liable to pay to England liquidated damages in the amount of $2,500.00.

6.     <u>EARLY BUYOUT</u>.  At any time prior to your completion of the full nine (9) month term of your employment with England, you may terminate your employment obligation by 1) paying in full the balance of your Tuition Note, and 2) paying to England $2500 (the "Buyout Cost").  Your obligations under this Agreement will continue until both the Tuition Note and the Buyout Cost are paid in full.  England will not accept installment payments on either the Tuition Note or the Buyout Cost.  The Buyout Cost is to compensate England for its substantial investment in your recruiting and training and the return on that investment it would have received if you had completed the entire term of this Agreement.

7.     <u>DRIVER COMPENSATION</u>.  As compensation for the driving services to be rendered by you under this Contract, and as consideration for your promises and covenants herein, England will pay you the wages, benefits and other compensation set forth in the Manual and as stated by England from time to time, and will also provide the Educational Assistance Program described below.  Upon the termination of employment, as defined in paragraph 4 of this Contract, you authorize England to deduct and recoup any amount remaining due and owing to England pursuant to paragraph 5 of this Contract from any compensation due and owing to you from England.  England may unilaterally change at any time, by written amendment, the terms and conditions of the compensation set forth in the Manual so long as your overall compensation is not materially reduced, and you hereby consent to all such amendments and agrees that such amendments shall be binding upon you.

8.     <u>EDUCATIONAL ASSISTANCE PROGRAM</u>.  When you have completed the nine month term of this Contract, you will automatically become eligible for England's Educational

2

Assistance Program, which is described in the summary plan description that you may obtain from the England Department of Human Resources. The Educational Assistance Program will pay, on your behalf, any amounts owing on the Tuition Note, up to $5,200 per calendar year.

9.     ENTIRE AGREEMENT. This Contract, together with the Enrollment Agreement and the Tuition Note, contains the entire agreement and understanding by and between England and you with respect to the subject matter contained herein and no representations, promises, agreements or understandings, written or oral, concerning this subject matter, shall be of any force or effect. This Contract may not be modified except by a writing signed by both you and England. This Contract shall be binding upon and inure to the benefit of England and you, England's legal representatives, and England's successors and assigns. However, you may not assign your duties under this Contract.

10.     SEVERABILITY:  If one or more of the provisions contained in this Contract is deemed invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity and enforceability of the other provisions.

11.     GOVERNING LAW AND VENUE.  You and England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and any claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah.  You hereby consent to personal jurisdiction and venue in such court.  Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with England, the terms of the arbitration agreement shall govern any claims or disputes between you and England arising from or related to this Agreement.

.  YOU ACKNOWLEDGE THAT YOU HAVE READ THE TERMS OF THIS CONTRACT AND HAVE HAD THE OPPORTUNITY, IF YOU DESIRED, TO CONSULT WITH AN ATTORNEY OF YOUR CHOICE PRIOR TO SIGNING BELOW.

IN WITNESS WHEREOF, C.R. England, Inc. and Driver have duly executed this Contract as of the date, year and place first above written.

C.R. ENGLAND, INC.

By: _____

_____

Title: _____

DRIVER

By: _____

Name: **William          Gradle**

Address: **5200 Clark Ave 65**

**Lakewood        CA        90714**

Phone: 562·805·0052

Social Security Number:   318646498

Driver ID#:  U3030744

3

# Facts about your contract with C.R. England

- The contract is an employment agreement, where you agree to work for C.R. England for at least 9 months.

- In exchange for your employment commitment of at least 9 months, C.R. England agrees to proudly provide you top-notch driving school training, <u>paid on-the-job training</u>, and an Educational Assistance Program which will repay your Tuition Note IN FULL as soon as you have worked 9 Months for C.R. England.

- You are expected to meet your obligation to work for C.R. England for at least 9 months.

- Other carriers, in an attempt to hire you, will tell you <u>many untrue things</u> to make the grass look greener.

- They will tell you that they will pay for your school and that the contract is taken care of if they do. THAT IS NOT TRUE!

- They will tell you that the contract does not matter or that C.R. England cannot enforce it. THAT IS NOT TRUE!

- If you leave before meeting your employment obligation, it is a <u>BREACH OF CONTRACT</u> unless you first pay IN FULL your Tuition Note and the Buyout Cost under the contract. These must be paid IN FULL before you leave. C.R. England will not accept installment payments.

- Due to our significant investment in your training, C.R. England takes any contract breach very seriously. We have been forced to take legal action against several drivers in FEDERAL COURT because they have breached their contract.

- Be sure to keep your word! C.R. England will absolutely keep its word and provide you fantastic training and great driving jobs.

- Be sure to read the agreement closely so you understand its terms.