COOK & MONAHAN, LLC
RUSSELL T. MONAHAN (Utah Bar No. 9016)
323 South 600 East, Suite 200
Salt Lake City, Utah 84102
Telephone:  (801) 595-8600
Email: russell@cooklawfirm.com

THE VAN VLECK LAW FIRM, LLP
Brian F. Van Vleck, (California Bar No. 155250 – Admitted *Pro Hac Vice*)
5757 Wilshire Blvd., Suite 535
Los Angeles, California 90036
Telephone:  (323) 920-0250
Facsimile:  (323) 920-0249
Email: BVanVleck@VVLawGroup.com

Attorneys for Plaintiffs

[Additional attorneys for Plaintiffs listed on next page]

# UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| WILLIAM H. GRADIE, MILTON HARPER, RONNIE STEVENSON, and JONATHAN MITCHELL, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>C.R. ENGLAND, INC., a Corporation; and Does 1 through 100, Inclusive,<br><br>                    Defendant. | CASE NO: 2:16-cv-00768-DN<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1.  UNFAIR COMPETITION;<br><br>2.  FAILURE TO PAY MINIMUM WAGES;<br><br>3.  FAILURE TO PAY OVERTIME WAGES;<br><br>4.  FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS;<br><br>5.  FAILURE TO MAINTAIN COPIES OF ACCURATE ITEMIZED WAGE STATEMENTS;<br><br>6.  FAILURE TO REIMBURSE FOR BUSINESS EXPENSES;<br><br>7.  UNLAWFUL DEDUCTIONS;<br><br>8.  FAILURE TO PROVIDE MEAL PERIODS;<br><br>9.  FAILURE TO PROVIDE REST PERIODS; |

---

*FIRST AMENDED CLASS ACTION COMPLAINT*

10. FAILURE TO TIMELY PAY WAGES DUE AT TERMINATION OF EMPLOYMENT;

11. FAILURE TO TIMELY PAY ALL WAGES DURING EMPLOYMENT;

12. MISREPRESENTATION;

13. USURY; and

14. CALIFORNIA LABOR CODE PRIVATE ATTORNEYS GENERAL ACT (PAGA)

**DEMAND FOR A JURY TRIAL**

[Additional Attorneys for Plaintiffs]

STRINDBERG & SCHOLNICK, LLC
LAUREN I. SCHOLNICK (Utah Bar No. 7776)
675 East 2100 South, Suite 350
Salt Lake City, Utah 84106
Telephone:  (801) 359-4169
Facsimile:  (801) 359-4313
Email: lauren@utahjobjustice.com

BLUMENTHAL, NORDREHAUG BHOWMIK DE BLOUW LLP
Kyle R. Nordrehaug (California Bar No. 205975 – Admitted *Pro Hac Vice*)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Email:  kyle@bamlawca.com

*FIRST AMENDED CLASS ACTION COMPLAINT*

Plaintiffs William H. Gradie, Milton Harper, Ronnie Stevenson, and Jonathan Mitchell ("PLAINTIFFS"), individuals, on behalf of themselves and all other similarly situated current and former employees, allege upon information and belief, except for their own acts and knowledge, which are based on personal knowledge, the following:

## THE PARTIES

1.    C.R. England, Inc. ("C.R. ENGLAND" or "DEFENDANT") is a commercial motor carrier based in Salt Lake City, Utah that specializes in transporting freight for its customers from pick-up point to ultimate destination throughout the country.  To provide this service, C.R. ENGLAND employs truck drivers who have a commercial driver's license ("CDL").

2.    C.R. ENGLAND is a corporation and at all relevant times mentioned herein conducted and continues to conduct substantial and regular business throughout the State of California.

3.    C.R. ENGLAND also operates the Premier Truck Driving School ("Premier"), in Fontana California and other locations, which provides students with the necessary education and skills required to obtain a CDL.  An individual must have a valid CDL to operate a commercial motor vehicle for C.R. ENGLAND or any other motor carrier.

4.    Plaintiff WILLIAM H. GRADIE attended Premier in August 2015.  He financed his Premier tuition through a loan and entered into an agreement providing that he had no obligation to make payments on the loan during the first 12 months after he obtained his CDL as long as he was employed by C.R. ENGLAND during that period and that C.R. ENGLAND would assume his repayment obligation following the completion of his 12-month term of employment.  After Plaintiff Gradie obtained his CDL in August 2015, he was employed as a Truck Driver employee by C.R. ENGLAND from August 20, 2015 through September 2, 2015. Because Plaintiff Gradie did not work for C.R. ENGLAND for the agreed upon 12

3

months after obtaining his CDL, the employment contract he executed with C.R. ENGLAND states he is responsible for liquidated damages of $2500, paying the full amount of the loan, and paying all accrued interest.

5.     Plaintiff MILTON HARPER attended Premier in November 2012.  He financed his Premier tuition through a loan from a C.R. ENGLAND affiliate, and entered into an agreement providing that he had no obligation to make payments on the loan during the first six months after he obtained his CDL as long as he was employed by C.R. ENGLAND during that period and that C.R. ENGLAND would assume his repayment obligation following the completion of his six-month term of employment.  After Plaintiff Harper obtained his CDL in early December 2012, he was employed as a Truck Driver by C.R ENGLAND from December 6, 2012 through February 20, 2017.

6.     Plaintiff RONNIE STEVENSON attended Premier in September 2013. He financed his Premier tuition through a loan from a C.R. ENGLAND affiliate and entered into an agreement providing that he had no obligation to make payments on the loan during the first nine months after he obtained his CDL as long as he was employed by C.R. ENGLAND during that period and that C.R. ENGLAD would assume his repayment obligation following the completion of his nine-month term of employment.  After he obtained his CDL from Premier, Plaintiff Stevenson worked for DEFENDANT in California as a Truck Driver employee from October 2, 2013 through October 2014 and again from March 2015 through June 13, 2016.

7.     Plaintiff JONATHAN MITCHELL attended Premier in June 2013.  He financed his Premier tuition through a loan from a C.R.ENGLAND affiliate and entered into an agreement providing that he had no obligation to make payments on the loan during the first nine months after he obtained his CDL as long as he was employed by C.R. ENGLAND during that period and that C.R. ENGLAND would assume his repayment obligation following the completion of his nine-month term of employment.  After he obtained his CDL from Premier, Plaintiff Mitchell worked

4

1   for DEFENDANT in California from July 11, 2013 through September 1, 2017 as a

2   Truck Driver employee.

3   ## JURISDICTION AND VENUE

4       8.    Federal subject matter jurisdiction is proper in this case as a result of

5   the Class Action Fairness Act of 2005, ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and

6   1453(b).

7       9.    Venue is proper in the District of Utah for several reasons, including,

8   but not limited to, because DEFENDANT'S principle place of business is located in

9   Salt Lake City, Utah.

10   ## CLASS ACTION LAWSUIT

11       10.    This action is brought on behalf of PLAINTIFFS and all others

12   similarly situated as a class action pursuant to Federal Rules of Civil Procedure,

13   Rule 23.  In particular, PLAINTIFFS bring this class action on behalf of themselves

14   and a California class consisting of all truck drivers employed by C.R. ENGLAND

15   in California at any time during the period beginning on March 12, 2014[1] and

16   continuing through the present (the "CLASS" or "CALIFORNIA CLASS").  The

17   CLASS thus includes employee truck drivers of every kind who worked for

18   DEFENDANT in the State of California during the class period, including, but not

19   limited to, drivers, truck drivers, truck workers, industrial truck workers, industrial

20   truck drivers, Phase I drivers, Phase II drivers, driver trainees, student drivers,

21   and/or any other similar job designation or description that involved driving a truck

22   for Defendant from March 12, 2014 through the present ("Truck Drivers").  The

23   CLASS further includes all CLASS members who enrolled in DEFENDANT'S

24

25   [1] A final class action judgment on behalf of a settlement class consisting of Truck
     Drivers employed by C.R. ENGLAND in the state of California was entered on November

26   12, 2014, in the matter of *Jasper et al. v. C.R England, Inc*. United States District Court for
     the Central District of California, Case No 08-CV-05266.   Pursuant to the final judgment

27   in the *Jasper* case, all wage and hour claims of the CLASS that accrued prior to March 12,
     2014, are released as a result of the final judgment in that case and therefore barred.

28

5

1 Training Program (which phrase is defined below).

2 **DOE DEFENDANTS**

3      11.    The true names and capacities, whether individual, corporate, associate

4 or otherwise of the Defendants sued herein as DOES 1 through 100, inclusive, are

5 presently unknown to PLAINTIFFS who therefore sue these Defendants by such

6 fictitious names.  PLAINTIFFS are informed and believe, and based thereon, allege

7 that each of the Defendants designated herein is legally responsible in some manner

8 for the unlawful acts referred to herein.  PLAINTIFFS will seek leave of Court to

9 amend this Complaint to reflect the true names and capacities of the Defendants

10 when they have been ascertained and become known.

11 **ALTER EGO/JOINT EMPLOYER ALLEGATIONS**

12      12.    At all times mentioned herein, DEFENDANT and DOES 1 through

13 100 were acting as an individual, corporate, affiliate, employer, employee,

14 supervisor, agency, associate aider and abettor and/or alter ego of each remaining

15 defendant, and were acting with permission and consent of each other, and within

16 the course and scope of said agency and/or employment and personally participated

17 in the conduct alleged herein on behalf of the defendants with respect to the conduct

18 alleged herein.  Consequently, the acts of each defendant are legally attributable to

19 the other defendants, and all defendants are jointly and severally liable to

20 PLAINTIFFS and the other members of the CALIFORNIA CLASS, for the loss

21 sustained as a proximate result of the conduct of the Defendants' agents, servants

22 and/or employees. On information and belief, DEFENDANT and DOES 1 through

23 100, and each of them, acted as joint employers, alter egos, and an integrated

24 enterprise, and jointly exercised control over the employment practices alleged

25 herein.  On information and belief, DEFENDANT and DOES 1 through 100, by and

26 through their officers, directors or managing agents, ratified, authorized and

27 approved, expressly or impliedly, all of the conduct alleged hereinafter.

28

*FIRST AMENDED CLASS ACTION COMPLAINT*

# THE CONDUCT

13.    As Truck Drivers, PLAINTIFFS' work requires the performance of manual labor consisting of driving DEFENDANT's trucks and transporting goods. In performing these duties, PLAINTIFFS do not utilize any independent discretion, judgment, or management decisions with respect to matters of significance.  To the contrary, the work of PLAINTIFFS as Truck Drivers is to provide on a daily basis the transportation of goods in accordance with the management decisions and business policies established by DEFENDANT.

14.    As employee Truck Drivers who worked for DEFENDANT in California, PLAINTIFFS and the other CALIFORNIA CLASS members are entitled to various protections afforded by California law, including, but not limited to, to being paid all minimum, regular, and overtime wages, receiving accurate wage statements, being paid on a timely basis, not having any unlawful deductions taken from their wages, being reimbursed for all necessary business expenses, being paid all wages owed upon termination of employment, being paid all wages timely during their employment, being provided meal and rest periods, etc.

15.    The work required to be performed by PLAINTIFFS and the other CALIFORNIA CLASS members consisted of driving DEFENDANT's trucks and transporting goods in accordance with DEFENDANT's policies and practices.  As a result of this work, PLAINTIFFS and the other CALIFORNIA CLASS members are involved in providing day to day routine transportation of goods as specified by DEFENDANT and this work is executed by the performance of manual labor within a defined skill set.

16.    PLAINTIFFS and the other CALIFORNIA CLASS members employed by DEFENDANT performed these manual tasks but are not paid the minimum, regular, and overtime wages to which they are entitled under California law because of DEFENDANT's systematic policies and practices of failing to correctly record all time worked.  DEFENDANT thus failed to correctly pay

7

*FIRST AMENDED CLASS ACTION COMPLAINT*

minimum wages to PLAINTIFFS and the other CALIFORNIA CLASS members in accordance with California law, and thereby systematically underpaid minimum, regular and/or overtime wage compensation to PLAINTIFFS and the other CALIFORNIA CLASS members for their time worked.

17.    By way of example only, DEFENDANT failed to pay PLAINTIFFS and the other CALIFORNIA CLASS members the correct amount of compensation because DEFENDANT established an illegal pay practice of paying PLAINTIFFS and the other CALIFORNIA CLASS members on a piece-rate basis which failed to compensate PLAINTIFFS and other CALIFORNIA CLASS members all their non-productive time (i.e., all time spent on non-driving activities).

18.    PLAINTIFFS and the other CALIFORNIA CLASS members also did not receive paid rest breaks as required by California law.

19.    DEFENDANT further failed to provide PLAINTIFFS and the other CALIFORNIA CLASS members with the legally required thirty (30) minute uninterrupted meal periods prior to the end of their fifth (5th) hour of work and/or a second uninterrupted thirty (30) minute meal break prior to the end of their tenth (10th) hour of work.

20.    Individuals in these Truck Driver positions are and were employees who are entitled to minimum wages and prompt payment of amounts that the employer owes an employee each pay period as well as when the employee quits or is terminated, and other compensation and working conditions that are prescribed by law.

21.    Industrial Welfare Commission Wage Order No. 9-2001 provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."  "Hours worked" is defined in the Wage Order as "the time during which an employee is subject to the control of an employer, and

8

*FIRST AMENDED CLASS ACTION COMPLAINT*

includes all the time the employee is suffered or permitted to work, whether or not required to do so." Here, PLAINTIFFS and CALIFORNIA CLASS members are entitled to separate hourly compensation for all their time spent performing other non-driving tasks directed by DEFENDANT during their work shifts.

22.    In addition, DEFENDANT has failed to pay all regular and overtime compensation due to PLAINTIFFS and the CALIFORNIA CLASS members in violation of Wage Order No. 9-2001 and applicable provisions of the California Labor Code.

23.    DEFENDANT fails to provide all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to PLAINTIFFS and the other CALIFORNIA CLASS members as required by Wage Order No. 9-2001 and applicable provisions of the California Labor Code. DEFENDANT does not have a policy or practice which provides or records all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to PLAINTIFFS and the other CALIFORNIA CLASS members. As a result, DEFENDANT's failure to provide PLAINTIFFS and the CALIFORNIA CLASS members with all the legally required off-duty, unpaid meal periods and all the legally required off-duty, paid rest periods is evidenced by DEFENDANT's business records.

24.    DEFENDANT also fails to maintain copies of accurate itemized wage statements and/or provide PLAINTIFFS and the other members of  the CALIFORNIA CLASS with complete and accurate wage statements which fail to show, among other things, the correct minimum wages for all their time worked, including, allocation of lawfully required, paid, and off-duty rest periods. Cal. Labor Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate along

9

with other required information.  As a result, DEFENDANT provides PLAINTIFFS and the other members of the CALIFORNIA CLASS with wage statements which violate California Labor Code § 226.   DEFENDANT also provides PLAINTIFFS and the other members of the CALIFORNIA CLASS with wage statements which run afoul of California Labor Code § 226.2 and other wage statement requirements.

25.    PLAINTIFFS further allege on information and belief that DEFENDANT has failed to maintain copies of accurate itemized wage statements for employees as required by California law, and from time to time has engaged in unlawful practices that include charging employees costs for copies of personnel records that exceed the costs of reproduction and therefore violate California law, including various provisions of the California Labor Code.

26.    DEFENDANT also advertised throughout California and the nation in order to induce applicants desiring to become truck drivers for it to relocate to Fontana, California (and other locations) in order to enroll in its for profit, in house "Premier Truck Driving School" (the "Training Program").  DEFENDANT induced these applicants by representing that if they would travel to Fontana, California, and enroll in the Training Program by attending Premier they would be provided with a "guaranteed job" as a well-paid, full time truck driver. DEFENDANT charged thousands of dollars for the 17 day Training Program.  The Training Program was a necessary training for the job of the CALIFORNIA CLASS members.

27.    After hire, DEFENDANT required that CALIFORNIA CLASS members enter into an agreement whereby they pay DEFENDANT an illegal penalty of $2,500 for terminating employment with DEFENDANT.  The penalty would be deducted from compensation of the CALIFORNIA CLASS members that was earned and unpaid at the time of employment termination.  Additionally, DEFENDANT required the CALIFORNIA CLASS members to agree to pay back the Training Program expenses via a Promissory Note that failed to state the applicable annual percentage rate and finance charge applicable to the balance of the

10

borrowed funds as part of the Special Regulation Z Disclosure Box contained in the Promissory Note. The Promissory Note actually charged 18% interest, compounded daily, which is far in excess of the California maximum rate. Upon information and belief, the Promissory Note further allowed DEFENDANT to make self-help wage deductions from any amounts owed to a CALIFORNIA CLASS member by DEFENDANT, in violation of various California debt collection, consumer protection statutes, and employment laws.  Finally, the Promissory Note falsely indicated that the debt would be satisfied if the CALIFORNIA CLASS member was able to "complete the term of [his or her] employment with C.R. England..."

28.    In this action, PLAINTIFFS, on behalf of themselves and the other CALIFORNIA CLASS members, also seek to recover all the compensation and business expenses that DEFENDANT is required by law to provide, but fails to provide, to PLAINTIFFS and all other CALIFORNIA CLASS members. PLAINTIFFS also seek penalties and all other relief available to them and other CALIFORNIA CLASS members under California or federal law.  Finally, PLAINTIFFS on behalf of themselves and the other CALIFORNIA CLASS members seek declaratory relief finding that the employment practices and policies of the DEFENDANT violated California law and injunctive relief to enjoin the DEFENDANT from continuing to engage in the unlawful employment and other business practices described herein.

29.    In performing the conduct herein alleged, DEFENDANT's wrongful conduct and violations of law as herein alleged demean and wrongfully deprive PLAINTIFFS and the other members of the CALIFORNIA CLASS of money, wages, career opportunities, and other sums to which they are lawfully entitled. DEFENDANT engages in such wrongful conduct by failing to have adequate employment policies and maintaining adequate employment practices consistent with such policies and the applicable law.  DEFENDANT's wrongful conduct as herein alleged caused the money belonging to PLAINTIFFS and the other members

11

of the CALIFORNIA CLASS to be kept by DEFENDANT and thereby converted by DEFENDANT for DEFENDANT's own use.

30.     Accordingly, DEFENDANT committed acts of unfair competition in violation of the California Unfair Competition Law (i.e., California Business & Professions Code §§ 17200, *et seq.*) by engaging in company-wide policies that violated the California Labor Code and other regulations promulgated thereunder as herein alleged, including under Wage Order No. 9-2001.

## A.     C.R. ENGLAND'S TRAINING AND EDUCATION PROGRAM

31.     C.R. ENGLAND advertised throughout California and the nation to induce applicants to relocate to Fontana, California (and other locations) to obtain their CDL.  Specifically, C.R. England induced PLAINTIFFS and other CALIFORNIA CLASS members to enroll in its for-profit, in-house Premier Trucking Driving School (i.e., the Training Program).  C.R. ENGLAND induced applicants by representing that if they would travel to Fontana CA and enroll in the Training Program at Premier they would be provided with a "guaranteed job" as a well-paid, full-time truck driver once they obtained their CDL.

32.     However, material facts regarding the nature of the work, which C.R. ENGLAND misrepresented and deliberately failed to disclose, were among other things, the following:

  a. The amount which C.R. ENGLAND charged for its 17-day Training Program was far above its actual cost for the program.

  b. The business objective of the Training Program was not to prepare drivers for long-term employment with C.R. ENGLAND.  Instead, the Training Program was designed and run as an independent profit-making enterprise.  C.R. ENGLAND's profit in the transaction was generated not by its continued employment of its own trainees, but rather by the volume of aspiring drivers which it could charge for its Training Program.

*FIRST AMENDED CLASS ACTION COMPLAINT*

c. C.R. ENGLAND did not intend to treat the applicant's job as "guaranteed" or even terminable only for good cause.  In fact, notwithstanding its representations and the drivers' substantial financial investment in their employment, C.R. ENGLAND always intended to, and did, treat the drivers' employment as terminable at-will.

d. In fact, C.R. ENGLAND's for-profit Training Program churned out far more student drivers than it could ever actually employ.  As a result, C.R. ENGLAND had to actively find ways to cull the ranks of its drivers and to replace them with more profitable paying applicants.

e. As a result, far from having a "guaranteed job," virtually all of the drivers who pay to complete the Training Program are destined to have their employment terminated within less than a year.

f. In anticipation of this treatment, upon arriving at Fontana, drivers were required to execute a series of unconscionable legal documents, which they had little or no opportunity to read or comprehend.  These included:

   i. An illegal agreement to work as an indentured worker who would be obligated to pay C.R. ENGLAND a penalty or "liquidated damages" of approximately $2,500 as the price of leaving employment with C.R. ENGLAND.

   ii. An illegal agreement to refrain from working for any competitor of C.R. ENGLAND for a period of at least nine months.

   iii. An illegal agreement allowing C.R. ENGLAND to accelerate the payment of principal owed for the Training Program and to assess penalties, wage deductions, and usurious interest payments in the event the driver's employment is terminated.

g. C.R. ENGLAND further failed to disclose that drivers would be expected to work without legally required off-duty meal breaks and

13

1   paid rest breaks.

2       h. C.R. ENGLAND further failed to disclose that drivers would be

3          required to work numerous hours without any compensation or for

4          compensation below the applicable minimum wage rate.

5       33. PLAINTIFFS and other members of the Class were employed pursuant

6   to a "C.R. England, Inc. Driver Education and Employment Contract," which was

7   presented to newly hired employees in a substantially similar form.  A copy of the

8   Driver Education and Employment Contract executed by Plaintiff Gradie is attached

9   as Exhibit A.

10       34. Under the stated terms of this contract, C.R. ENGLAND claimed that it

11   would provide a guaranteed job.  PLAINTIFFS and other CALIFORNIA CLASS

12   members, however, were effectively required to "buy" this job opportunity from

13   C.R. ENGLAND by agreeing to the following illegal and unconscionable terms:

14       a. A requirement to pay C.R. ENGLAND approximately $5,175 or some

15          other sum, which C.R. ENGLAND represented as the cost of its in-

16          house job training program (which C.R. ENGLAND refers to as the

17          "Premier Truck Driving School").

18       b. A requirement to work exclusively for C.R. ENGLAND for at least

19          nine or twelve months, at the compensation rate and terms set by C.R.

20          ENGLAND.

21       c. A requirement to pay a penalty or "liquidated damages" of $2,500 to

22          C.R. ENGLAND in the event employment was terminated by C.R.

23          ENGLAND, or if the employee resigned his or her employment prior to

24          the nine or twelve-month period.

25       d. A requirement that C.R. ENGLAND could deduct these "liquidated

26          damages" from any of the employee's wages which were earned but

27          unpaid at the time of the termination of his employment.

28       e. A requirement to waive any right to pursue certain protections of

14

1    California employment law.

2  **B.    C.R. ENGLAND'S PROMISSORY NOTE AND USURIUS INTEREST**

3  **CHARGES**

4        35.    As a further part of C.R. ENGLAND's Training Program, C.R.

5  ENGLAND required applicants to execute a Promissory Note in favor of "CR

6  England dba Premier Truck Driving School," in substantially the form as is attached

7  hereto as Exhibit B.  This Promissory Note, included the following misleading,

8  illegal, and unconscionable terms:

9           a.  The Promissory Note failed to include the applicable annual percentage

10             rate and finance charge applicable to the balance of the borrowed funds

11             as part of the Special Regulation Z Disclosures Box contained in the

12             Promissory Note.

13          b.  The actual rate of interest was to be 18%, compounded daily, which is

14             far in excess of the maximum rate permitted by California law.

15          c.  The Promissory Note purported to allow C.R. ENGLAND to make

16             self-help deduction for repayment of the Promissory Note from any

17             amounts owed to PLAINTIFFS and other CALIFORNIA CLASS

18             members by C.R. ENGLAND, in violation of applicable debt

19             collection, consumer protection statutes, and employment laws.

20          d.  The Promissory Note falsely represented that "if I complete the term of

21             my employment with C.R. England, C.R. England will satisfy this note

22             in its entirety on my behalf."

23       36.    The California Constitution, Article XV, Section 1, and California Civil

24  Code §§ 1912 *et seq*., set the maximum rate of interest at 10% per annum for loans

25  of money used primarily for personal, family, or household purposes, such as loans

26  used to pay for educational and vocational training expenses.

27       37.    Notwithstanding these provisions of law, C.R. ENGLAND's consistent

28  policy and practice was to require interest of 18% or more on the outstanding

15

balances of the Promissory Notes which members of the CLASS were required to execute as a condition of their training and employment.

38.     As a result, C.R. ENGLAND has consistently violated the provisions of the California usury law and affected members of the CLASS are thereby entitled to seek all authorized remedies, including voiding of the Promissory Notes, forfeiture of all interest charged or purportedly due pursuant to these usurious Promissory Notes, an award of treble damages, and all derivative statutory and civil penalties thereby triggered and authorized by law, including, but not limited to, under Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 *et seq.*

**C.     C.R. ENGLAND'S FAILURE TO PAY FOR ALL HOURS WORKED AT APPLICABLE MINIMUM WAGE, STRAIGHT TIME WAGE, AND/OR OVERTIME RATES**

39.     C.R. ENGLAND fails to pay PLAINTIFFS and the CLASS the correct amount of compensation because C.R. ENGLAND established an illegal pay practice of paying compensation on a piece-rate basis when delivering loads at the locations assigned by C.R. ENGLAND and as such fails to pay minimum wages, regular wages, and/or overtime wages for all compensable time worked.

40.     C.R. ENGLAND required PLAINTIFFS and the other CLASS members to perform numerous forms of work without separate hourly compensation, including, but not limited to, the following:

a.  Completing C.R. ENGLAND's in-house driver training program;

b.  Completing C.R. ENGLAND's orientation and new-hire paperwork;

c.  Completing C.R. ENGLAND's road driving evaluation;

d.  Completing the mandatory DOT physical examination, drug test, and other requirements for beginning employment with C.R. ENGLAND in compliance with the Employment Contract;

e.  Completing pre and post trip inspections;

16

f.  Completing fueling, maintenance, and cleaning of vehicles;

g.  Completing 10 min. paid rest periods mandated and allowed by California law;

h.  Completing other non-driving tasks directed by C.R. ENGLAND during their work shifts.

41.   During the relevant time period, PLAINTIFFS and the other members of the CLASS have been paid less for time worked than they are entitled to, constituting a failure to pay all earned wages.

42.   C.R. ENGLAND maintains a uniform wage practice of paying the PLAINTIFFS and the other members of the CLASS without regard to the correct amount of time they worked, including time spent engaging in non-driving related tasks.  As set forth herein, C.R. ENGLAND's uniform policy and practice is to unlawfully and intentionally deny timely payment of regular, straight time, and overtime wages due to PLAINTIFFS and the other members of the CLASS.

43.   In committing these violations of the California Labor Code and Wage Order No. 9-2001, C.R. ENGLAND inaccurately calculates the correct time worked and consequently underpays the actual time worked by PLAINTIFFS and other members of the CLASS.  C.R. ENGLAND acts in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission Wage Order's requirements, and all applicable laws and regulations.

44.   As a direct result of C.R. ENGLAND's unlawful wage practices as alleged herein, PLAINTIFFS and the other members of the CLASS do not receive the correct regular wages, straight time wages, and/or overtime compensation for all of their time worked for C.R. ENGLAND.

D.   **C.R. ENGLAND'S PRACTICES REGARDING EXPENSE REIMBURSEMENT AND DEDUCTIONS FROM WAGES**

45.   In this action, PLAINTIFFS, on behalf of themselves and the CLASS,

17

seek to recover all the compensation and business expenses that C.R. ENGLAND is required by law to provide, but fails to provide, to PLAINTIFFS and all other CLASS members.  PLAINTIFFS also seek penalties and all other relief available to them and other CLASS members under California or federal law.  Finally, PLAINTIFFS on behalf of themselves and the other CLASS members seek declaratory relief finding that the employment practices and policies of C.R. ENGLAND violated California law and injunctive relief to enjoin C.R. ENGLAND from continuing to engage in such employment practices.

46.     Pursuant to California Labor Code §§ 2802 and 2804 *et seq.*, and Wage Order No. 9-2001, an employer must indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

47.     C.R. ENGLAND violated these requirements by requiring PLAINTIFFS and other CLASS members to make expenditures required for work and failing to indemnify and reimburse PLAINTIFFS and the other members of the CLASS as required by law.  PLAINTIFFS have thus been damaged in an amount according to proof at time of trial.

48.     PLAINTIFFS and the other members of the Class seek recovery of all required business expenses that they paid, including, but not limited to any expenses incurred in relation to C.R. ENGLAND's Training Program, for which they were not properly reimbursed, for cell phone expenses, etc.

49.     Pursuant to California Labor Code §§ 221, 223, 451(a), 2802 and 2804, and Wage Order No. 9-2001, an employer may not do any of following: deduct sums from the wages of an employee; require the employee to patronize the employer's services; require employees to pay for amounts incurred in the course and scope of his or her employment; or bear the employer's normal costs and expenses of doing business.

50.     C.R. ENGLAND violated these requirements by requiring

18

PLAINTIFFS and other CLASS members to pay out of their own pockets for C.R. ENGLAND's own mandated Training Program; requiring PLAINTIFFS and other CLASS members to patronize C.R. ENGLAND's own for-profit training and finance programs; requiring PLAINTIFFS and other CLASS members to incur wage deductions for training costs, "liquidated damages," usurious interest, and other sums supposedly owed to C.R. ENGLAND or its affiliate(s).

51.     PLAINTIFFS and the CLASS seek recovery of damages for all wages that were improperly deducted by C.R. ENGLAND, including amounts deducted by C.R. ENGLAND in relation to C.R. ENGLAND's Training Program, the costs of the required drug test, physical examination, the cost of obtaining the Commercial Driver's License ("CDL"), and other costs which were reasonably required in order to comply with the terms of the Driver Education and Employment Contract or any other aspect of the Training Program.

**E.     C.R. ENGLAND'S PRACTICES REGARDING MEAL AND REST PERIODS**

52.     During PLAINTIFFS' and the other CLASS members' employment, C.R. ENGLAND did not maintain any policy to provide PLAINTIFFS or the other CLASS members with at least one 30-minute, uninterrupted, off-duty meal break for each continuous work period of at least five hours.  This includes not permitting PLAINTIFFS and the other CLASS members to take a first uninterrupted meal period of 30-minutes by the end of their fifth hour of work and/or a second uninterrupted meal period of 30-minutes by the end of their tenth hour of work.  Nor did C.R. ENGLAND maintain any policy that authorized or permitted PLAINTIFFS and the other CLASS members to take off-duty rest breaks of at least 10-minutes for each four hours of work, or major fraction thereof.

53.     C.R. ENGLAND fails to provide all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to PLAINTIFFS and the other CLASS members as required by Wage Order No. 9-

19

2001 and applicable provisions of the California Labor Code.  C.R. ENGLAND does not have a policy or practice which provides or records all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to PLAINTIFFS and the other CLASS members.  As a result, C.R. ENGLAND's failure to provide PLAINTIFFS and the CLASS members with all the legally required off-duty, unpaid meal periods and all the legally required off-duty, paid rest periods is evidenced by C.R. ENGLAND's business records.

54.    At all relevant times, California Labor Code §§ 226.7 and 512 and Industrial Welfare Commission Wage Order 9-2001 required C.R. ENGLAND to provide meal periods to PLAINTIFFS and other members of the CLASS.

55.    Notwithstanding these legal requirements, C.R. ENGLAND failed to authorize and permit meal periods to PLAINTIFFS and other members of the CLASS.  C.R. ENGLAND failed to pay premium wages for each workday that C.R. ENGLAND did not authorize and permit meal periods.

56.    In addition, at all relevant times, California Labor Code § 226.7 and Industrial Welfare Commission Wage Order No. 9-2001, section 12, required C.R. ENGLAND to provide rest periods to PLAINTIFFS and other members of the CLASS at the rate of ten minutes net rest time for each four hours worked, or major fraction thereof.  Authorized rest period time is counted as hours worked and must be paid at the regular rate of pay pursuant to California Labor Code § 226.2.

57.    C.R. ENGLAND was required to pay PLAINTIFFS and other members of the Class with premium pay calculated at the rate of one hour of pay at the regular rate of compensation for each workday that a rest period was not provided.

58.    Notwithstanding these legal requirements, C.R. ENGLAND failed to authorize and permit rest periods to PLAINTIFFS and other members of the CLASS.  C.R. ENGLAND failed to pay premium wages for each workday that C.R. ENGLAND did not authorize and permit rest periods.

59.    As a result of C.R. ENGLAND's violations alleged herein,

20

*FIRST AMENDED CLASS ACTION COMPLAINT*

PLAINTIFFS and other members of the CLASS are entitled to recover premium wages, including pursuant to Business & Professions Code §§ 17200 et seq. for restitution of all earned but unpaid premium wages, and all statutory and civil penalties under the California Labor Code resulting therefrom.

**F.     C.R. ENGLAND'S PRACTICES REGARDING RECORDS AND PAY STATEMENTS**

60.     During PLAINTIFFS' and the CLASS members' employment with C.R. ENGAND, they were also subject to C.R. ENGLAND's uniform policy and practice of failing to provide accurate itemized pay statements setting forth, *inter alia,* all hours worked and all applicable rates of pay.

61.     From time to time, C.R. ENGLAND also fails to maintain copies of accurate itemized wage statements and/or provide PLAINTIFFS and the other members of the CLASS with complete and accurate wage statements which fail to show, among other things, the correct minimum wages for all their time worked, including, allocation of lawfully required, paid, and off-duty rest periods.  California Labor Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate along with other required information.  California Labor Code § 226.2 further imposes additional wage statement requirements on employers who pay in whole or in part using a piece-rate.  As a result, C.R. ENGLAND provides PLAINTIFFS and the other members of the CLASS with wage statements which violate California Labor Code §§ 226 and 226.2.

62.     PLAINTIFFS further allege on information and belief that C.R. ENGLAND has failed to maintain copies of accurate itemized wage statements for employees as required by California law, and from time to time has engaged in unlawful practices that include charging employees costs for copies of personnel

21

records that exceed the costs of reproduction and therefore violate California law, including various provisions of the California Labor Code.

63.    California Labor Code § 226(a) provides that an employer must furnish employees with an "accurate itemized statement in writing showing the following:

    a.  gross wages earned,

    b.  total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission,

    c.  the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,

    d.  all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,

    e.  net wages earned,

    f.  the inclusive dates of the period for which the employee is paid,

    g.  the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement,

    h.  the name and address of the legal entity that is the employer, and

    i.  all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

64.    California Labor Code § 226.2 imposes additional wage statement requirements on employers who pay by the piece, including requiring the wage statement they issue to identify the rest break time, regular rate of pay provided for the rest breaks that were earned, and the amount of rest break pay.

65.    From time to time, C.R. ENGLAND violates California Labor Code

*FIRST AMENDED CLASS ACTION COMPLAINT*

§ 226(a) and other provisions of California law (including California Labor Code § 226.2) relating to information that must be set forth in wage statements, in that C.R. ENGLAND fails to properly and accurately itemize the gross wages earned, the net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate by the employee and other requirements.  C.R. ENGLAND fails to provide PLAINTIFFS and the other members of the Class with complete and accurate wage statements which fail to show, among other things, the correct minimum wage compensation for time worked, and allocation of lawfully required, paid off-duty rest periods and payment for missed meal periods, etc..  California Labor Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate.  As a result, C.R. ENGLAND provides PLAINTIFFS and the other members of the CLASS with wage statements which violate California Labor Code § 226 and other sections of the California Labor Code (e.g., California Labor Code § 226.2).

66.     C.R. ENGLAND knowingly and intentionally fails to comply with California Labor Code §§ 226(a) and 226.2 as well as other applicable sections of the California Labor Code, causing damages to PLAINTIFFS, and the other members of the CLASS.  These damages include, but are not limited to, costs expended calculating the true time worked and the amount of employment taxes which were not properly paid to state and federal tax authorities.  These damages are difficult to estimate.  Therefore, PLAINTIFFS, and the other members of the CLASS may recover a penalty of $50.00 for the initial pay period in which the violation occurred, and $100.00 for each violation in subsequent pay period pursuant to Labor Code § 226, in an amount according to proof at the time of trial (but in no event more than $4,000.00 for PLAINTIFFS and each respective member

*FIRST AMENDED CLASS ACTION COMPLAINT*

1  of the CLASS herein).

2    67.    C.R. ENGLAND was required under California law, including but not

3  limited to California Labor Code §§ 226(a),(b) and 1174 and Wage Order 9-2001,

4  section 7, to maintain copies of accurate itemized wage statements showing the

5  items enumerated in Labor Code § 226(a) and other provisions of California law

6  relating to information that must be set forth in wage statements.

7    68.    C.R. ENGLAND failed to satisfy its obligations under California law

8  and did not maintain or make available to its employees, copies of accurate itemized

9  wage statements.

10 **G.    C.R. ENGLAND'S MISREPRESENTATIONS REGARDING ITS**

11 **TRAINING PROGRAM AND RELATED TERMS AND CONDITIONS**

12 **OF EMPLOYMENT**

13   69.    From the time Plaintiff Gradie executed the Employment Contract until

14 his termination by C.R. ENGLAND, Plaintiff performed all material terms of the

15 Employment Contract, even including the requirements to perform uncompensated

16 work and the requirement that he personally pay necessary, work-related expenses.

17   70.    C.R. ENGLAND promised according to the terms of the Employment

18 Contract that it would not terminate Plaintiff's employment except upon a showing

19 of "Due Cause," defined as a breach of Employment Contract by Plaintiff, a breach

20 of C.R. ENGLAND's Driving Manual, or a violation of law.  However,

21 notwithstanding this promise, C.R. ENGLAND knew at the time it entered into the

22 contract that its true policy was to deem Plaintiff's employment to be terminable at-

23 will without any requirement of good cause.

24   71.    In approximately October of 2015, following an incident in which one

25 of C.R. ENGLAND's vehicle's suffered an equipment malfunction due to no fault

26 of Plaintiff, C.R. ENGLAND terminated Plaintiff's employment without any good

27 faith finding of "Due Cause."

28   72.    Despite the absence of any finding of "Due Cause" for the termination

*FIRST AMENDED CLASS ACTION COMPLAINT*

of Plaintiff's employment, C.R. ENGLAND nevertheless deducted $2,500 in alleged "liquidated damages" from his earned compensation.

73.     C.R. ENGLAND also advertised throughout California and the nation in order to induce applicants desiring to become truck drivers for it to relocate to Fontana, California (and other locations) in order to enroll in its for-profit, in-house Premier Truck Driving School (i.e., in the Training Program).  C.R. ENGLAND induced these applicants by representing that if they would travel to Fontana, California, and enroll in the Training Program they would be provided with a "guaranteed job" as a well-paid, full time truck driver. C.R. ENGLAND charged $5,175 (or other similar amount consisting of many thousands of dollars) for the 17-day Training Program.  The Training Program was a necessary training for the job of the CLASS members.  After hire, C.R. ENGLAND required that CLASS members enter into an agreement whereby they pay C.R. ENGLAND a penalty of $2,500 for terminating employment with C.R. ENGLAND.  The penalty would be deducted from compensation of the CLASS members that was earned and unpaid at the time of employment termination.  Additionally, C.R. ENGLAND required the CLASS members to agree to pay back the Training Program expenses via a Promissory Note that failed to state the applicable annual percentage rate, was 18% compounded in excess of the California maximum rate, allowed C.R. ENGLAND to make self-help wage deductions, and falsely indicated that the debt would be satisfied if the CLASS member was able to "complete the term of [his or her] employment with C.R. England..."

74.     At all relevant times, California Labor Code §§ 970 and 972 were in force and effect and applied to C.R. ENGLAND.

75.     Pursuant to Labor Code § 970, no person may, among other things, directly or indirectly influence, persuade, or engage any person to move from one place or another based on knowingly false representations regarding the nature of available work.

*FIRST AMENDED CLASS ACTION COMPLAINT*

76.     On information and belief, C.R. ENGLAND caused PLAINTIFFS and other members of the Class, through knowingly false representations concerning C.R. ENGLAND's Training Program located in Fontana, California, including but not limited to guarantees as to continued employment upon successful completion of a training program, to relocate to or to remain in Fontana, California.

77.     On information and belief, false representations by C.R. ENGLAND to PLAINTIFFS and other members of the CLASS included the following:  (a) that actual out-of-pocket costs incurred by C.R. ENGLAND in providing training exceeded $5,000 (or many thousands of dollars) per student, (b) that upon completion of the Training Program, full-time work for C.R. ENGLAND would be "guaranteed" for a certain period of time, (c) that upon completion of the Training Program, employment by C.R. ENGLAND would be terminable only upon "good cause" rather than at will, and (d) that C.R. ENGLAND would pay the costs of training for PLAINTIFFS and other members of the CLASS and cause a promissory note in the amount of the costs of training executed by PLAINTIFFS and other members of the CLASS to be satisfied and discharged after nine months of employment.

78.     On information and belief, these and other representations about the Training Program were false.

79.     On information and belief, C.R. ENGLAND made these representations with knowledge of their falsity.

80.     On information and belief, absent such false representations concerning C.R. ENGLAND's Training Program located in Fontana, California, PLAINTIFFS and other members of the CLASS would not have moved to Fontana or remained in Fontana for C.R. ENGLAND's Training Program.

81.     As a result of C.R. ENGLAND's misrepresentations related to the Training Program (including, but not limited to, the misrepresentations violating Labor Code § 970 et seq.), PLAINTIFFS and other members of the CLASS are

26

entitled to recover damages as provided by Labor Code § 972 or allowed by other applicable law, including but not limited to restitution and disgorgement under California Business & Professions Code §§ 17200 et seq. and for recovery of all statutory penalties and civil penalties permitted by law, including, but not limited to, civil penalties under California Labor Code §§ 558, 972, and 2699 *et seq.*

**H.   C.R. ENGLAND'S PRACTICES REGARDING UNTIMELY PAYMENT OF WAGES**

82.   California law, including Labor Code §§ 201-203, require payment of all earned wages immediately at the time of termination of employment, except upon resignation with less than 72 hours of notice to the employer all earned wages must then be paid within 72 hours of resignation.

83.   Despite these legal obligations, C.R. ENGLAND failed to pay all earned wages to PLAINTIFFS and other members of the CLASS, either at the time of termination, or within 72 hours of resignation of employment in circumstances when employees communicated their resignation less than 72 hours in advance of the actual time of resignation.

84.   As a result of C.R. ENGLAND's violations alleged herein, PLAINTIFFS and other members of the CLASS are entitled to recover penalties under Labor Code § 203, to other legal and equitable remedies available under law, and to all statutory and civil penalties resulting therefrom.

85.   At all relevant times, California Labor Code § 204 was in force and effect and required C.R. ENGLAND to pay to PLAINTIFFS and other members of the CLASS all earned wages at least twice each month on days designated as regular paydays.

86.   On information and belief, C.R. ENGLAND violated California Labor Code § 204 by failing to pay all earned wages within the time period required by Labor Code § 204.

87.   PLAINTIFFS and other members of the Class have suffered injury as a

27

1    result of C.R. ENGLAND's violations of California Labor Code § 204.

2        88.    C.R. ENGLAND also did not issue any final pay statement

3    immediately upon PLAINTIFFS' termination (or alternatively within 72 hours of

4    PLAINTIFFS' resignation) as required by California law.  Instead, it willfully

5    waited until at least its next regularly scheduled payday to issue their final pay

6    statements.  PLAINTIFFS' final pay upon cessation of employment was therefore

7    both untimely calculated as well as never paid in full due to the improper deductions

8    taken by C.R. ENGLAND.

9        89.    As a result of C.R. ENGLAND's failure to pay for all hours worked, its

10   methods of calculating compensation due, its deductions from the wages actually

11   earned by PLAINTIFFS and the other CLASS members, and its failure to reimburse

12   necessary employment-related expenses, by PLAINTIFFS and the other CLASS

13   members consistently earned less than the applicable California and federal

14   minimum wage for all hours worked during their employment.

15   **I.    C.R. ENGLAND'S UNFAIR COMPETITION**

16       90.    In performing the conduct herein alleged, C.R. ENGLAND's wrongful

17   conduct and violations of law as herein alleged demean and wrongfully deprive

18   PLAINTIFFS and the other members of the CLASS of money, wages, career

19   opportunities, and other sums to which they are lawfully entitled.  C.R. ENGLAND

20   engages in such wrongful conduct by failing to have adequate employment policies

21   and maintaining adequate employment practices consistent with such policies and

22   the applicable law.  C.R. ENGLAND's wrongful conduct as herein alleged caused

23   the money belonging to PLAINTIFFS and the other members of the CLASS to be

24   kept by C.R. ENGLAND and thereby converted by C.R. ENGLAND for C.R.

25   ENGLAND's own use.

26       91.    California Business & Professions Code §§ 17200 et seq. defines unfair

27   competition as any unlawful, unfair, or fraudulent business act or practice.  Section

28   17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to

                                        28

1   unfair competition as follows:

2       92.     Any person who engages, has engaged, or proposes to engage in unfair

3   competition may be enjoined in any court of competent jurisdiction. The court may

4   make such orders or judgments, including the appointment of a receiver, as may be

5   necessary to prevent the use or employment by any person of any practice which

6   constitutes unfair competition, as defined in this chapter, or as may be necessary to

7   restore to any person in interest any money or property, real or personal, which may

8   have been acquired by means of such unfair competition.

9       93.     By the conduct alleged herein, C.R. ENGLAND has engaged and

10  continues to engage in a business practice which violates California and federal law,

11  including but not limited to, California Constitution, Article XV, Section 1, and

12  Civil Code §§ 1912, et seq., the applicable Industrial Wage Order (i.e., Wage Order

13  No. 9-2001), the California Code of Regulations, the California Labor Code

14  including, but not limited to, Sections 201, 202, 203, 204, 204.2, 210, 218, 221,

15  222.5, 223, 225.5, 226, 226(a), 226(b), 226(e), 226.2, 226.3, 226.7, 256, 432.5, 450,

16  451(a), 510, 512, 558, 970-972, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198,

17  1198.5, 2802, 2804 and 2699 of the Labor Code, for which this Court should issue

18  declaratory and other equitable relief pursuant to California Business & Professions

19  Code § 17203 as may be necessary to prevent and remedy the conduct held to

20  constitute unfair competition, including restitution of all wages and other monies

21  wrongfully withheld.

22      94.     Accordingly, C.R. ENGLAND committed acts of unfair competition in

23  violation of the California Unfair Competition Law (i.e., California Business &

24  Professions Code §§ 17200, et seq.) by engaging in company-wide policies that

25  violated the California Labor Code and other aspects of California laws as described

26  herein.

27

28

*FIRST AMENDED CLASS ACTION COMPLAINT*

**J.     C.R. ENGLAND'S VIOLATION OF THE CALIFORNIA LABOR CODE PRIVATE ATTORNEY GENERAL ACT ("PAGA")**

95.     The California Private Attorneys' General Act (i.e., California Labor Code §§ 2698 et seq.) is a mechanism by which the State of California itself can enforce state labor and employment laws through the employee suing under the PAGA who do so as the proxy or agent of the state's labor law enforcement agencies.  An action to recover civil penalties under PAGA is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of the PAGA is not to recover damages or restitution, but to create a means of "deputizing" citizens as private attorneys general to enforce the California Labor Code.  In enacting PAGA, the California Legislature specified that "it was ... in the public interest to allow aggrieved employees, acting as private attorneys general to recover civil penalties for Labor Code violations ..." Stats. 2003, ch. 906, § 1.

96.     PLAINTIFFS bring a PAGA Representative Action on behalf of the State of California with respect to themselves and all individuals who are or previously were employed by C.R. ENGLAND as Truck Drivers employees in California or who enrolled in C.R. ENGLAND's Training Program (the "Aggrieved Employees"), during the time period from February 1, 2015 to the present.

97.     PLAINTIFFS have provided notice of the Labor Code violations alleged herein to the California Labor and Workforce Development Agency ("LWDA").  Following expiration of 33 days, the LWDA declined to exercise its jurisdiction over the present claims for violation of the Labor Code.  PLAINTIFFS have thus exhausted the administrative remedies required as a prerequisite for the present private action pursuant to Labor Code §2699.3.

98.     The policies, acts and practices heretofore described were and are an violations of the California Labor Code, including, *inter alia*, Labor Code §§ 201, 202, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226, 226(a), 226(b), 226(e),

226.2, 226.3, 226.7, 256, 432.5, 450, 451(a), 510, 512, 558, 970-972, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2802, and 2804, and the applicable Industrial Wage Order(s), and thereby gives rise to statutory penalties as a result of such conduct.  PLAINTIFFS thus hereby seek recovery of civil penalties as prescribed by the Private Attorneys General Act of 2004 (i.e., PAGA) as the representative of the State of California and the other Aggrieved Employees.

## THE CALIFORNIA CLASS

99.    PLAINTIFFS bring the First Cause of Action for Unfair, Unlawful and Deceptive Business Practices pursuant to California Business & Professions Code §§ 17200 *et seq*. (the "UCL") as a Class Action, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and a California class, defined as all individuals who are or previously were employed by DEFENDANT in California as Truck Driver employees at any time during the period beginning on March 12, 2014 and continuing up through the present (i.e., the CLASS or CALIFORNIA CLASS).

100.   PLAINTIFFS also bring their Second to Twelfth Causes of Action on behalf themselves and all members of the CALIFORNIA CLASS who are or previously were employed by DEFENDANT in California as Truck Driver employees from March 12, 2014 continuing up through the present.

101.   DEFENDANT, as a matter of corporate policy, practice and procedure, and in violation of the applicable California Labor Code sections, Industrial Welfare Commission ("IWC") Wage Order requirements, and the applicable provisions of California and federal law, intentionally, knowingly, and willfully, engages in a practice whereby DEFENDANT uses an unlawful, unfair and deceptive method to calculate minimum, regular, and overtime wage payments as well as payment for missed meal periods and off-duty rest breaks owed to PLAINTIFFS and the other members of the CALIFORNIA CLASS.

102.   DEFENDANT is legally required to comply with all applicable labor laws and regulations with respect to these employees.  All CALIFORNIA CLASS

31

members, including PLAINTIFFS, perform the same manual labor and are paid by DEFENDANT according to uniform and systematic company procedures, which, as alleged herein above, fail to correctly pay minimum, regular, and/or overtime wage compensation.  This business practice is, upon information and belief, uniformly applied to each and every member of the CALIFORNIA CLASS, and therefore, the propriety of these business practices can be adjudicated on a class-wide basis.

103.   DEFENDANT uniformly violated the rights of PLAINTIFFS and the CALIFORNIA CLASS members under applicable California law by, among other things, engaging in the following wrongful conduct:

    a.  Intentionally, knowingly, and willfully, engaging in a practice whereby DEFENDANT fails to correctly calculate compensation for the time worked by PLAINTIFFS and the other members of the CALIFORNIA CLASS or otherwise comply with California law concerning the CALIFORNIA CLASS, even though DEFENDANT enjoys the benefit of this work, requires employees to perform this work and permits or suffers employees to perform this work; and

    b.  Uniformly denying PLAINTIFFS and the members of the CALIFORNIA CLASS the correct minimum, regular, or overtime wages and otherwise violating applicable law, including, but not limited to, by failing to maintain or provide compliant wage statements, failing to provide meal and/or rest periods, failing to record meal periods, failing to reimburse for required business expenses, taking unlawful deductions from wages earned, failing to timely pay all wages owed during an individual's employment and/or upon termination, making various unlawful misrepresentations to induce PLAINTIFFS and the other members of the CALIFORNIA CLASS to enroll in the

32

Training Program, and charging usurious interest rates.

    c.  Uniformly denying the CALIFORNIA CLASS members wage and other compensation or monies to which these employees are entitled in order to unfairly cheat the competition and lawfully profit in violation of California's Unfair Competition Law, i.e., California Business & Professions Code §§ 17200, *et seq*.

104.  This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in California Federal Rule of Civil Procedure 23, in that:

    a.  PLAINTIFFS are members of the CLASS they seek to represent;

    b.  The persons who comprise the CALIFORNIA CLASS are so numerous that the joinder of all CALIFORNIA CLASS members is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

    c.  Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to PLAINTIFFS and the CALIFORNIA CLASS and will apply uniformly to every member of the CALIFORNIA CLASS. Common questions of law and fact exist as to the claims of the members of the CLASS.  Such common questions predominate over the questions, if any, which affect only individual members.  Such common questions include, but are not limited to, the following:

        1)  Whether C.R. ENGLAND followed a consistent policy and practice of imposing unlawful wage deductions and payment of expenses by, *inter alia*: requiring CLASS members to pay out of their own pockets for C.R. ENGLAND's own internally-mandated training Program; requiring CLASS members to patronize C.R. ENGLAND's own for-profit training and finance program; and

33

1   deducting from wages for training costs, alleged "liquidated

2   damages," usurious interest rates, and other sums supposedly owed

3   to C.R. ENGLAND;

4   2)      Whether C.R. ENGLAND failed to pay any wages for the

5   substantial numbers of compensable hours worked by CLASS

6   members completing employer-mandated training programs and

7   waiting for assignments;

8   3)      Whether C.R. ENGLAND made false representations to

9   relocating CLASS members that: (a) the actual out-of-pocket cost to

10  C.R. ENGLAND for its training was in excess of the $5,000

11  charged for attending Premier; (b) full-time work would be

12  "guaranteed" by C.R. ENGLAND for at least the mandated term of

13  employment; (c) that during this "guaranteed" employment period

14  their employment would not be terminable "at will" on the same

15  basis as other C.R. ENGLAND employees, but rather would be

16  terminable only for demonstrated "good cause"; and (d) that C.R.

17  ENGLAND would fully pay the cost of the Training Program and

18  thereby cause the Promissory Note to be satisfied and discharged

19  upon completion of their term of employment.

20  4)      Whether C.R. ENGLAND failed to discharge the legal

21  duty to provide off-duty meal and rest periods as required by

22  California law;

23  5)      Whether C.R. ENGLAND failed to provide accurate,

24  itemized wage statements to the CLASS;

25  6)      Whether C.R. ENGLAND failed to time pay all wages

26  owed to CLASS members during their employment.

27  7)      Whether C.R. ENGLAND failed to time pay all wages

28  owed to CLASS members upon termination of their employment;

34

and

8)      Whether C.R. ENGLAND charged usurious interest rates in excess of 18% to members of the CLASS pursuant to the terms of Promissory Notes which were required to obtain employment with C.R. ENGLAND.

d.      The claims of the representative PLAINTIFFS are typical of the claims of each member of the CALIFORNIA CLASS.  PLAINTIFFS, like all other members of the CALIFORNIA CLASS, have been subjected to DEFENDANT's illegal practice of failing to permit all required meal and rest periods as well as pay minimum, regular, and/or overtime wages for all time worked by PLAINTIFFS and other members of the CALIFORNIA CLASS.  PLAINTIFFS, like all other members of the CALIFORNIA CLASS, have also been subjected to other unlawful treatment by DEFENDANT, including, but not limited to, by DEFENDANT failing to maintain or provide compliant wage statements, failing to reimburse for required business expenses, taking unlawful deductions from wages earned, failing to timely pay all wages owed during an individual's employment and/or upon termination, making various unlawful misrepresentations to induce PLAINTIFFS and the other members of the CALIFORNIA CLASS to enroll in the Training Program, and charging usurious interest rates.  PLAINTIFFS sustained economic injury as a result of DEFENDANT's employment practices described above.  PLAINTIFFS and the members of the CALIFORNIA CLASS were and are similarly or identically harmed by the same unlawful, deceptive, unfair and pervasive pattern of misconduct engaged in by the DEFENDANT; and,

e.      The representative PLAINTIFFS will fairly and adequately represent and protect the interest of the CALIFORNIA CLASS, and has retained

35

counsel who is competent and experienced in Class Action litigation.
PLAINTIFFS are adequate representatives as they have no interests
which are adverse to the interests of the CLASS.  PLAINTIFFS are
committed to the vigorous prosecution of this action and, to that end,
have retained counsel who is competent and experienced in handling
employment-related class action litigation.  There are no material
conflicts between the claims of the representative PLAINTIFFS and the
members of the CALIFORNIA CLASS that would make class
certification inappropriate.  Counsel for the CALIFORNIA CLASS
will vigorously assert the claims of all CALIFORNIA CLASS
members.

105.   In addition to meeting the necessary prerequisites to a Class Action,
this action is properly maintained as a Class Action pursuant to Federal Rule of
Civil Procedure 23, in that:

a.   Without class certification and determination of declaratory, injunctive,
statutory and other legal questions within the class format, prosecution
of separate actions by individual members of the CALIFORNIA
CLASS will create the risk of:

i.   Inconsistent or varying adjudications with respect to individual
members of the CALIFORNIA CLASS which would establish
incompatible standards of conduct for the parties opposing the
CALIFORNIA CLASS; and/or,

ii.   Adjudication with respect to individual members of the
CALIFORNIA CLASS which would as a practical matter be
dispositive of interests of the other members not party to the
adjudication or substantially impair or impede their ability to
protect their interests.

b.   The parties opposing the CALIFORNIA CLASS have acted or refused

36

to act on grounds generally applicable to the CALIFORNIA CLASS, making appropriate class-wide relief with respect to the CALIFORNIA CLASS as a whole in that the DEFENDANT subjects these individuals to DEFENDANT's systematic practices with respect to non-payment of wages for all time worked and other violations of law as described above;

    i.    With respect to the First Cause of Action, the final relief on behalf of the CALIFORNIA CLASS sought does not relate exclusively to restitution because through this claim PLAINTIFFS seek declaratory relief holding that the DEFENDANT's policies and practices constitute unfair competition, along with declaratory relief, injunctive relief, and incidental equitable relief as may be necessary to prevent and remedy the conduct declared to constitute unfair competition;

c.    Common questions of law and fact exist as to the members of the CALIFORNIA CLASS, with respect to the practices and violations of law listed above, and predominate over any question affecting only individual CALIFORNIA CLASS members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    i.    The interests of the members of the CALIFORNIA CLASS in individually controlling the prosecution or defense of separate actions;

    ii.    The extent and nature of any litigation concerning the controversy already commenced by or against members of the CALIFORNIA CLASS;

    iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

37

iv.     The difficulties likely to be encountered in the management of a Class Action; and,

v.      The basis of DEFENDANT's conduct towards PLAINTIFFS and the CALIFORNIA CLASS.

106.    A class action is superior to other available methods of adjudicating the claims asserted in this action for a number of other reasons as well, including, but not limited to:

a.  The expense and burden of individual litigation make it economically unfeasible for each member of the CLASS to seek a separate, individual remedy;

b.  If separate lawsuits were brought individually by each member of the CLASS it would cause undue hardship and expense to the Court and litigants by necessitating multiple trials of similar factual and legal issues;

c.  The prosecution of separate individual actions would create the risk of inconsistent adjudications of similar factual and legal issues; and

d.  Absent a class action, there would be a failure of justice, as Defendants would retain the benefit of their illegal conduct and wrongdoing.

107.    This Court should also permit this action to be maintained as a Class Action pursuant to Federal Rule of Civil Procedure 23 because:

a.  The questions of law and fact common to the CALIFORNIA CLASS predominate over any question affecting only individual CALIFORNIA CLASS members because the DEFENDANT's employment practices are uniform and systematically applied with respect to the CALIFORNIA CLASS;

b.  A Class Action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the CALIFORNIA CLASS because in the context of employment litigation

38

1    a substantial number of individual CALIFORNIA CLASS members

2    will avoid asserting their rights individually out of fear of retaliation or

3    adverse impact on their employment;

4    c.    The members of the CALIFORNIA CLASS are so numerous that it is

5    impractical to bring all members of the CALIFORNIA CLASS before

6    the Court;

7    d.    PLAINTIFFS, and the other CALIFORNIA CLASS members, will not

8    be able to obtain effective and economic legal redress unless the action

9    is maintained as a Class Action;

10   e.    There is a community of interest in obtaining appropriate legal and

11   equitable relief for the acts of unfair competition, statutory violations

12   and other improprieties, and in obtaining adequate compensation for

13   the damages and injuries which DEFENDANT's actions have inflicted

14   upon PLAINTIFFS and the rest of the CALIFORNIA CLASS;

15   f.    There is a community of interest in ensuring that the combined assets

16   of DEFENDANT are sufficient to adequately compensate the members

17   of the CALIFORNIA CLASS for the injuries sustained;

18   g.    DEFENDANT has acted or refused to act on grounds generally

19   applicable to the CALIFORNIA CLASS, thereby making final class-

20   wide relief appropriate with respect to the CALIFORNIA CLASS as a

21   whole;

22   h.    The members of the CALIFORNIA CLASS are readily ascertainable

23   from the business records of DEFENDANT.  The CALIFORNIA

24   CLASS consists of all DEFENDANT's current and former Truck

25   Driver employees employed in California from March 12, 2014

26   through the present; and,

27   i.    Class treatment provides manageable judicial treatment calculated to

28   bring an efficient and rapid conclusion to all litigation of all wage and

39

*FIRST AMENDED CLASS ACTION COMPLAINT*

hour related claims and other causes of action arising out of the conduct of DEFENDANT as to the members of the CALIFORNIA CLASS.

108.   DEFENDANT maintains records from which the Court can ascertain and identify by name and job title, each of DEFENDANT's employees who have been systematically, intentionally and uniformly subjected to DEFENDANT's corporate policy, practices and procedures as herein alleged.  PLAINTIFFS will seek leave to amend the complaint to include any additional job titles of similarly situated employees when they have been identified.

109.   PLAINTIFFS reserve the right to amend or modify the scope of the alleged CALIFORNIA CLASS or CLASS description based on newly discovered information or circumstances, including alleging the CLASS definition with greater specificity, by further division into subclasses, or by limitation to one or more particular issues.

### THE CALIFORNIA USURY SUBCLASS

110.   PLAINTIFFS bring the Thirteenth Cause of Action on behalf of a California subclass, defined as all members of the CALIFORNIA CLASS who enrolled in DEFENDANT's Training Program and entered into promissory notes with DEFENDANT (the "CALIFORNIA USURY SUBCLASS") at any time from February 1, 2015[2] to the present (the "CALIFORNIA USURY SUBCLASS PERIOD") pursuant to Federal Rule of Civil Procedure 23.

111.   To the extent equitable tolling operates to toll claims by the CALIFORNIA USURY SUBCLASS against DEFENDANT, the CALIFORNIA USURY SUBCLASS PERIOD should be adjusted accordingly.

112.   The California Constitution, Article XV, Section 1, and California Civil

---

[2] This date is one year prior to the filing of the original complaint filed in *Milton Harper et al. v. C.R. England, Inc.*, Case No. 2:16-cv-906-RJS-CMR (D. Utah), which case will be dismissed without prejudice once this First Amended Complaint is filed in this action.

*FIRST AMENDED CLASS ACTION COMPLAINT*

Code §§ 1912 *et seq*., set the maximum rate of interest at 10% per annum for loans of money used primarily for personal, family, or household purposes, such as loans used to pay for educational and vocational training expenses.

113.   Notwithstanding these provisions of law, DEFENDANT'S consistent policy and practice was to require interest of 18% or more on the outstanding balances of the Promissory Notes which members of the CALIFORNIA USURY SUBCLASS were required to execute as a condition of C.R. England's Training Program.

114.   As a result, DEFENDANT has consistently violated the provisions of the California usury law and affected members of the CALIFORNIA USURY SUBCLASS are thereby entitled to seek all authorized remedies, including voiding of the Promissory Notes, forfeiture of all interest charged or purportedly due pursuant to these usurious Promissory Notes, an award of treble damages, and all derivative statutory and civil penalties thereby triggered and authorized by law, including under California Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1197.1, 1198, and 2699 *et seq*.

115.   DEFENDANT charged usury interest rates in excess of 18% to members of the CALIFORNIA USURY SUBCLASS pursuant to the terms of promissory notes which they signed in order to obtain employment with DEFENDANT.

116.   Common questions of law and fact exist as to members of the CALIFORNIA USURY SUBCLASS, including, but not limited, to the following:

a.   Whether DEFENDANT followed a consistent policy and practice of imposing usurious interest rates; and

b.   DEFENDANT would fully pay the cost of training on behalf of the CALIFORNIA USURY SUBCLASS and thereby cause the promissory note to be satisfied and discharged upon completion of their term of

41

1    employment.

2    117.   DEFENDANT violated provisions of the California usury law by

3    imposing on the CALIFORNIA USURY SUBCLASS an interest rate in excess of

4    10% per annum for loans of money used primarily for personal, family, or

5    household purposes, such as loans used to pay for educational and vocational

6    training expenses.

7    118.   This Class Action meets the statutory prerequisites for the maintenance

8    of a Class Action as set forth in Federal Rule of Civil Procedure 23, in that:

9        a.    The persons who comprise the CALIFORNIA USUARY SUBCLASS

10             are so numerous that the joinder of all CALIFORNIA USURY

11             SUBCLASS members is impracticable and the disposition of their

12             claims as a class will benefit the parties and the Court;

13       b.    Nearly all factual, legal, statutory, declaratory and injunctive relief

14             issues that are raised in the cause of action for usury are common to the

15             CALIFORNIA USURY SUBCLASS and will apply uniformly to every

16             member of the CALIFORNIA USURY SUBCLASS;

17       c.    The claims of the representative PLAINTIFFS are typical of the claims

18             of each member of the CALIFORNIA USURY SUBCLASS.

19             PLAINTIFF and all other members of the CALIFORNIA USURY

20             SUBCLASS sustained economic injuries arising from DEFENDANT's

21             violations of the usury laws of California.

22       d.    The representative PLAINTIFFS will fairly and adequately represent

23             and protect the interest of the CALIFORNIA USURY SUBCLASS,

24             and have retained counsel who is competent and experienced in Class

25             Action litigation.  There are no material conflicts between the claims of

26             the representative PLAINTIFFS and the members of the

27             CALIFORNIA USURY SUBCLASS that would make class

28             certification inappropriate.  Counsel for the CALIFORNIA USURY

42

SUBCLASS will vigorously assert the claims of all CALIFORNIA USURY SUBCLASS members.

119.   In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Federal Rule of Civil Procedure 23, in that:

a.   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the CALIFORNIA USURY SUBCLASS will create the risk of:

    i.   Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA USURY SUBCLASS which would establish incompatible standards of conduct for the parties opposing the CALIFORNIA USURY SUBCLASS; or,

    ii.   Adjudication with respect to individual members of the CALIFORNIA USURY SUBCLASS which would as a practical matter be dispositive of interests of the other members not party to the adjudication or substantially impair or impede their ability to protect their interests.

b.   The parties opposing the CALIFORNIA USURY SUBCLASS have acted or refused to act on grounds generally applicable to the CALIFORNIA USURY SUBCLASS, making appropriate class-wide relief with respect to the CALIFORNIA USURY SUBCLASS as a whole in that the DEFENDANT requires the CALIFORNIA USURY SUBCLASS members to pay interest of 18% or more on the outstanding balances of the promissory notes which they signed as a condition of their training and employment.

c.   Common questions of law and fact exist as to the members of the CALIFORNIA USURY SUBCLASS, with respect to the practices and

43

violations of California law as listed above, and predominate over any question affecting only individual CALIFORNIA USURY SUBCLASS members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    i.    The interests of the members of the CALIFORNIA USURY SUBCLASS in individually controlling the prosecution or defense of separate actions;

    ii.    The extent and nature of any litigation concerning the controversy already commenced by or against members of the CALIFORNIA USURY SUBCLASS;

    iii.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

    iv.    The difficulties likely to be encountered in the management of a Class Action; and,

    v.    The basis of DEFENDANT's conduct towards PLAINTIFFS and the CALIFORNIA USURY SUBCLASS.

120.    This Court should permit this action to be maintained as a Class Action pursuant to Federal Rule of Civil Procedure 23 because:

    a.    The questions of law and fact common to the CALIFORNIA USURY SUBCLASS predominate over any question affecting only individual members;

    b.    A Class Action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the CALIFORNIA USURY SUBCLASS because in the context of employment litigation a substantial number of individual CALIFORNIA USURY SUBCLASS members will avoid asserting their rights individually out of fear of retaliation or adverse impact on

44

1    their employment;

2    c.    The members of the CALIFORNIA USURY SUBCLASS are so

3          numerous that it is impractical to bring all members of the

4          CALIFORNIA USURY SUBCLASS before the Court;

5    d.    PLAINTIFFS, and the other CALIFORNIA USURY SUBCLASS

6          members, will not be able to obtain effective and economic legal

7          redress unless the action is maintained as a Class Action;

8    e.    There is a community of interest in obtaining appropriate legal and

9          equitable relief for the acts of unfair competition, statutory violations

10         and other improprieties, and in obtaining adequate compensation for

11         the damages and injuries which DEFENDANT's actions have inflicted

12         upon the CALIFORNIA USURY SUBCLASS;

13   f.    There is a community of interest in ensuring that the combined assets

14         of DEFENDANT are sufficient to adequately compensate the members

15         of the CALIFORNIA USURY SUBCLASS for the injuries sustained;

16   g.    DEFENDANT has acted or refused to act on grounds generally

17         applicable to the CALIFORNIA USURY SUBCLASS, thereby making

18         final class-wide relief appropriate with respect to the CALIFORNIA

19         USURY SUBCLASS as a whole;

20   h.    The members of the CALIFORNIA USURY SUBCLASS are readily

21         ascertainable from the business records of DEFENDANT.  The

22         CALIFORNIA USURY SUBCLASS consists of those members of the

23         CALIFORNIA CLASS who were subjected to the DEFENDANT's

24         practices as described above during the CALIFORNIA USURY

25         SUBCLASS PERIOD; and,

26   i.    Class treatment provides manageable judicial treatment calculated to

27         bring an efficient and rapid conclusion to all litigation of all causes of

28         action arising out of the conduct of DEFENDANT as to the members

1     of the CALIFORNIA USURY SUBCLASS.

2         121.   DEFENDANT maintains records from which the Court can ascertain

3  and identify by name and job title, each of DEFENDANT's employees who have

4  been systematically, intentionally and uniformly subjected to DEFENDANT's

5  corporate policy, practices and procedures as herein alleged.  PLAINTIFFS will

6  seek leave to amend the complaint to include any additional job titles of similarly

7  situated employees when they have been identified.

8                              **THE PAGA CLAIM**

9         122.   As their Fourteenth Cause of Action, PLAINTIFFS assert on behalf of

10  themselves and all other Aggrieved Employees a representative action pursuant to

11  the California Labor Code Private Attorneys General Act of 2004 (i.e., California

12  Labor Code §§ 2698 et seq. ("PAGA").  PLAINTIFFS have provided notice of the

13  violations of the Labor Code alleged herein to the Labor Workforce Development

14  Agency as required by law.

15                         **FIRST CAUSE OF ACTION**

16         **For Unlawful, Unfair and Deceptive Business Practices**

17              **[Cal. Bus. and Prof. Code §§ 17200 *et seq.*]**

18    **(By PLAINTIFFS and the CALIFORNIA CLASS Against All Defendants)**

19         123.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

20  reallege and incorporate by this reference, as though fully set forth herein,

21  paragraphs 1 through 122 of this Complaint.

22         124.   DEFENDANT is a "person" as that term is defined under California

23  Business & Professions Code § 17021.

24         125.   California Business & Professions Code §§ 17200 *et seq*. defines unfair

25  competition as any unlawful, unfair, or fraudulent business act or practice.  Section

26  17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to

27  unfair competition as follows:

28         Any person who engages, has engaged, or proposes to engage in unfair

                                      46

                   *FIRST AMENDED CLASS ACTION COMPLAINT*

competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

California Business & Professions Code § 17203.

126.   By the conduct alleged herein, DEFENDANT has engaged and continues to engage in a business practice which violates California and federal law, including but not limited to, California Constitution, Article XV, Section 1, and Civil Code §§ 1912, *et seq.*, the applicable Industrial Wage Order (i.e., Wage Order No. 9-2001), the California Code of Regulations, the California Labor Code including, but not limited to, Sections 201, 202, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226, 226(a), 226(b), 226(e), 226.2, 226.3, 226.7, 256, 432.5, 450, 451(a), 510, 512, 558, 970-972, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2802, 2804 and 2699 of the California Labor Code, for which this Court should issue declaratory and other equitable relief pursuant to California Business & Professions Code § 17203 as may be necessary to prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.

127.   By the conduct alleged herein, DEFENDANT's practices are unlawful and unfair in that these practices violate public policy, are immoral, unethical, oppressive, unscrupulous or substantially injurious to employees, and were without valid justification or utility for which this Court should issue equitable and injunctive relief pursuant to Section 17203 of the California Business & Professions Code, including restitution of wages and other compensation wrongfully withheld or deducted from PLAINTIFF and the other members of the CALIFORNIA CLASS.

1    128.   By the conduct alleged herein, DEFENDANT's practices are deceptive,

2  misleading, and/or fraudulent in that DEFENDANT's policy and practice fails to

3  provide the required amount of compensation for missed meal and rest breaks and

4  fails to adequately compensate PLAINTIFFS and CALIFORNIA CLASS members

5  for all non-productive time, due to a systematic business practice that cannot be

6  justified, pursuant to the applicable California Labor Code sections, Wage Order

7  No. 9-2001, and other Industrial Welfare Commission requirements in violation of

8  California Business and Professions Code §§ 17200 *et seq*., and for which this Court

9  should issue injunctive and equitable relief, pursuant to California Business &

10  Professions Code § 17203, including restitution of wages wrongfully withheld.

11    129.   By the conduct alleged herein, DEFENDANT's practices are also

12  unlawful, unfair and deceptive in that DEFENDANT's employment practices cause

13  PLAINTIFFS and the other members of the CALIFORNIA CLASS to be underpaid

14  during their employment with DEFENDANT as a result of underpaying minimum

15  wages, regular wages, and overtime wages, and as a result of deducting wages,

16  issuing noncompliant wage statements, failing to reimburse for business expenses,

17  making misrepresentations relating to the Training Program in violation of

18  California law, failing to timely pay all wages owed each pay period and/or upon

19  cessation of employment, and charging CALIFORNIA CLASS members with

20  interest rates that exceed lawful rates.

21    130.   By the conduct alleged herein, DEFENDANT's practices are unlawful,

22  unfair and deceptive in that DEFENDANT's policies, practices and procedures fail

23  to provide all legally required meal and rest breaks to PLAINTIFFS and the other

24  members of the CALIFORNIA CLASS as required by California Labor Code

25  §§ 226.7 and 512.

26    131.   Therefore, PLAINTIFFS demand on behalf of themselves and on

27  behalf of each CALIFORNIA CLASS member, one (1) hour of pay for each

28  workday in which an off-duty meal period was not timely provided for each five (5)

48

*FIRST AMENDED CLASS ACTION COMPLAINT*

1   hours of work, and/or one (1) hour of pay for each workday in which a second off-

2   duty meal period was not timely provided for each ten (10) hours of work.

3       132.   PLAINTIFFS further demand on behalf of themselves and each

4   member of the CALIFORNIA CLASS, one (1) hour of pay for each workday in

5   which a paid rest period was not timely provided as required by law.

6       133.   By and through the unlawful and unfair business practices described

7   herein, DEFENDANT has obtained valuable property, money and services from

8   PLAINTIFFS and the other members of the CALIFORNIA CLASS, including

9   earned wages for time worked, and has deprived them of valuable rights and

10  benefits guaranteed by law and contract, all to the detriment of these employees and

11  to the benefit of DEFENDANT so as to allow DEFENDANT to unfairly compete

12  against competitors who comply with the law.

13      134.   All the acts described herein as violations of, among other things, the

14  Industrial Welfare Commission Wage Orders, the California Code of Regulations,

15  and the California Labor Code, other state statutes, and federal law, are unlawful

16  and in violation of public policy, are immoral, unethical, oppressive and

17  unscrupulous, are deceptive, and thereby constitute unlawful, unfair and deceptive

18  business practices in violation of California Business & Professions Code §§ 17200

19  *et seq.*

20      135.   PLAINTIFFS and the other members of the CALIFORNIA CLASS are

21  entitled to, and do, seek such relief as may be necessary to restore to them the

22  money and property which DEFENDANT has acquired, or of which PLAINTIFFS

23  and the other members of the CALIFORNIA CLASS have been deprived, by means

24  of the above described unlawful and unfair business practices, including, but not

25  limited to, earned but unpaid wages for all time worked, any sums taken as a result

26  of any deceptive, unlawful or fraudulent act related to the Training Program, etc.

27      136.   PLAINTIFFS and the other members of the CALIFORNIA CLASS are

28  further entitled to, and do, seek a declaration that the above described business

*FIRST AMENDED CLASS ACTION COMPLAINT*

practices are unlawful, unfair and deceptive, and that injunctive relief should be issued restraining DEFENDANT from engaging in any unlawful and unfair business practices in the future.

137.   PLAINTIFFS and the other members of the CALIFORNIA CLASS have no plain, speedy and/or adequate remedy at law that will end the unlawful and unfair business practices of DEFENDANT.  Further, the practices herein alleged presently continue to occur unabated.  As a result of the unlawful and unfair business practices described herein, PLAINTIFFS and the other members of the CALIFORNIA CLASS have suffered and will continue to suffer irreparable legal and economic harm unless DEFENDANT is restrained from continuing to engage in these unlawful and unfair business practices.

## SECOND CAUSE OF ACTION

### For Failure To Pay Minimum Wages

### [Cal. Lab. Code §§ 1194, 1194.2, 1197 and 1197.1 *et seq*.]

### (By PLAINTIFFS and the CALIFORNIA CLASS

### Against All Defendants)

138.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 137 of this Complaint.

139.   PLAINTIFFS and the other members of the CALIFORNIA CLASS bring a claim for DEFENDANT's willful and intentional violations of the California Labor Code and the Industrial Welfare Commission requirements (including, but not limited to, Wage Order No. 9-2001) for DEFENDANT's failure to accurately calculate and pay minimum wages to PLAINTIFFS and CALIFORNIA CLASS members.

140.   Pursuant to California Labor Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked.

141.   California Labor Code § 1197 provides that the minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.  The minimum wages fixed by the commission are set forth in the Industrial Welfare Commission General Minimum Wage Order.

142.   California Labor Code § 1194 establishes an employee's right to recover unpaid wages, including minimum wage compensation and interest thereon, together with the costs of suit. Pursuant to California Labor Code Sections 1182.12, 1194, and Wage Order 9-2001, Section 4, an employer is required to pay no less than the mandated minimum wage for each hour of compensable time worked. Compensable time includes all hours during which the employee is performing labor for the benefit of the employer or during which he is subject to the control of the employer.

143.   Notwithstanding these legal requirements, DEFENDANT failed to pay any wages for substantial numbers of compensable hours worked by PLAINTIFFS and the CALIFORNIA CLASS, including, but not limited to, payment for all miles driven, time spent completing the employer-mandated Training Program, time spent waiting for assignments, and time spent on non-driving activities (e.g., pre and post-trip inspections, fueling, paperwork, etc.).

144.   DEFENDANT maintains a uniform wage practice of paying the PLAINTIFFS and the other members of the CALIFORNIA CLASS without regard to the correct amount of time they worked, including, but not limited to, time spent completing the employer-mandated Training Program, time spent waiting for assignments, and time spent engaging in non-driving related tasks.  As set forth herein, DEFENDANT's uniform policy and practice is to unlawfully and intentionally deny timely payment of wages due to PLAINTIFFS and the other members of the CALIFORNIA CLASS.

145.   DEFENDANT's uniform pattern of unlawful wage and hour practices

51

manifested, without limitation, applicable to the CALIFORNIA CLASS as a whole, as a result of implementing a uniform policy and practice that denies all required compensation to PLAINTIFFS and the other members of the CALIFORNIA CLASS in regards to minimum wage pay.

146.   In committing these violations of the California Labor Code and Wage Order No. 9-2001, DEFENDANT inaccurately calculates the correct time worked and consequently underpays the actual time worked by PLAINTIFFS and other members of the CALIFORNIA CLASS.  DEFENDANT acts in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations.

147.   As a direct result of DEFENDANT's unlawful wage practices as alleged herein, PLAINTIFFS and the other members of the CALIFORNIA CLASS do not receive the correct minimum wage compensation for their time worked for DEFENDANT.

148.   During the CALIFORNIA CLASS PERIOD, PLAINTIFFS and the other members of the CALIFORNIA CLASS have been paid less for time worked that they are entitled to, constituting a failure to pay all earned wages.

149.   By virtue of DEFENDANT's unlawful failure to accurately pay all earned compensation to PLAINTIFFS and the other members of the CALIFORNIA CLASS for the true amount of time they work, PLAINTIFFS and the other members of the CALIFORNIA CLASS have suffered and will continue to suffer an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

150.   DEFENDANT knew or should have known that PLAINTIFFS and the other members of the CALIFORNIA CLASS are under-compensated for their time worked.  DEFENDANT systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter

52

of uniform company policy, practice and procedure, and DEFENDANT perpetrated this systematic scheme by refusing to pay PLAINTIFFS and the other members of the CALIFORNIA CLASS the correct minimum wages for their time worked.

151.   In performing the acts and practices herein alleged in violation of California employment laws, and refusing to compensate the members of the CALIFORNIA CLASS for all time worked and provide them with the requisite compensation, DEFENDANT acted and continues to act intentionally, oppressively, and maliciously toward PLAINTIFFS and the other members of the CALIFORNIA CLASS with a conscious and utter disregard for their legal rights, or the consequences to them, and with the despicable intent of depriving them of their property and legal rights, and otherwise causing them injury in order to increase company profits at the expense of these employees.

152.   PLAINTIFFS and the other members of the CALIFORNIA CLASS therefore request recovery of all unpaid wages, according to proof, interest, statutory costs, as well as the assessment of any statutory penalties against DEFENDANT, in a sum as provided by the California Labor Code and/or other applicable statutes.  To the extent minimum wage compensation is determined to be owed to the CALIFORNIA CLASS members who have terminated their employment, DEFENDANT's conduct also violates California Labor Code §§ 201 and/or 202, and therefore these individuals are also be entitled to waiting time penalties under California Labor Code § 203 as discussed further below, which penalties are sought herein on behalf of these CALIFORNIA CLASS members.  DEFENDANT's conduct as alleged herein was willful, intentional and not in good faith.  Further, PLAINTIFFS and other CALIFORNIA CLASS members are entitled to seek and recover statutory costs.

153.   As a result, PLAINTIFFS and the CALIFORNIA CLASS are entitled to damages and restitution under the California Labor Code, as well as California Business & Professions Code §§ 17200, and all other applicable laws for all

wrongfully withheld wages and/or illegal deductions; and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under California Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1194.2, 1197, 1197.1, 1198, and 2698 et seq.

## **THIRD CAUSE OF ACTION**

**For Failure To Pay Overtime Wages**

**[Cal. Lab. Code §§ 510 & 1194 *et seq.*]**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

154.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 153 of this Complaint.

155.   PLAINTIFFS and the other members of the CALIFORNIA CLASS bring a claim for DEFENDANT's willful and intentional violations of the California Labor Code and the Industrial Welfare Commission requirements for DEFENDANT's failure to accurately calculate and pay overtime wages to PLAINTIFFS and CALIFORNIA CLASS members.

156.   Pursuant to California Labor Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked.

157.   California Labor Code § 1194 establishes an employee's right to recover unpaid wages, including overtime wage compensation and interest thereon, together with the costs of suit.

158.   California Labor Code Sections 510(a), 1194, and Wage Order No. 9-2001, Section 3, require that an employer must compensate such hours worked at premium overtime rates to the extent they exceed eight hours in a day or 40 hours in a week.

159.   DEFENDANT maintains a uniform wage practice of paying the PLAINTIFFS and the other members of the CALIFORNIA CLASS without regard to the correct amount of time they worked, including time spent engaging in non-driving related tasks.  As set forth herein, DEFENDANT's uniform policy and practice is to unlawfully and intentionally deny timely payment of regular and overtime wages due to PLAINTIFFS and the other members of the CALIFORNIA CLASS.

160.   DEFENDANT's uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the CALIFORNIA CLASS as a whole, as a result of implementing a uniform policy and practice that denies accurate compensation to PLAINTIFFS and the other members of the CALIFORNIA CLASS in regards to regular and overtime wages.

161.   In committing these violations of the California Labor Code and Wage Order No. 9-2001, DEFENDANT inaccurately calculates the correct time worked and consequently underpays the actual time worked by PLAINTIFFS and other members of the CALIFORNIA CLASS.  DEFENDANT acts in an illegal attempt to avoid the payment of all earned wages, and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements, federal law, and all other applicable laws and regulations.

162.   As a direct result of DEFENDANT's unlawful wage practices as alleged herein, PLAINTIFFS and the other members of the CALIFORNIA CLASS do not receive the correct regular wages or overtime compensation for their time worked for DEFENDANT.

163.   During the CALIFORNIA CLASS PERIOD, PLAINTIFFS and the other members of the CALIFORNIA CLASS have been paid less for time worked that they are entitled to, constituting a failure to pay all earned wages.

164.   By virtue of DEFENDANT's unlawful failure to accurately pay all earned compensation to PLAINTIFFS and the other members of the CALIFORNIA

CLASS for the true amount of time they work, PLAINTIFFS and the other members of the CALIFORNIA CLASS have suffered and will continue to suffer an economic injury in amounts which are presently unknown to them and which will be ascertained according to proof at trial.

165.   DEFENDANT knew or should have known that PLAINTIFFS and the other members of the CALIFORNIA CLASS are under compensated for their time worked.  DEFENDANT systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice and procedure, and DEFENDANT perpetrated this systematic scheme by refusing to pay PLAINTIFFS and the other members of the CALIFORNIA CLASS the correct regular and/or overtime wages for their time worked.

166.   In performing the acts and practices herein alleged in violation of California employment laws and other applicable laws, and refusing to compensate the members of the CALIFORNIA CLASS for all time worked and provide them with the requisite compensation, DEFENDANT acted and continues to act intentionally, oppressively, and maliciously toward PLAINTIFFS and the other members of the CALIFORNIA CLASS with a conscious and utter disregard for their legal rights, or the consequences to them, and with the despicable intent of depriving them of their property and legal rights, and otherwise causing them injury in order to increase company profits at the expense of these employees.

167.   PLAINTIFFS and the other members of the CALIFORNIA CLASS therefore request recovery of all unpaid wages, according to proof, interest, statutory costs, as well as the assessment of any statutory penalties against DEFENDANT, in a sum as provided by the California Labor Code and/or other applicable statutes, wage orders, and regulations.  To the extent regular or overtime compensation is determined to be owed to the CALIFORNIA CLASS members who have terminated their employment, DEFENDANT's conduct also violates California Labor Code

*FIRST AMENDED CLASS ACTION COMPLAINT*

§§ 201 and/or 202, and therefore these individuals are also be entitled to waiting time penalties under California Labor Code § 203, which penalties are sought herein on behalf of these CALIFORNIA CLASS members as described in more detail below.  DEFENDANT's conduct as alleged herein was willful, intentional and not in good faith.  Further, PLAINTIFFS and other CALIFORNIA CLASS members are entitled to seek and recover statutory costs.

168.   As a result, PLAINTIFFS and the CALIFORNIA CLASS are entitled to damages and restitution under the California Labor Code, as well as California Business & Professions Code §§ 17200, and all other applicable laws for all wrongfully withheld wages and/or illegal deductions; and for recovery of all derivative statutory and civil penalties thereby triggered and authorized by law, including under California Labor Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256, 432.5, 450, 558, 1194.2, 1197, 1197.1, 1198, and 2698 et seq.

## FOURTH CAUSE OF ACTION

**For Failure to Provide Accurate Itemized Wage Statements**

**[Cal. Lab. Code § 226(a), (b), 226.2, & 1174 *et seq*., and Wage Order 9-2001, sec. 7]**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

169.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 168 of this Complaint.

170.   California Labor Code § 226(a) provides that an employer must furnish employees with an "accurate itemized statement in writing showing the following:

      1.    gross wages earned,

      2.    total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is

57

exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission,

3.    the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis,

4.    all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item,

5.    net wages earned,

6.    the inclusive dates of the period for which the employee is paid,

7.    the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement,

8.    the name and address of the legal entity that is the employer, and

9.    all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

171.   From time to time, DEFENDANT violates California Labor Code § 226(a) and other provisions of California law (including, but not limited to California Labor Code § 226.2 and Wage Order No. 9-2001, Section 7) relating to information that must be set forth in wage statements, in that DEFENDANT fails to properly and accurately itemize the gross wages earned, the net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate by the employee. DEFENDANT fails to provide PLAINTIFFS and the other members of the CALIFORNIA CLASS with complete and accurate wage statements which fail to show, among other things, the

58

correct minimum wage compensation for time worked, and allocation of lawfully required, paid off-duty rest periods and payment for missed meal periods. California Labor Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate.  As a result, DEFENDANT provides PLAINTIFFS and the other members of the CALIFORNIA CLASS with wage statements which violate California Labor Code § 226 and other sections of the California Labor Code such as California Labor Code § 226.2.

172.    DEFENDANT knowingly and intentionally fails to comply with California Labor Code § 226(a) and other applicable sections of the California Labor Code (e.g., California Labor Code § 226.2 and Wage Order No. 9-2001, Section 7), causing damages to PLAINTIFFS, and the other members of the CALIFORNIA CLASS.  These damages include, but are not limited to, costs expended calculating the true time worked and the amount of employment taxes which were not properly paid to state and federal tax authorities.  These damages are difficult to estimate.  Therefore, PLAINTIFFS, and the other members of the CALIFORNIA CLASS may recover liquidated damages of $50.00 for the initial pay period in which the violation occurred, and $100.00 for each violation in subsequent pay period pursuant to California Labor Code § 226, in an amount according to proof at the time of trial (but in no event more than $4,000.00 for PLAINTIFFS and each respective member of the CALIFORNIA CLASS herein).

/ / /

/ / /

/ / /

/ / /

/ / /

*FIRST AMENDED CLASS ACTION COMPLAINT*

# FIFTH CAUSE OF ACTION

**For Failure to Maintain Copies of Accurate, Itemized Wage Statements**

**[Cal. Lab. Code § 226(a), (b), 226.2, & 1174 *et seq*., and Wage Order 9-2001, sec. 7)**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

173.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 172 of this Complaint.

174.   DEFENDANT was required under California law, including but not limited to California Labor Code §§ 226(a),(b), 226.2, and 1174 and Wage Order 9-2001, section 7, to maintain copies of accurate itemized wage statements showing the items enumerated in California Labor Code § 226(a) and other provisions of California law relating to information that must be set forth in wage statements.

175.   DEFENDANT failed to satisfy its obligations under California law and did not maintain or make available to its employees copies of accurate itemized wage statements.

176.   PLAINTIFFS and other members of the CALIFORNIA CLASS have been injured as a result of DEFENDANT's violations as described above.

177.   Wherefore, PLAINTIFFS and the other members of the CALIFORNIA CLASS seek all relief available under the California Labor Code and all other applicable laws for such violations, including damages, statutory penalties, civil penalties, costs and attorney fees.

/ / /

/ / /

/ / /

/ / /

/ / /

## SIXTH CAUSE OF ACTION

### For Failure to Reimburse for Business Expenses

### [Cal. Lab. Code §§ 2802 & 2804 *et seq.*]

### (By PLAINTIFFS and the CALIFORNIA CLASS

### Against All Defendants)

178.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 177 of this Complaint.

179.   Pursuant to California Labor Code §§ 2802 and 2804 *et seq.*, and Wage Order No. 9-2001, an employer must indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

180.   DEFENDANT violated these requirements by requiring class members to make expenditures required for work and failing to indemnify and reimburse PLAINTIFFS and the other members of the CALIFORNIA CLASS as required by law.  DEFENDANT failed and refused to reimburse all necessary business expenses by, inter alia, engaging in the following actions: requiring PLAINTIFFS and CALIFORNIA CLASS members to pay out of their own pockets for the Training Program and other expenses incurred in the course and scope of their employment (e.g., for cell phones and other required business expenses). PLAINTIFFS have thus been damaged in an amount according to proof at time of trial.

181.   PLAINTIFFS and the other members of the CALIFORNIA CLASS seek recovery of all required business expenses that they paid, including, but not limited to, any expenses incurred in relation to DEFENDANT's Training Program, for which they were not properly reimbursed, for cell phones, etc.

/ / /

/ / /

/ / /

*FIRST AMENDED CLASS ACTION COMPLAINT*

## SEVENTH CAUSE OF ACTION

### For Unlawful Deductions

### [Cal. Lab. Code §§ §§ 221, 223, 450(a) *et seq.*]

### (By PLAINTIFFS and the CALIFORNIA CLASS

### Against All Defendants)

182.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 181 of this Complaint.

183.   Pursuant to California Labor Code §§ 221, 223, 451(a), 2802 and 2804, and Wage Order No. 9-2001, an employer may not: deduct from the wages of an employee; require the employee to patronize the employer's services; require employees to pay for amounts incurred in the course and scope of his employment; or shoulder the employer's normal costs and expenses of doing business.

184.   DEFENDANT violated these requirements by requiring CLASS members to pay out of their own pockets for DEFENDANT's own mandated Training Program; requiring CLASS members to patronize DEFENDANT's own for profit training and finance programs; requiring CLASS members to incur wage deductions for training costs or other expenses associated with their employment, "liquidated damages," usurious interest, and other sums supposedly owed to DEFENDANT.

185.   PLAINTIFFS seek on behalf of themselves and the CALIFORNIA CLASS members the recovery of all allowed damages for all wages that were improperly deducted by DEFENDANT, including, but not limited to, amounts deducted by DEFENDANT in relation to DEFENDANT's Training Program, the costs of the required drug test, physical examination, the cost of obtaining the Commercial Driver's License ("CDL"), and all other costs which were reasonably required by DEFENDANT for PLAINTIFFS and the CALIFORNIA CLASS MEMBERS to comply with the terms of their Employment Contracts.

# EIGHTH CAUSE OF ACTION

**For Failure to Provide Off-Duty Meal Periods or Pay Meal Period Premiums**

**[Cal. Lab. Code §§ 226.7 & 512 *et seq*. and Wage Order No. 9-2001]**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

186.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 185 of this Complaint.

187.   At all relevant times, California Labor Code §§ 226.7 and 512 and Industrial Welfare Commission Wage Order 9-2001, Section 11 required DEFENDANT to provide meal periods to PLAINTIFFS and other members of the CALIFORNIA CLASS.

188.   Specifically, DEFENDANT was required to provide PLAINTIFFS and other members of the CALIFORNIA CLASS for work periods of more than five hours per day with a meal period of not less than 30 minutes during which employees must be fully relieved of all duty.  DEFENDANT was required to provide a second meal period when PLAINTIFFS and the CALIFORNIA CLASS members worked more than ten hours in a workday.

189.   California Labor Code §§ 226.7 and 512 and Wage 9-2011, section 11(D) require an employer to pay one hour of pay at the employees' regular rate of compensation for each workday that a meal period is not provided.

190.   On information and belief, notwithstanding these legal requirements, DEFENDANT failed to authorize and permit meal periods to PLAINTIFFS and other members of the CALIFORNIA CLASS.  DEFENDANT failed to pay premium wages for each workday that DEFENDANT did not authorize and permit meal periods.

191.   As a result of DEFENDANT's violations alleged herein, PLAINTIFFS and other members of the CALIFORNIA CLASS are entitled to recover premium

*FIRST AMENDED CLASS ACTION COMPLAINT*

wages, including pursuant to California Business and Professions Code §§ 17200 et seq. restitution of all earned but unpaid premium wages, and all statutory and civil penalties under the California Labor Code resulting therefrom.

## NINTH CAUSE OF ACTION

**For Failure to Provide Off-Duty Rest Periods or Pay Rest Period Premiums**

**[Cal. Lab. Code §§ 226.7 *et seq*. and Wage Order 9-2001]**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

192.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 191 of this Complaint.

193.   At all relevant times, California Labor Code § 226.7 and Industrial Welfare Commission Wage Order No. 9-2001, section 12, required DEFENDANT to provide rest periods to PLAINTIFFS and other members of the CALIFORNIA CLASS.

194.   Specifically, DEFENDANT was required to provide PLAINTIFFS and other members of the proposed class with rest periods at the rate of ten minutes net rest time for each four hours worked, or major fraction thereof.  Authorized rest period time is counted as hours worked and must be paid and reflected on wage statements where the employee is paid by the piece.

195.   DEFENDANT was required to pay PLAINTIFFS and other members of the CALIFORNIA CLASS with premium pay calculated at the rate of one hour of pay at the regular rate of compensation for each workday that a rest period was not provided.

196.   On information and belief, notwithstanding these legal requirements, DEFENDANT failed to authorize and permit rest periods to PLAINTIFFS and other members of the CALIFORNIA CLASS.  DEFENDANT failed to pay premium wages for each workday that DEFENDANT did not authorize and permit rest

64

1    periods.

2        197.   As a result of DEFENDANT's violations alleged herein, PLAINTIFFS

3    and other members of the CALIFORNIA CLASS are entitled to recover premium

4    wages, including pursuant to California Business and Professions Code §§ 17200 et

5    seq. restitution of all earned but unpaid premium wages, and all statutory and civil

6    penalties under the California Labor Code resulting therefrom.

7                        **TENTH CAUSE OF ACTION**

8                      **For Failure to Timely Pay Wages**

9                    **[Cal. Lab. Code §§ 201-203 *et seq.*]**

10                  **(By PLAINTIFFS and the CALIFORNIA CLASS**

11                        **Against All Defendants)**

12       198.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

13   reallege and incorporate by this reference, as though fully set forth herein,

14   paragraphs 1 through 197 of this Complaint.

15       199.   California law, including Labor Code §§ 201-203, requires payment of

16   all earned wages immediately at the time of termination of employment, except

17   upon resignation with less than 72 hours of notice to the employer all earned wages

18   must then be paid within 72 hours of resignation.

19       200.   Despite these legal obligations, DEFENDANT failed to pay all earned

20   wages to PLAINTIFFS and other members of the CALIFORNIA CLASS, either at

21   the time of termination, or within 72 hours of resignation of employment in

22   circumstances when employees communicated their resignation less than 72 hours

23   in advance of the actual time of resignation.

24       201.   As a result of DEFENDANT's violations, PLAINTIFFS and other

25   members of the CALIFORNIA CLASS are entitled to recover waiting time

26   penalties pursuant to California Labor Code § 203.

27       202.   As a result of DEFENDANT's violations alleged herein, PLAINTIFFS

28   and other members of the CALIFORNIA CLASS are entitled to recover penalties

65

under California Labor Code § 203, to other legal and equitable remedies available under law, and to all statutory and civil penalties resulting therefrom.

**ELEVENTH CAUSE OF ACTION**

**For Failure to Pay Wages on Regularly Scheduled Paydays**

**[Cal. Lab. Code §§ 204 *et seq*.]**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

203.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 202 of this Complaint.

204.   At all relevant times, California Labor Code § 204 was in force and effect and required DEFENDANT to pay to PLAINTIFFS and other members of the proposed CALIFORNIA CLASS all earned wages on the regularly scheduled paydays.

205.   On information and belief, DEFENDANT violated California Labor Code § 204 by failing to pay all earned wages within the time periods required by California Labor Code § 204.

206.   PLAINTIFFS and other members of the CALIFORNIA CLASS have suffered injury as a result of DEFENDANT's violations of California Labor Code § 204.

207.   As a result of DEFENDANT's violations alleged herein, PLAINTIFFS and other members of the CALIFORNIA CLASS are entitled to recover penalties under California Labor Code § 204, to other legal and equitable remedies available under law, and to all statutory and civil penalties resulting therefrom.

/ / /

/ / /

/ / /

/ / /

**TWELFTH CAUSE OF ACTION**

**For Misrepresentation**

**(By PLAINTIFFS and the CALIFORNIA CLASS**

**Against All Defendants)**

208.   PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 207 of this Complaint.

209.   As described herein, DEFENDANT engaged in a number of misrepresentations relating to its Training Program, including misrepresenting and deliberately failing to disclose, among other things, to PLAINTIFFS and the other CALIFORNIA CLASS members the following facts:  (1) the amount which C.R. ENGLAND charged for its 17-day Training Program was far above its actual cost for the program; (2) the business objective of the Training Program was not to prepare drivers for long-term employment with C.R. ENGLAND but instead designed and run as an independent profit-making enterprise; (3) C.R. ENGLAND did not intend to treat the applicant's job as "guaranteed" or even terminable only for good cause but rather as terminable at-will; (4) C.R. ENGLAND's for-profit Training Program churned out far more student drivers than it could ever actually employ.  As a result, C.R. ENGLAND had to actively find ways to cull the ranks of its drivers and to replace them with more profitable paying applicants; (5) far from having a "guaranteed job," virtually all of the drivers who pay to complete the Training Program were terminated within less than a year; (6) in anticipation of this treatment, upon arriving at Premier, drivers were required to execute a series of unconscionable legal documents, which they had little or no opportunity to read or comprehend (including an illegal agreement to work as an indentured worker who would be obligated to pay C.R. ENGLAND a penalty or "liquidated damages" of approximately $2,500 as the price of leaving employment with C.R. ENGLAND, an illegal agreement to refrain from working for any competitor of C.R. ENGLAND

*FIRST AMENDED CLASS ACTION COMPLAINT*

for a period of at least nine months, an illegal agreement allowing C.R. ENGLAND to accelerate the payment of principal owed for the Training Program and to assess penalties, wage deductions, and usurious interest payments in the event the driver's employment is terminated); (7) drivers would be required to work numerous hours without any compensation or for compensation below the applicable minimum wage rate; etc.

210.   As a result of these and other misrepresentation and deceptive acts engaged in by C.R. ENGLAND, DEFENDANT violated various California debt collection, consumer protection, and employment laws, including, but not limited to, California Labor Code §§ 970 and 972 that was in force and effect and applied to DEFENDANT.

211.   Pursuant to California Labor Code § 970, no person may, among other things, directly or indirectly influence, persuade, or engage any person to move from one place or another based on knowingly false representations regarding the nature of available work.

212.   On information and belief, DEFENDANT caused PLAINTIFFS and other members of the CALIFORNIA CLASS, through knowingly false representations concerning DEFENDANT's Training Program located in Fontana, California, including but not limited to guarantees as to continued employment upon successful completion of a training program, to relocate to or to remain in Fontana, California.

213.   On information and belief, false representations by DEFENDANT to PLAINTIFFS and other members of the CALIFORNIA CLASS included the following:  (a) that actual out-of-pocket costs incurred by DEFENDANT in providing training exceeded $5,000 per student, (b) that upon completion of the training program, full-time work for DEFENDANT would be "guaranteed" for at least a nine month period, (c) that upon completion of the training program, employment by DEFENDANT during a nine month period would be terminable

68

only upon "good cause" rather than at will, and (d) that DEFENDANT would pay the costs of training for PLAINTIFFS and other members of the CALIFORNIA CLASS and cause a promissory note in the amount of the costs of training executed by PLAINTIFFS and other members of the CALIFORNIA CLASS to be satisfied and discharged after nine months of employment.

214.   On information and belief, these representations were false.

215.   On information and belief, DEFENDANT made these representations with knowledge of their falsity.

216.   On information and belief, absent such false representations concerning DEFENDANT's Training Program located in Fontana, California, PLAINTIFFS and other members of the CALIFORNIA CLASS would not have moved to Fontana or remained in Fontana for DEFENDANT's Training Program.

217.   As a result of DEFENDANT's misrepresentations in violation of California Labor Code § 970 *et seq*. and other California statutes, PLAINTIFFS and other members of the CALIFORNIA CLASS are entitled to recover damages as provided by California Labor Code § 972 or allowed by other applicable law, including but not limited to restitution and disgorgement under the UCL and for recovery of all statutory penalties and civil penalties permitted by law, including, but not limited to, civil penalties under California Labor Code §§ 558, 972, and 2698 *et seq*.

**THIRTEENTH CAUSE OF ACTION**

**Usury**

**(By PLAINTIFFS and the CALIFORNIA USURY SUBCLASS**

**Against All Defendants)**

218.   PLAINTIFFS, and the other members of the CALIFORNIA USURY SUBCLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 217 of this Complaint.

219.   The California Constitution, Article XV, Section 1, and California Civil

69

1  Code §§ 1912 *et seq*., set the maximum rate of interest at 10% per annum for loans

2  of money used primarily for personal, family, or household purposes, such as loans

3  used to pay for educational and vocational training expenses.

4      220.   Notwithstanding these provisions of law, DEFENDANT's consistent

5  policy and practice was to require PLAINTIFF and the CALIFORNIA USURY

6  SUBCLASS members to pay interest of 18% or more on the outstanding balances of

7  the Promissory Notes which they signed as a condition of their training and

8  employment.

9      221.   As result, DEFENDANT has consistently violated the provisions of the

10  California usury law as to Plaintiff and the California Usury Subclass, who are

11  thereby entitled to seek all authorized remedies, including voiding of the Promissory

12  Notes, forfeiture of all interest charged or purportedly due pursuant to these usurious

13  Promissory Notes, an award of treble damages, and all derivative statutory and civil

14  penalties thereby triggered and authorized by law, including under California Labor

15  Code §§ 201, 203, 204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226(e), 226.3, 256,

16  432.5, 450, 558, 1197.1, 1198, and 2698 *et seq*.

17  **FOURTEENTH CAUSE OF ACTION**

18  **For Violation of the Private Attorneys General Act ("PAGA")**

19  **[Cal. Lab. Code §§ 2698 *et seq*.]**

20  **(By PLAINTIFFS and ALL OTHER AGGRIEVED EMPLOYEES**

21  **Against All Defendants)**

22      222.   PLAINTIFFS, and all other aggrieved employees, reallege and

23  incorporate by this reference, as though fully set forth herein, paragraphs 1 through

24  221 of this Complaint.

25      223.   A claim under the California Private Attorneys' General Act ("PAGA")

26  is a cause of action by which the State of California itself can enforce state labor

27  laws through the employee suing under the PAGA who do so as the proxy or agent

28  of the state's labor law enforcement agencies.  An action to recover civil penalties

under PAGA is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.  The purpose of the PAGA is not to recover damages or restitution, but to create a means of "deputizing" citizens as private attorneys general to enforce the California Labor Code.  In enacting PAGA, the California Legislature specified that "it was ... in the public interest to allow aggrieved employees, acting as private attorneys general to recover civil penalties for Labor Code violations ..." Stats. 2003, ch. 906, § 1.

224.   PLAINTIFFS bring this Representative PAGA Action on behalf of the State of California with respect to themselves and all individuals who are or previously were employed by DEFENDANT as Truck Drivers employees in California during the time period of February 1, 2015 until the present (the "AGGRIEVED EMPLOYEES").

225.   In early February 2016, Plaintiff Harper gave written notice by certified mail to the Labor and Workforce Development Agency (the "Agency") and the employer of the specific provisions of this code alleged to have been violated as required by California Labor Code § 2699.3.  See Exhibit C, attached hereto and incorporated by this reference herein.  The statutory waiting period for PLAINTIFFS to add these allegations to the Complaint has expired.  As a result, pursuant to Section 2699.3, PLAINTIFFS commenced a representative civil action under PAGA pursuant to Section 2698 *et seq*. as the proxy of the State of California with respect to all AGGRIEVED EMPLOYEES as herein defined.

226.   The policies, acts and practices heretofore described were and are an unlawful business act or practice because DEFENDANT (a) failed to properly record and pay PLAINTIFFS and the other AGGRIEVED EMPLOYEES for all of the hours they worked, including minimum wages, regular wages, and/or overtime hours in violation of California law and the applicable Wage Order, (b) failed to provide accurate itemized wage statements, and (c) failed to timely pay wages, all in violation of the applicable California Labor Code sections listed in California Labor

71

1  Code §2699.5, including but not limited to California Labor Code §§ 201, 202, 203,

2  204, 204.2, 210, 218, 221, 222.5, 223, 225.5, 226, 226(a), 226(b), 226(e), 226.2,

3  226.3, 226.7, 256, 432.5, 450, 451(a), 510, 512, 558, 970-972, 1182.12, 1174, 1194,

4  1194.2, 1197, 1197.1, 1198, 1198.5, 2802, and 2804, and the applicable Industrial

5  Wage Order(s), and thereby gives rise to statutory penalties as a result of such

6  conduct.  PLAINTIFFS hereby seek recovery of civil penalties as prescribed by the

7  California Labor Code Private Attorney General Act of 2004 as the representatives

8  of the State of California for the illegal conduct perpetrated on PLAINTIFFS and

9  the other AGGRIEVED EMPLOYEES.

10                          **PRAYER FOR RELIEF**

11        WHEREFORE, PLAINTIFFS pray for judgment against each Defendant,

12  jointly and severally, as follows:

13        1.    On behalf of the CALIFORNIA CLASS:

14              A)    That the Court certify the First Cause of Action asserted by the

15                    CALIFORNIA CLASS as a Class Action pursuant to Federal

16                    Rule of Civil Procedure 23;

17              B)    An order requiring DEFENDANT to correctly calculate and pay

18                    all wages, compensation, and all other sums unlawfully withheld

19                    from PLAINTIFFS and the other members of the CALIFORNIA

20                    CLASS;

21              C)    Disgorgement of DEFENDANT's ill-gotten gains into a fluid

22                    fund for restitution of the sums incidental to DEFENDANT's

23                    violations due to PLAINTIFFS and to the other members of the

24                    CALIFORNIA CLASS according to proof; and,

25              D)    An order temporarily, preliminarily and permanently enjoining

26                    and restraining DEFENDANT from engaging in similar unlawful

27                    conduct as set forth herein.

28        2.    On behalf of the CALIFORNIA CLASS:

*FIRST AMENDED CLASS ACTION COMPLAINT*

A)    That the Court certify the Second, Third, Fourth, Fifth, Sixth Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action asserted by the CALIFORNIA CLASS as a class action pursuant to Federal Rule of Civil Procedure 23;

B)    Compensatory damages, statutory penalties, wages, interest, and all other sums owed, according to proof at trial, including compensatory damages and any other sum owed for minimum wage, regular wages, and overtime compensation due PLAINTIFFS and the other members of the CALIFORNIA CLASS, during the applicable CALIFORNIA CLASS PERIOD plus interest thereon at the statutory rate as well as all sums due and owing for missed meal or rest periods, DEFENDANT'S failure to reimburse for required business expenses, DEFENDANT's taking of unlawful deductions from wages earned, DEFENDANT's failure to timely pay all wages owed during employment and/or upon termination, and DEFENDANT's making various unlawful misrepresentations to induce PLAINTIFFS and the other members of the CALIFORNIA CLASS to enroll in the Training Program plus interest thereon at the statutory rate;

C)    The greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per each member of the CALIFORNIA CLASS for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) for PLAINTIFFS and each respective member of the CALIFORNIA CLASS, and an award of costs for violation of California Labor Code § 226.

73

3.    On behalf of the CALIFORNIA USURY SUBCLASS:

A)   That the Court certify the Thirteenth Cause of Action asserted by the CALIFORNIA USURY SUBCLASS as a class action pursuant to Federal Rule of Civil Procedure 23;

B)   All authorized remedies, including voiding of the Promissory Notes, forfeiture of all interest charged or purportedly due pursuant to these usurious Promissory Notes, an award of treble damages, and all derivative statutory and civil penalties thereby triggered and authorized by law.

4.    On behalf of the State of California and with respect to PLAINTIFF Harper and all other AGGRIEVED EMPLOYEES:

A)   Recovery of all civil penalties as prescribed by the California Labor Code Private Attorneys General Act of 2004.

5.    On all claims:

A)   An award of interest, including prejudgment interest at the legal rate;

B)   Such other and further relief as the Court deems just and equitable or is authorized by California law; and,

C)   An award of penalties, attorneys' fees and cost of suit, as allowable under the law, including, but not limited to, pursuant to California Labor Code §§ 218.5, 226, and/or 1194.

Dated: November 25, 2019        THE VAN VLECK LAW FIRM, LLP

By: /s/ Brian F. Van Vleck
Brian F. Van Vleck
Attorneys for Plaintiffs

## __DEMAND FOR JURY TRIAL__

PLAINTIFFS demand a jury trial on all issues triable to a jury.

Dated: November 25, 2019          THE VAN VLECK LAW FIRM, LLP


By: /s/ Brian F. Van Vleck
Brian F. Van Vleck
Attorneys for Plaintiffs

*FIRST AMENDED CLASS ACTION COMPLAINT*

**EXHIBIT A**

# C.R. ENGLAND, INC.

## DRIVER EDUCATION AND EMPLOYMENT CONTRACT

### (California)

This Driver Education and Employment Contract ("Contract") is entered into this ○3 day of AUGUST , 20 15 , (the "Effective Date") in the State of California by and between C.R. England, Inc. ("England"), a Utah corporation located at 4701 West 2100 South, Salt Lake City, Utah 84120 and William    Gradie    ("you" or "Driver"). In consideration of the parties' respective promises in this Contract and other good and valuable consideration, you and England agree as follows:

   1.   EDUCATION AND EMPLOYMENT. In exchange for your promise to work as a truck driver exclusively for England for nine months as provided in this Contract and your execution of a promissory note for the unsubsidized cost of tuition ("Tuition Note"), England will provide its Premier Truck Driving School Driver Education Program to you on the terms described in the Enrollment Agreement. England also agrees to employ you subject to the terms and conditions stated below.

**You will not be employed by England during your Driver Education Program and thus will receive no pay during this period. You will not become an employee of England, and will not receive any pay, until you meet all the conditions listed below.**

England agrees to employ you and you agree to be employed by England as a truck driver when you meet all of the following conditions:

   (a)   You successfully complete all requirements of England's Premier Truck Driving School Driver Education program;

   (b)   You submit a written application to England, in form provided by England, and satisfy England's standard criteria regarding work history, motor vehicle record and criminal background check;

   (c)   You pass a Department of Transportation drug test and hair follicle test;

   (d)   You submit to, and pass, a medical examination in accordance with regulations issued by the Department of Transportation;

   (e)   You successfully complete road and range driving evaluation administered by England;

   (f)   You obtain a valid CDL.

You agree to use your best efforts and to work diligently to meet all of these conditions.

   2.   DUTIES OF DRIVER. You agree that at all times during the term of your employment as defined in paragraph 3 below, you shall devote all of your working time to the performance of your duties to England under this Contract. Your duties are to act as a commercial truck driver for England and fulfill all related duties, including all of the requirements and conditions set forth in the England Driver Employee Policy Manual (the "Manual") as amended from time to time. You agree that you will not, directly or indirectly, engage or participate in any activities at any time during the term of this Contract in conflict with your duties under this Contract.

   3.   TERM OF EMPLOYMENT. You agree that, after the conditions stated in paragraph 1 are met, you will work as a truck driver for England for a period of **nine months** after the date you are first dispatched by England, subject to termination by England prior to the end of

the term pursuant to paragraph 4, below. After the nine (9) month term, you or England may terminate your employment at any time and for any reason. You acknowledge that, at great cost, England has provided, or will provide, your driver education, and that England would be damaged by your failure to complete the **nine month** term of this Contract.

    4.    TERMINATION OF EMPLOYMENT. During the nine (9) month term, your employment may only be terminated for the following reasons: (a) by England for Due Cause, effective immediately; (b) by mutual agreement between you and England; (c) upon your death or upon your developing a disability such that you are no longer able to legally drive; or (d) by England without Due Cause. For the purposes of this Contract, "Due Cause" means (i) your breach of this Contract; (ii) your violation of any of the requirements or conditions set forth in the Manual; or (iii) your violation of or failure to remain in compliance with any federal or state regulations applicable to your position as a driver of commercial motor vehicles in interstate commerce. If you are terminated by England *without Due Cause*, England shall cancel the Tuition Note and, in addition, paragraphs 5 shall not apply.

    5.    LIQUIDATED DAMAGES FOR BREACH OF YOUR PROMISE TO WORK FOR ENGLAND. You agree that if you fail to complete the full nine (9) month term of your employment with England because (a) you quit, or (b) your employment is terminated for Due Cause, then England will suffer damages because of its inability to realize the full benefit of its financial investment in your recruitment, training and employment. You and England agree that it will be difficult to determine the precise amount of the financial harm to England in the event either of these things happens and that the liquidated damages amount provided for in this Contract represent a fair, reasonable and appropriate estimate of this harm. Accordingly, you agree that if you quit or are terminated for Due Cause before you have completed your 9-month commitment, you will be immediately liable to pay to England liquidated damages in the amount of $2,500.00.

    6.    EARLY BUYOUT. At any time prior to your completion of the full nine (9) month term of your employment with England, you may terminate your employment obligation by 1) paying in full the balance of your Tuition Note, and 2) paying to England $2500 (the "Buyout Cost"). Your obligations under this Agreement will continue until both the Tuition Note and the Buyout Cost are paid in full. England will not accept installment payments on either the Tuition Note or the Buyout Cost. The Buyout Cost is to compensate England for its substantial investment in your recruiting and training and the return on that investment it would have received if you had completed the entire term of this Agreement.

    7.    DRIVER COMPENSATION. As compensation for the driving services to be rendered by you under this Contract, and as consideration for your promises and covenants herein, England will pay you the wages, benefits and other compensation set forth in the Manual and as stated by England from time to time, and will also provide the Educational Assistance Program described below. Upon the termination of employment, as defined in paragraph 4 of this Contract, you authorize England to deduct and recoup any amount remaining due and owing to England pursuant to paragraph 5 of this Contract from any compensation due and owing to you from England. England may unilaterally change at any time, by written amendment, the terms and conditions of the compensation set forth in the Manual so long as your overall compensation is not materially reduced, and you hereby consent to all such amendments and agrees that such amendments shall be binding upon you.

    8.    EDUCATIONAL ASSISTANCE PROGRAM. When you have completed the nine month term of this Contract, you will automatically become eligible for England's Educational

2

Assistance Program, which is described in the summary plan description that you may obtain from the England Department of Human Resources. The Educational Assistance Program will pay, on your behalf, any amounts owing on the Tuition Note, up to $5,200 per calendar year.

9. ENTIRE AGREEMENT. This Contract, together with the Enrollment Agreement and the Tuition Note, contains the entire agreement and understanding by and between England and you with respect to the subject matter contained herein and no representations, promises, agreements or understandings, written or oral, concerning this subject matter, shall be of any force or effect. This Contract may not be modified except by a writing signed by both you and England. This Contract shall be binding upon and inure to the benefit of England and you, England's legal representatives, and England's successors and assigns. However, you may not assign your duties under this Contract.

10. SEVERABILITY. If one or more of the provisions contained in this Contract is deemed invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity and enforceability of the other provisions.

11. GOVERNING LAW AND VENUE. You and England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and any claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. You hereby consent to personal jurisdiction and venue in such court. Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with England, the terms of the arbitration agreement shall govern any claims or disputes between you and England arising from or related to this Agreement.

YOU ACKNOWLEDGE THAT YOU HAVE READ THE TERMS OF THIS CONTRACT AND HAVE HAD THE OPPORTUNITY, IF YOU DESIRED, TO CONSULT WITH AN ATTORNEY OF YOUR CHOICE PRIOR TO SIGNING BELOW.

IN WITNESS WHEREOF, C.R. England, Inc. and Driver have duly executed this Contract as of the date, year and place first above written.

C.R. ENGLAND, INC.

By: _____

_____

Title: _____

DRIVER

By: _____

Name: **William** **Gradie**

Address: **5200 Clark Ave 65**

**Lakewood** **CA** **90714**

Phone: 562 805 0052

Social Security Number: **318646498**

Driver ID#: U3030744

3

# Facts about your contract with C.R. England

- The contract is an employment agreement, where you agree to work for C.R. England for at least 9 months.

- In exchange for your employment commitment of at least 9 months, C.R. England agrees to proudly provide you top-notch driving school training, <u>paid on-the-job training</u>, and an Educational Assistance Program which will repay your Tuition Note IN FULL as soon as you have worked 9 Months for C.R. England.

- You are expected to meet your obligation to work for C.R. England for at least 9 months.

- Other carriers, in an attempt to hire you, will tell you <u>many untrue things</u> to make the grass look greener.

- They will tell you that they will pay for your school and that the contract is taken care of if they do. THAT IS NOT TRUE!

- They will tell you that the contract does not matter or that C.R. England cannot enforce it. THAT IS NOT TRUE!

- If you leave before meeting your employment obligation, it is a <u>BREACH OF CONTRACT</u> unless you first pay IN FULL your Tuition Note and the Buyout Cost under the contract. These must be paid IN FULL before you leave. C.R. England will not accept installment payments.

- Due to our significant investment in your training, C.R. England takes any contract breach very seriously. We have been forced to take legal action against several drivers in FEDERAL COURT because they have breached their contract.

- Be sure to keep your word! C.R. England will absolutely keep its word and provide you fantastic training and great driving jobs.

- Be sure to read the agreement closely so you understand its terms.

**EXHIBIT B**

## PROMISSORY NOTE AND DISCLOSURE STATEMENT

**CREDITOR:** CR England dba Premier Truck Driving School

| | NAME | | ADDRESS | | |
|---|---|---|---|---|---|
| **DEBTOR:** William | Gradle | | 5200 Clark Ave 65 | Lakewood | CA 90714 |
| | NAME | | ADDRESS | | |
| **DEBTOR:** | | | | | |
| | NAME | | ADDRESS | | |

In this Promissory Note and Disclosure Statement (also called Note) the words I, me, my, mine and us mean each and all of those signing the Note. The words you, your, and yours mean the Creditor identified above. In return for a loan that I have received from you, I promise to pay to your Order at the office in the above city the amount of: U.S. $ 5,175.00 (the "principal"), according to the Contract terms as set forth below in the Special Regulation Z Disclosures (to the extent applicable) and according to other Note terms as provided below.

Interest: No interest will be charged on his Note unless and until I default. After default, interest will be charged at the rate of 18% per annum on that part of the principal which has not been paid and will be charged beginning on the date of default and continuing until the full amount has been paid.

### SPECIAL REGULATION Z DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost me | Amount Financed<br>The amount of credit provided to me or on my behalf | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled |
|---|---|---|---|
| 0 % | 0 | $5175 | $5175 |

MY PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $5175 | Upon Termination of Employment with C.R. England, Inc. |

**PREPAYMENT:** If I pay off early, I will not have to pay a penalty.

Information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties appears in my contract document.

### ITEMIZATION OF AMOUNT FINANCED

The Amount Financed of $5175 is distributed as follows:

Amount paid on my behalf to Premier Truck Driving School for tuition and fees $5175

**NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The contract terms on the reverse side of this Note are part of and incorporated into this Note.

EXECUTION/ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

THE UNDERSIGNED ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY OF THIS NOTE AND DISCLOSURE CONTAINED HEREIN WHICH DISCLOSURES WERE MADE PRIOR TO SIGNING.

Debtor William Gradle    Date: 08.03.2015    Debtor _____ Date: _____

**Payments.** I have promised to repay this Note as set forth above in the Special Regulation Z Disclosure box. I may repay this Note at any time without penalty.

**Employee Educational Assistance Program.** I understand that if I complete the term of my Employment Agreement with C.R. England, C.R. England will satisfy this note in its entirety on my behalf.

**Estimated Credit Terms.** I understand that the interest accrues on the outstanding principal balance on a daily basis. Consequently, the amount you have disclosed for the Finance Charge and the Total of Payments are estimates and the actual amounts paid may increase or decrease based upon my payment habits.

**Assignment.** I understand that you may sell or assign your interests under this Note, without my consent.

**Credit Reporting.** I understand that you may report information about this Note, including payment history, late payments and/or defaults, to credit bureaus, and such information may be reflected on credit reports respecting my credit history.

**Enrollment Agreement.** I am entering into this Note to pay amounts owed to Premier Truck Driving School under a separate Enrollment Agreement for truck driver training ("Enrollment Agreement"). If, under the terms of that Enrollment Agreement, I am entitled to a refund of any amounts paid, any such refund is assigned to you, and shall be applied to the last payments owed by me under this Note.

**Events of Default.** I will be in default under this Note if I fail either to make a payment on time, or to perform all of my obligations under this Note.

**Remedies.** Upon the occurrence of any event of default as described above, and at any time thereafter, you may declare the entire balance due and payable at once, without notice or demand.

**Right of Offset.** If I am in default, I authorize you to exercise immediately your common law right of offset against any monies or credits I might have with you.

**No Waiver of Rights.** You may accept late or partial payments as well as delay enforcing any of your rights on any occasion, without losing your rights under this Note.

**Collection Fees.** If I default under this Note, I agree to pay all your collection and legal expenses, including your reasonable attorneys' fees.

**Responsibility of Persons Under This Note.** If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in the Note. Any guarantor, surety, or endorser of this Note is also obligated to do these things. You may enforce your rights under this Note against each of us individually or against all of us together, and all of us severally waive presentment for payment, protest, demand, notice of protest, and notice of dishonor.

**Governing Law.** This Note shall be governed by the law of the State of Utah. This is the entire agreement between you and me. No other agreements or understandings exist outside of this document.

**EXHIBIT C**

FACSIMILE
(858) 551-1232

# BLUMENTHAL, NORDREHAUG & BHOWMIK
**2255 CALLE CLARA**
**LA JOLLA, CALIFORNIA 92037**
GENERAL E-MAIL: bam@bamlawlj.com
Web Site: www.bamlawca.com

TELEPHONE
(858) 551-1223

WRITERS E-MAIL:
**Nick@bamlawca.com**

WRITERS EXT:
**5**

February 9, 2016
CA1034

## VIA CERTIFIED MAIL

Labor and Workforce Development
Agency
Certified Mail # 70142120000378198742
800 Capitol Mall, Suite 5000 MIC-55
Sacramento, CA 95814

C.R. England, Inc.
Certified Mail # 70142120000378198759
CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

> Re:    Notice Of Violations Of California Labor Code Sections §§ 226(a), 226.7, 512, 1194, 1197, 1197.1, Violation of Applicable Industrial Welfare Commission Wage Order(s), and Pursuant To California Labor Code Section 2699.5.

Dear Sir/Madam:

Our offices represent Plaintiff Milton Harper ("Plaintiff"), and other aggrieved employees in a lawsuit against C.R. England, Inc. ("Defendant"). Plaintiff has been employed by Defendant in California since December of 2012 as a Truck Driver Employee entitled to the legally required meal and rest breaks and payment for all time worked under Defendant's control. Defendant, however, unlawfully fails to record and pay Plaintiff and other aggrieved employees for all of their time worked and for all of their missed meal and rest breaks. As a consequence of the aforementioned violations, Plaintiff further contends that Defendant fails to provide accurate wage statements to him, and other aggrieved employees, in violation of California Labor Code section 226(a). Said conduct, in addition to the foregoing, violates Labor Code §§ 204, 226(a), 226.7, 512, 1194, 1197, 1197.1, Violation of the applicable Industrial Welfare Commission Wage Order(s), and is therefore actionable under California Labor Code section 2699.3.

A true and correct copy of the Complaint filed by Plaintiff against Defendant, which (i) identifies the alleged violations, (ii) details the facts and theories which support the alleged violations, (iii) details the specific work performed by Plaintiff, (iii) sets forth the people/entities, dates, classifications, violations, events, and actions which are at issue to the extent known to Plaintiff, and (iv) sets forth the illegal practices used by Defendant, is attached hereto. This information provides notice to the Labor and Workforce Development Agency of the facts and theories supporting the alleged violations for the agency's reference. Plaintiff therefore incorporates the allegations of the attached Complaint into this letter as if fully set forth herein. If the agency needs any further information, please do not hesitate to ask.

This notice is provided to enable the Plaintiff to proceed with the Complaint filed in the San Bernardino County Superior Court, Case No. CIVDS1601256, against Defendant as authorized by California Labor Code section 2695, *et seq*.  The pending lawsuit consists of other aggrieved employees.  As counsel, our intention is to vigorously prosecute the claims as alleged in the complaint, and to procure civil penalties as provided by the Private Attorney General Statue of 2004 on behalf of Plaintiff and all aggrieved California employees.

Your earliest response to this notice is appreciated.  If you have any questions of concerns, please do not hesitate to contact me at the above number and address.

Respectfully,

/s/ *Nicholas J. De Blouw*

Nicholas J. De Blouw, Esq.

K:\D\Dropbox\Pending Litigation\CR England - Harper\l-paga-01.wpd

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Labor & Workforce Dev. Agency
800 Capitol Mall, Suite MIC-55
Sacramento, CA 95814

CA1034

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
~~MENT DEVELOPMENT DEPART~~
X    800 Capitol Mall   □ Agent
~~Sacramento, CA 958~~ □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                  2 -12

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:  □ No

3. Service Type
   ☑ Certified Mail®      □ Priority Mail Express™
   ☒ Registered          □ Return Receipt for Merchandise
   □ Insured Mail        □ Collect on Delivery

4. Restricted Delivery? (Extra Fee)        □ Yes

2. Article Number
   (Transfer from   7014 2120 0003 7819 8742

PS Form 3811, July 2013          Domestic Return Receipt

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery<br>FATIMA BLANCO  2/4/16 |
| 1. Article Addressed to:<br><br>C.R. England Inc.<br>CT Corporation System<br>818 West Seventh St. Suite 930<br>Los Angeles, CA 90017<br><br>CA1034 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail®   ☐ Priority Mail Express™<br>☐ Registered   ☑ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ Collect on Delivery<br>4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7014 2120 0003 7819 8759 |

PS Form 3811, July 2013          Domestic Return Receipt