IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WILLIAM H. GRADIE, MILTON HARPER, RONNIE STEVENSON, and JONATHAN MITCHELL, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>C.R. ENGLAND, INC., a corporation; and Does 1 through 100, inclusive,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER CONFIRMING CERTIFICATION OF CLASS ACTION FOR SETTLEMENT PURPOSES AND GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>Case No. 2:16-cv-00768-DN<br><br>District Judge David Nuffer |

Plaintiffs' Motion for Final Approval of Class Action Settlement came on for hearing on in this Action on October 26, 2020.  The Court has considered all papers filed and proceedings held herein and all oral and written comments and argument received regarding the proposed class-wide Settlement. Having reviewed the record in the above captioned matter, and good cause appearing, this order containing findings of fact and conclusions of law, is entered.

I.      BACKGROUND ............................................................................................. 2
II.     FINDINGS OF FACT ................................................................................... 4
        A.      The *Harper* Action and *Harper* Settlement ................................... 5
        B.      This Action and Settlement ................................................................ 7
        C.      Notice and Class Response ................................................................ 9
        D.      The Cook Objection .......................................................................... 10
III.    CONCLUSIONS OF LAW ......................................................................... 12
        A.      The Court Has Jurisdiction Over This Matter ................................. 12
        B.      The Notice Provided to Class Members Was Sufficient ................. 12
        C.      The Class Meets the Standard for Certification .............................. 13
        D.      The Settlement Satisfies the Requirements of Fed. Rule Civ. P. 23(e) ............... 18
                i.      Plaintiffs Have Adequately Represented the Class ................. 18
                ii.     The Settlement Results from Arms-Length Negotiations ......................... 20
                iii.    The Relief Provided for the Class is Adequate ......................... 21
                iv.     The Settlement Treats Class Members Equitably Relative to Each Other 27
        E.      The Settlement Further Meets the Requirements of *Rutter & Wilbanks v. Shell Oil Co.* ............... 28
IV.     ORDER ........................................................................................................ 30

## I.      BACKGROUND

Plaintiffs William H. Gradie, Milton Harper, Ronnie Stevenson, and Jonathan Mitchell

("Plaintiffs") and Defendant C.R. England, Inc. ("Defendant" or "C.R. England") (collectively,

"Parties") submitted a Joint Stipulation of Class Action Settlement and Release of Claims (the

"Stipulation" or "Settlement") for evaluation by this Court,[1] which Settlement was preliminarily

approved on April 16, 2020 (the "Preliminary Approval Order").[2] In accordance with the Court's

Preliminary Approval Order, the members of the Settlement Class[3] were given due and adequate

---

[1] A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Kyle Nordrehaug in Support of Motion for Final Approval of Class Action Settlement. Docket No. 87-1. All terms herein shall have the same meaning as the terms defined in the Settlement, unless specifically provided otherwise.

[2] See Order Granting Preliminary Approval of Class Action Settlement. Docket No. 75.

[3] As set forth in the Stipulation, "Class" means all current and former truck drivers employed by Defendant in the State of California during the Class Period. The Class Period is March 12, 2014 up through and including April 4, 2020. The Class thus includes employee truck drivers of any kind who worked for Defendant in the State of California from March 12, 2014 through April 4, 2020, including, but not limited to, drivers, truck drivers, truck workers, industrial truck workers, industrial truck drivers, Phase I drivers, Phase II drivers, driver trainees, student drivers, and/or any other similar job designation or description that involved driving a truck for Defendant. Docket No. 87-1, Ex. 1 at 5-6.

notice of the terms of the Settlement and an opportunity to comment on it, including, but not limited to, the right to opt-out of the Settlement or object to it.

A Final Fairness Hearing regarding the Settlement was then held by this Court on Monday, October 26, 2020, to address whether the Settlement should be given final approval.

In order to answer that question, the Court reviewed the extensive briefing submitted by the Parties and one Class Member (i.e., Objector Marty Cook) regarding the Settlement, including the following documents: Plaintiffs' Motion for Final Approval of Class Action Settlement,[4] together with the supporting Declarations of Kyle Nordrehaug,[5] Brian Van Vleck,[6] and Sharon Witas on behalf of the Settlement Administrator;[7] Plaintiff's Unopposed [sic] Motion for Approval of Class Counsel's Attorney Fees, Litigation Costs, and Service Awards for Named Plaintiffs,[8] together with the supporting Declarations of Kyle Nordrehaug,[9] and Brian Van Vleck;[10] the Objection to Proposed Class Action Settlement by Objector Marty Cook;[11] Plaintiffs' Response to Objection by Marty Cook[12] and its supporting Exhibit;[13] the Response of Defendant C.R. England, Inc. to Objection to Proposed Class Settlement by Objector Marty Cook[14] and supporting Declaration of Drew R. Hansen together with its Exhibits;[15] Objector's

---

[4] Docket No. 87.

[5] Docket No. 87-1.

[6] Docket No. 87-2.

[7] Docket No. 87-3.

[8] Docket No. 76.

[9] Docket No. 76-2.

[10] Docket No. 76-1.

[11] Docket No. 79.

[12] Docket No. 88.

[13] Docket No. 88-1.

[14] Docket No. 84.

[15] Docket No. 85, Docket No. 85-1, Docket No. 85-2.

Reply in Support of Objection;[16] Plaintiffs' Reply in Support of Final Approval of Class Action Settlement and Response to Docket #91 Further Objections of Marty Cook,[17] together with the supporting Supplemental Declaration of Brian Van Vleck;[18] the Reply of C.R. England in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Response to Supplemental Brief Filed by Objector Marty Cook[19] together with the supporting Declaration of Thomas F. McGeean, Jr.;[20] Plaintiffs' Notice of Errata;[21] the Supplemental Declaration of Sharon Witas on Behalf of the Settlement Administrator;[22] and all other documents on file in this case related in any way to Plaintiffs' Motion for Final Approval of Class Action Settlement.  The Court has also considered the statements and arguments the Parties and Objector's counsel made at the Fairness Hearing (i.e., the final approval hearing held on October 26, 2020).

After having thoroughly examined and considered all of the aforementioned materials and carefully listened to oral argument from counsel for the Parties and Objector Mary Cook, the Court hereby finds, orders, and rules as follows:

## II.   FINDINGS OF FACT

1.   Before the Court is Plaintiffs' motion for final approval of a proposed class-wide Settlement in this case (the "Action"), which Settlement fully and finally resolves the claims of more than 12,800 truck drivers. The Settlement is an outgrowth of a prior settlement in a related action (the "*Harper* Action"), which involved three of the named plaintiffs to this Action. On

---

[16] Docket No. 91.

[17] Docket No. 95.

[18] Docket No. 96.

[19] Docket No. 93.

[20] Docket No. 94.

[21] Docket No. 98.

[22] Docket No. 99.

November 25, 2019, a First Amended Complaint was filed in this Action, adding the three named plaintiffs of the *Harper* Action as named plaintiffs to the instant Action along with all of their alleged claims, effectively consolidating the two actions into a single lawsuit.[23]

2.      The proposed Settlement has a total value of more than $18.6 million, consisting of a non-reversionary cash component equal to $3.6 million and a debt relief component equal to more than $15 million.[24] The Settlement will provide 12,802 Participating Class Members immediate and substantial benefits, with the average recovery to each Participating Class Member totaling in excess of $1,300 after all approved costs/awards are deducted.[25]

### A.   The *Harper* Action and *Harper* Settlement

3.      Because the instant Settlement is an outgrowth of the *Harper* Action and corresponding settlement reached in that case, a brief overview of that action is warranted to provide context. The *Harper* Action was filed in California state court, three months before this Action (i.e., in February 2016). It was then removed to the Central District of California under the Class Action Fairness Act and transferred by stipulation to this District due to the existence of mandatory forum selection clauses agreed to by all three named plaintiffs.[26] Following a mediation and mediator's proposal, the parties in the *Harper* Action reached a proposed class-wide settlement, which was finally approved by Judge Dee Benson of the District of Utah in late 2016.[27] Plaintiff Gradie, who was not a named plaintiff in the *Harper* Action, objected to that

---

[23] Docket No. 67.

[24] Docket No. 87 at 2.

[25] *Id.*

[26] The instant case was also transferred from the Central District of California to this District pursuant to stipulation based on a similar forum selection clause Mr. Gradie had signed.

[27] *Harper v. C.R. England, Inc.* ("*Harper I*"), No. 2:16-CV-906, 2016 WL 7190560, at *3 (D. Utah Dec. 12, 2016).

settlement.[28] Judge Benson made findings in his order finally approving the settlement of the *Harper* Action, including, but not limited to, concluding that the parties in that case had participated in arms-length negotiations, serious questions of law and fact made the outcome of the litigation far from certain, the value of immediate recovery was substantial, and the settlement was fair and reasonable under the circumstances.[29] Judge Benson thus approved the settlement as fair, reasonable, and adequate, and overruled all of Mr. Gradie's objections, including finding that his "hypothetical valuations" were "unrealistic and highly unlikely to be born out in protracted litigation."[30]

      4.    Mr. Gradie then appealed that ruling to the Tenth Circuit, which vacated and remanded Judge Benson's order of final approval for further proceedings due to a standing issue unrelated to the adequacy of the settlement.[31]  Specifically, the Tenth Circuit reversed Judge Benson's approval because of insufficient findings supporting certification of a class for settlement purposes (i.e., whether Rule 23(a)'s typicality requirement was satisfied), not because of anything related to the value or adequacy of the settlement.[32]

      5.    On remand, Judge Benson voluntarily recused himself and the *Harper* Action was reassigned to Judge Shelby who subsequently declined to approve the settlement because in his estimation the three *Harper* plaintiffs lacked standing to pursue the contract based claims and therefore could not satisfy Rule 23(a)'s typicality requirement.[33] Like the Tenth Circuit, Judge

---

[28] Docket No. 87-1, at 9.

[29] *Harper I*, 2016 WL 7190560 at **3-4.

[30] *Id.* at *3.

[31] *Harper v. C.R. England, Inc.* ("*Harper II*"), 746 F. App'x 712, 721-22 (10th Cir. 2018) (unpublished).

[32] *Id.*

[33] *Harper v. C.R. England, Inc.* ("*Harper III*"), No. 2:16-CV-906, 2019 WL 1376822, at *4 (D. Utah Mar. 27, 2019)

Shelby did not reach the value or adequacy of the settlement in the *Harper* Action.[34]

### B. This Action and Settlement

6.      Following Judge Shelby's order denying final approval of the settlement in the

*Harper* Action, the three *Harper* plaintiffs and C.R. England pursued another mediation,[35] this

time including Mr. Gradie and his counsel as well.[36] C.R. England, the Harper plaintiffs, and Mr.

Gradie thus participated in a three-sided mediation with Steve Pearl, a well-respected and

experienced mediator of class action lawsuits in California.[37] At this mediation held in 2019,

Plaintiffs and the Class's interests were represented by two independent and completely separate

law firms.[38]  Class Counsel also had access to voluminous documents and other information

relating to C.R. England, and had the assistance of a damages expert to accurately assess the

value of their claims along with other information.[39] Mr. Pearl negotiated with the Parties in this

Action for an entire day, and ended the day with a mediator's proposal of key terms for a

settlement.[40] All three sides eventually accepted the mediator's proposal and began working on

memorializing its terms.[41]

7.      The Parties then notified Judge Shelby that a Settlement had been reached[42] and

that Mr. Gradie would be amending the Complaint in this Action to include the plaintiffs in the

---

[34] *See id.* at **2-5.

[35] This was the third mediation related to the claims at issue in this case, since Mr. Gradie, the three Harper Plaintiffs, and Defendant also participated in a mediation while the settlement in the *Harper* Action was on appeal before the Tenth Circuit.  *See* Docket No. 84, at 29; Docket No. 87-1 at 13-15, 17.

[36] Docket No. 87-1 at 13

[37] *Id.* at 13-15, 17; Docket No. 87-2, ¶ 21.

[38] *See* Docket No. 87-1, at 13-15, 17; Docket No. 87-2, ¶ 21.

[39] *See* Docket No. 87-1, at 13-15, 17; Docket No. 87-2, ¶ 21.

[40] *See* Docket No. 87-1, at 10, 14, 17; Docket No. 87-2, ¶ 22.

[41] *See* Docket No. 87-1, at 10, 14, 17; Docket No. 87-2, ¶ 21-23.

[42] *See Harper v. C.R.  England, Inc.*, No. 2:16-cv-00906-RJS, ECF No. 92, filed June 20, 2019.

*Harper* Action as named plaintiffs in this Action as well as all of their alleged claims.[43] The Parties thereafter sought and obtained approval from this Court for Mr. Gradie to file a First Amended Complaint adding the three *Harper* plaintiffs to this case along with their alleged claims.[44]

8.    The Settlement applies to more than 12,800 truck drivers.[45]  It further covers a Class Period of just over 6 years (i.e., from March 12, 2014 up through and including April 4, 2020).[46]

9.    As for its value, the Settlement provides $3.6 million in cash to be divided pro rata among all Participating Class Members based on their number of workweeks along with debt forgiveness of more than $15 million.[47] Due to the nature of the debt forgiveness component of the Settlement, the debt forgiveness amount rolls forward as time accrues, to be ultimately capped at the time the Settlement becomes completely final and no longer capable of being appealed.[48] The amount of debt forgiveness is thus greater than the $15 million figure negotiated at the time of the Settlement.

10.    In addition, as indicated in the Reply of C.R. England in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Response to Supplemental Brief Filed by Objector Marty Cook, and confirmed by C.R. England's counsel at the Fairness Hearing held on October 26, 2020, C.R. England has voluntarily agreed to add $53,224.21 to the monetary component of the Settlement, which sum shall be distributed among 126 Participating Class

---

[43] Docket No. 67; *see also* Docket No. 87-1 at 9; Docket No. 87-2, ¶ 23.

[44] *See* Docket No. 64 and Docket No. 66.

[45] *See* Docket No. 87-3 ¶¶ 4, 6.

[46] The Class Period is March 12, 2014 through April 4, 2020. Docket No. 87-1 at 18 & Ex. 1.

[47] Docket No. 87-1 at 2-3 & Ex. 1.

[48] This fact was confirmed by the Parties at oral argument.

Members based on the amount of interest and liquidated damages they paid beyond their principal tuition loan balance.[49] While C.R England maintains that this additional payment is unnecessary (and the Court would have approved the Settlement as fair, reasonable and adequate without it), the Court nevertheless accepts C.R. England's offer to pay the additional monetary amount to eviscerate any theoretical concern raised by Objector Cook.[50]

### C. Notice and Class Response

11.     On July 1, 2020, following the Court's Order granting Preliminary Approval of the Settlement, the Settlement Administrator in this Action mailed the Notice of Proposed Class Action Settlement to 12,810 Class Members.[51] Out of 12,810 Notices, 1,839 were returned as undeliverable. The Settlement Administrator located an updated address for 922 individuals and re-mailed the Notices to those particular Class Members.[52]

12.     The Notice provided information regarding each Class Members rights under the Settlement, and his or her opportunity to opt-out or object.[53] The Settlement Administrator also set up a toll-free number Class Members could call to make inquiries about the Settlement.[54]

13.     Of the 12,810 Class Members to whom Notice was sent by the Settlement Administrator, only 8 individuals opted-out. The eight Class Members who opted-out of the Settlement are as follows:  (1) Vincent Agrusa; (2) Jason Asher; (3) Mark Bode; (4) Frank Canalez; (5) John Clarke, Jr.; (6) Derrick Harhausen; (7) Robert Ibarra; and (8) Roberto Castro.[55]

---

[49] Docket No. 93 at 12.

[50] *See id.*

[51] Docket No. 87-3, ¶ 4.

[52] *Id.* at ¶ 5.

[53] Docket No. 87-3, Ex. A.

[54] Docket No. 87-3, ¶ 3.

[55] *Id.* at ¶ 6, Ex. B.

14.     Additionally, one Class Member, Marty Cook, objected to the Settlement.[56]

**D.  The Cook Objection**

15.     Objector Marty Cook is a named plaintiff in another, substantially similar, and overlapping putative wage and hour class action lawsuit that was filed on March 5, 2020 in the Northern District of California, four years after this Action was initially filed.[57] Mr. Cook brought his action, captioned *Bode et al. v. C.R. England, Inc.*, Case No. 3:20-cv-01620-JCS (N.D. Cal.) along with two other individuals, Jason Asher and Mark Bode, who were also Class Members.[58] Messrs. Bode and Asher opted out of the Settlement.[59] Mr. Cook objected.[60]

16.     On August 31, 2020, Objector Marty Cook filed an Objection to the Proposed Class Action Settlement.[61] The Objection was 29 pages in length and raised numerous arguments.[62] Additionally, Objector Cook also filed a supplemental brief in response to Plaintiffs' and C.R. England's respective responses to his original Objection.[63]

17.     Objector Cook objected that Plaintiffs undervalued the claims of the Class, such that the value of the Settlement is inadequate.[64] Objector Cook provides a number of calculations resting on various assumptions and assertions about the Class's claims to derive alleged verdict values of between $900 million and "exceed[ing] a billion dollars."[65] Based on these figures,

---

[56] *Id.* at ¶ 7.

[57] Docket No. 84 at 7-8; Docket No. 87-1 at 18-19.

[58] Docket No. 84 at 7-8.

[59] Docket No. 87-3, ¶ 6, Ex. B.

[60] *See id.* at ¶ 7.

[61] Docket No. 79.

[62] *See id.*

[63] Docket No. 91.

[64] *See* Docket No. 79; Docket No. 91.

[65] Docket No. 79 at 16-18.

Objector Cook asserts that the Settlement represents an alleged 99% discount of his purported verdict value, which he argues is purportedly evidence that Plaintiffs were either uninformed as to the value of the Class's claims due to a lack of formal discovery, or careless as to their valuation of the Class's claims in entering into the Settlement.[66]  For example, Objector Cook claims that Plaintiffs undervalued the minimum wage claims in this Action because they did not adequately take into account the time drivers spent in the sleeper berth.[67]

18.     Objector Cook likewise asserts that Plaintiffs gave too much credence to C.R. England's arguments regarding the risks that Plaintiffs' claims would be compelled to individual arbitration and that a number of claims were subject to federal preemption.[68]

19.     Objector Cook further asserts that the debt relief portion of the Settlement is illusory, or, alternatively, that the value of the debt relief portion would not be fully realized by a portion of the Class, and therefore should not be considered at all.[69]

20.     Objector also raises other arguments in his Objection.

21.     The Court has considered all of the objections raised by the Objector.  Although Objector Cook's objections have helped the Court carefully examine the issues and highlighted the benefit of the adversarial process, ultimately, Cook raises only debatable possibilities. Indeed, the ultimate outcome of the litigation is in doubt and Plaintiffs' claims are far from certain.  There also exists case law that contradicts Objector's contentions.  Thus, for the reasons stated herein and at oral argument as well as the reasons set forth in the briefing submitted by Plaintiffs and C.R. England, the Court hereby overrules Objector's objections.

---

[66] *Id*. at 2-3.

[67] *See* Docket No. 79 at 16-18; Docket No. 91.

[68] *See id.* at 22-23; Docket No. 91 at 6-9.

[69] *See* Docket No. 79 at 20-22; Docket No. 91.

### III.    CONCLUSIONS OF LAW

#### A.  The Court Has Jurisdiction Over This Matter

22.    The Court finds that it has jurisdiction over the subject matter of this Action, the Plaintiffs, C.R. England, the Settlement Class, and all Class Members. Subject matter jurisdiction is bestowed by 28 U.S.C. §§ 1332(d) and 1453(b). The Court also notes that no Party or Class Member has challenged the Court's jurisdiction.

#### B.  The Notice Provided to Class Members Was Sufficient

23.    The Court finds that the distribution by first-class mail of the Class Notice constituted the best notice practicable under the circumstances to all 12,810 persons within the definition of the Class and fully met the requirements of due process under the United States Constitution and applicable state law.  Based on evidence and other material submitted in conjunction with the Fairness Hearing held on October 26, 2020, the actual notice to the Class was adequate.  The Notice papers informed Class Members of the terms of the Settlement, their right to a share of the Settlement Payment and to forgiveness of certain debts, their right to object to the Settlement, their right to elect not to participate in the Settlement and pursue their own remedies, and their right to appear in person or by counsel at the Fairness Hearing and to be heard regarding approval of the Settlement.  Adequate periods of time were provided by each of these procedures, as set forth in the Court's Preliminary Approval Order and the Stipulation. There were eight (8) individuals who opted out of the Settlement who are listed in Exhibit B to the Declaration of Sharon Witas.[70]  There was one objection submitted by Marty Cook.[71]  This objection has been considered by the Court, is discussed herein, and is overruled in its entirety.

---

[70] Docket No. 87-3, ¶ 6, Ex. B.

[71] *Id.* at ¶ 7.

24.     The Court has afforded a full and fair opportunity to the Class Members to participate in the Fairness Hearing, and all Class Members and other persons wishing to be heard have been heard. The 12,810 Class Members also have had a full and fair opportunity to exclude themselves from the Settlement and the Class. Accordingly, the Court determines that all Participating Class Members (i.e., those Class Members who did not submit valid and timely requests to be excluded from the Class and the Settlement to the Settlement Administrator) are bound by this Decision and Order and the accompanying Judgment.

25.     The Court finds that no supplemental notice to the Class is required as a result of C.R. England's offer to pay an additional $53,224.21 as part of the Settlement. The modification only increases the amounts paid to 126 Participating Class Members and supplemental notice is therefore not required.[72]

### C.  The Class Meets the Standard for Certification

26.     The Court finds, for settlement purposes only, that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3), which the Court need not address for purposes of settlement.

27.     The Court finds that the members of the Settlement Class are so numerous as to make it impracticable to join all Class Members. Indeed, the numerosity requirement is easily met by this Class of more than 12,800 members. Moreover, as demonstrated by the Parties and in

---

[72] *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12327929, at *12 fn. 15 (C.D. Cal. July 24, 2013) (holding that "[w]here the benefit to the class is increased by changes to proposed class action settlements, courts have held that supplemental direct notice to the class is not required"); *see also* *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012), cert. denied, 568 U.S. 931, 133 S.Ct. 317, 184 L.Ed.2d 239 (2012) (finding additional notice was unnecessary); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (same).

the Declaration of Sharon Witas on behalf of the Settlement Administrator,[73] the Class is ascertainable.

28.     The Court likewise finds that there are questions of law and fact common to the Class with respect to the claims being settled by this Settlement. For purposes of the Settlement, these common issues predominate over any individual issues. The questions of law and fact common to the Settlement Class, include, but are not limited to, the following:

a.   Whether Defendant failed to pay Class Members minimum wage under California law, including, but not limited to, minimum wages for non-productive time, sleeper berth time, etc.

b.   Whether Defendant failed to pay Class Members any overtime wages under California law.

c.   Whether Defendant failed to provide accurate, itemized wage statements to Class Members under California law.

d.   Whether Defendant failed to maintain accurate, itemized wage statements for Class Members under California law.

e.   Whether Defendant failed to reimburse Class Members for required business expenses under California law.

f.   Whether Defendant took any unlawful deductions from Class Members in violation of California law.

g.   Whether Defendant failed to provide off-duty meal and rest periods under California law.

---

[73] Docket No. 87-3.

h.  Whether Defendant failed to timely pay all wages owed to Class Members upon termination of their employment.

i.  Whether Defendant failed to timely pay all wages owed to Class Members each pay period.

j.  Whether Defendant followed a consistent policy and practice of allegedly imposing unlawful wage deductions and payment of expenses by, *inter alia*: requiring Class Members to pay out of their own pockets for the Premier Truck Driving School; requiring Class Members to purportedly patronize Defendant's own for-profit training and finance program; and deducting from wages for training costs, alleged "liquidated damages," usurious interest rates, and other sums supposedly owed to Defendant.

k.  Whether Defendant made false representations to Class Members that: (a) the actual out-of-pocket cost to Defendant for its training was in excess of $5,000; (b) full-time work would be "guaranteed" by Defendant for at least the mandated nine-month term of employment; (c) that during this "guaranteed" employment period their employment would not be terminable "at will" on the same basis as other Defendant employees, but rather would be terminable only for demonstrated "good cause"; and (d) that Defendant would fully pay the cost of training on their behalf and thereby cause the debt to be satisfied and discharged upon completion of their nine-month term of employment.

l.  Whether Defendant violated California's unfair competition law;

m.  Whether Defendant charged usurious interest rates in excess of 18% to Class

Members, which were allegedly required to obtain employment with

Defendant.

29.    The Court further finds Plaintiffs' claims are typical of the claims of the Class

Members. Plaintiffs were all employed by C.R. England during the Class Period and subject to

its compensation system. Likewise, Plaintiffs all were enrolled in the Premier Truck Driving

School, made tuition arrangements with C.R. England, and underwent training at C.R. England's

training program in reliance on the alleged representations of C.R. England. Plaintiffs were all

subject to an employment agreement together with terms for liquidated damages, and the

allegedly usurious interest rates. At least Plaintiff Gradie was terminated prior to the expiration

of that agreement and was obligated to pay the allegedly improper liquidated damages and

allegedly usurious interest rates along with the principal amount owed. Plaintiffs were all

employed by Defendant and were all allegedly not paid for all time worked, subjected to

unlawful deductions, and missed meal and rest breaks allegedly resulting in untimely wages and

inaccurate wage statements. Thus, Plaintiffs' claims are typical of those of the Class.

30.    The Court also finds that the prosecution of separate actions by individual Class

Members against Defendant would create the risk of inconsistent or varying adjudications which

would establish incompatible standards of conduct.

31.    The Court further finds that Plaintiffs and Class Counsel are adequate

representative of the Class. The Court specifically finds that the four named Plaintiffs have well

represented the interests of the Class. They have shared interests with the Class regarding, among

other things, whether the terms of the contracts they signed are legal.  They also have shared

interests with the Class regarding whether they were paid all wages owed (including, but not

limited to, minimum wages),  were paid all wages upon termination of employment, were issued accurate and compliant wage statements, were provided required meal and rest periods, were subjected to unlawful deductions, had to bear any business expenses that should be borne by C.R. England, were defrauded, were charged usurious interest rates, and had to pay improper liquidated damages. All of these shared interests and other shared interests are common to the Class Representatives.

32.     The Court likewise finds that the two law firms serving as Class Counsel are adequate representatives of the Class, since they both have substantial experience representing plaintiffs in class action lawsuits, including in wage and hour class actions against trucking companies.  In fact, one of the two law firms representing Plaintiffs and the Class was found to be adequate class counsel in a separate wage and hour class action lawsuit against C.R. England that was resolved in 2014 (i.e., Brian Van Vleck was lead counsel for plaintiffs in the *Jasper v. C.R. England, Inc.* matter).   Class Counsel was thus extremely familiar with C.R. England. Accordingly, Plaintiffs have not only been involved in the litigation and looked out for the Class but have retained very qualified counsel to protect their interests and the interests of the Class.

33.     There also does not appear to be, nor has any individual presented evidence of, any antagonism between Plaintiffs and the Class. Therefore the Plaintiffs and Class Counsel have adequately represented the Class.

34.     Accordingly, solely for purposes of effectuating this Settlement, this Court has concluded that all of the Rule 23 elements necessary to certify a Class are satisfied.  The Court thus certifies a Class of all 12,802 Participating Class Members for settlement purposes only.

Because the Rule 23 class is being certified here for settlement purposes only, the Court need not (and does not) address the manageability requirement of Rule 23(b)(3).[74]

### D.   The Settlement Satisfies the Requirements of Fed. Rule Civ. P. 23(e)

35.    Having certified the Class for settlement purposes, the Court finds the Settlement, together with each of the releases and other terms set forth in the Stipulation, is fair, just, reasonable and adequate as to the Class, the Plaintiffs, and Defendant.  A court "may approve a settlement…that would bind class members only after a hearing and on finding that the settlement…is fair, reasonable, and adequate."[75]  "In determining that the settlement agreement is fair, reasonable, and adequate, the court must consider whether: '(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.'"[76]

### i.    Plaintiffs Have Adequately Represented the Class

36.    As explained above and at the October 26, 2020 final approval hearing, the Court finds that the Class Representatives have adequately represented the Class. There is significant evidence in the record of this fact that has been highlighted by the vigor of the briefing on this Settlement (i.e., the briefing on the motion for final approval) and Objection. Moreover, counsel

---

[74] *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[75] Fed. R. Civ. P. 23(e)(2).

[76] *Id.*; *Christensen v. Miner*, No. 2:18CV37DAK, 2019 WL 6970956, at *2 (D. Utah Dec. 19, 2019).

for the Parties have been engaged in negotiation, including exchange of information for several years and the Settlement results from the Parties' participation in three separate and independent mediations, with the first one occurring in 2016 and the last one (which produced this Settlement) having taken place last year. This is thus not a situation where self-interested counsel with captive parties rushed to a settlement on an uninformed basis. Class Counsel have admirably and vigorously represented the Class for years, and the Class Representatives' claims are good representative claims, since they share common interests with the Class.

37.     Although the Parties did not engage in formal discovery, the Declaration of Kyle Nordrehaug and the Supplemental Declaration of Brian Van Vleck[77] make it abundantly clear that Plaintiffs had ample information to assess the value of the Class's claims. In preparation for the mediation that preceded this Settlement, Class Counsel reviewed, among other things, many thousands of pages of documents and other information amounting to multiple gigabytes of data. These documents included payroll data, employment data, wage statements, earnings, and other compensation materials, information about C.R. England's Premier Truck Driving School, settlement agreements in two prior wage and hour class actions, arbitration agreements containing class action waivers, employment contracts and other ancillary documentation. Class Counsel also reviewed information regarding the total number of work weeks and wage rates for the Class as well as other information needed to evaluate the claims at issue.  Moreover, Mr. Van Vleck was lead trial counsel in *Jasper v. C.R. England* and had substantial familiarity with C.R. England's operations, practices, and policies, and was well equipped to evaluate if any information was missing, since that case lasted many years, involved numerous depositions and documents, and was not resolved until after a class had been certified and summary judgment

---

[77] Docket No. 96.

obtained.[78] The Court finds that Plaintiffs and Class Counsel therefore had more than sufficient information to make informed decisions about the Settlement and that the result achieved substantially benefits the Class.

38. Further, contrary to Objector's criticism and unfounded assertions, the Court finds that Plaintiffs and Class Counsel adequately and carefully evaluated the claims of the Class. Nowhere is this more evident than in the Parties' briefing in response to the Objection. The Plaintiffs' thorough analysis in those briefs responded to the various points Objector raised and in many cases raised counter considerations absent in Objector Cook's briefing. The ultimate outcome of these various issues is, of course, debatable, but there are clearly many procedural and substantive risks and hurdles that could defeat the Class's claims. Indeed, the possibility of recovering anything in this case is far from certain given the various procedural and substantive defenses raised by C.R. England. As such, there is no showing of an inadequate evaluation by Plaintiffs or Class Counsel. The Court therefore concludes that the Class's interests were adequately represented by Plaintiffs and Class Counsel for all of the reasons stated herein and in the briefs submitted by Plaintiffs and C.R. England.

### ii. The Settlement Results from Arms-Length Negotiations

39. Additionally, the facts relating to the mediations and multiple, facilitated negotiation sessions support the second criterion that the proposal was negotiated at arm's length and was not collusive in any way. The resolution of this Action was not hasty or achieved in a rushed fashion; this Settlement was instead the product of a long, ground-out process. Contrary to Objector Cook's characterization, this is not a case where a settlement was achieved before anything happened in the case. Prior to the Settlement, there was briefing on a motion to compel

---

[78] *Id.*

individual arbitration, a filing of a motion for class certification, and a motion to stay this matter, etc. There was also an approved settlement and an appeal in a related case, and there were outside, neutral evaluations from multiple respected and experienced mediators.

40.    Indeed, Plaintiffs and Defendant participated in arms-length negotiations, using an experienced mediator of class actions.[79]   Although the Parties did not engage in formal discovery, as explained above, Plaintiffs and Class Counsel had access to substantial amounts of documents and information that was more than enough for them to determine the potential value and associated risks of the Class's claims. Plaintiffs additionally sought assistance from a valuation expert to effectively negotiate and accurately assess the Settlement.[80]

41.    It is also probative that in both the mediation in the prior *Harper* Action and the mediation resulting in the instant Settlement, resolution was achieved through a mediator's proposal. This effectively functioned as a neutral evaluation after hearing the merits of each side's proposals, and in this case, the complexity of the many different claims and defenses. Ultimately, only this neutral evaluation was able to re-align the Parties' competing positions, which previously were at an impasse. The mediator's neutral assessment of the case and implicit approval of the Settlement further evidences the arm's length nature of the negotiations. Thus, for all of the reasons stated herein and in the briefs submitted by Plaintiffs and C.R. England, the Court finds that the negotiations were clearly at arm's-length and not collusive.

### iii.    The Relief Provided for the Class is Adequate

42.    The third criterion has prompted much discussion and examination of the Settlement that the Parties and Objector have extensively briefed. After careful review of the

---

[79] Docket No. 87-1 at 10.

[80] *Id.* at 12-13.

briefing on the Objection and the Motion for Final Approval, the Court finds that the relief provided in the Settlement is adequate, taking into account the costs, risks, and delay associated with trial and appeal, the effectiveness of the proposed method of distributing the relief to the Class, the terms of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3).

43. As a starting point, the Court finds that the Settlement provides exceptional value to the Class and is comparable or superior to the values provided by other, similar class action settlements. The proposed Settlement provides for a non-reversionary net cash payment of approximately $1,870,823.80 to a Class of 12,802 truck drivers, or approximately $146 per Participating Class Member.  In addition, Participating Class Members will receive debt forgiveness worth more than fifteen million dollars, resulting in a total average benefit per Participating Class Member of more than $1,300.  This Settlement is thus at the very least substantially similar to, and from the Court's perspective far superior to, two other previously approved class action settlements against Defendant, *Jasper et al. v. CR England, Inc.*, Case No. 2:08-cv-05266 (C.D. Cal) and the *Harper* Action, which asserted (and released) similar claims. The structure of the Settlement is also comparable to, and the value actually superior to, *Smith v. CRST Van Expedited, Inc.*, 10-CV-1116-IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013), another wage and hour class action settlement reached in a very similar case involving another nationwide trucking company. There are also numerous other cases cited by Plaintiffs and Defendant in their respective briefs where the average recovery per class member was less than or comparable to the recovery provided by the Settlement.[81]  The value of the Settlement at issue here is thus consistent with other settlements, if not considerably better.

---

[81] *See* Docket No. 84 at 12-13; Docket No. 87-1 at 14-15.

44.     The Court also disagrees with the Objector's position regarding the value of the debt relief portion of the Settlement. Contrary to Objector Cook's contentions, the Court is satisfied that the debt relief in the Settlement provides real and meaningful value to the Participating Class Members and is comparable to a monetary payment. Indeed, the Settlement's debt forgiveness is not like the coupon case referenced by Objector Cook.  Rather, the debt forgiveness here eliminates C.R. England's legal right to pursue what it views to be an enforceable and collectable amount, whether in an independent action or in this Action as a counterclaim or offset. It also alleviates the psychological strain associated with debt for the Participating Class Members.[82]

45.     The Court has also been presented with a number of cases from various jurisdictions treating debt relief dollar-for-dollar with monetary compensation when approving class action settlements,[83] and finds that approach appropriate here. Thus, the debt relief portion has real value and cannot be ignored as Objector urges.

46.     Additionally, the $53,224.21 C.R. England is adding to the Settlement, though not critical to the fairness of this Settlement, only adds to its fairness and adequacy. These additional monies will be distributed to the 126 Participating Class Members who made interest and liquidated payments exceeding the amount of their principal tuition loan balance. Again, the Court does not view this additional monetary consideration as necessary for the approval of the Settlement, but it is an indication of the lengths to which the Parties have gone in resolving the case.

---

[82] *See Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 431 (S.D. Cal. 2018), appeal dismissed sub nom. *Farrell v. Gullickson*, No 18-56370, 2018 WL 7050246 (9th Cir. Nov. 20, 2018), *and aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.*, No. 18-56272, 2020 WL 5230456 (9th Cir. Sept. 2, 2020) (unpublished).

[83] *See, e.g., Bottoni v. Sallie Mae, Inc.*, 2013 WL 12312794, at *7 (N.D. Cal. Nov. 21, 2013); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013); *Cosgrove v. Citizens Auto. Fin., Inc.*, 2011 WL 3740809, *7 (E.D. Pa. Aug. 25, 2011); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000).

47.     When one takes into account the costs, risks, and delay of trial and appeal(s) that would result if litigation continued, the adequacy of the Settlement is only enhanced. The Parties in this case certainly know the risks and associated delay of an appeal from their experiences in the *Harper* Action and its subsequent remand. For the same reason, the *Harper* Plaintiffs have first-hand knowledge of the procedural risks relating to class certification, having ultimately failed to achieve approval of their settlement due to standing and class certification issues. The Parties also provided many cases that suggest a court could deny certification with respect to all of Plaintiffs' claims.  For instance, C.R. England provided the Court with an October 2020 case involving a trucking company where class certification was denied with respect to minimum wage claims under a sleeper berth theory, wage statement claims, and waiting time penalty claims, etc.[84]

48.     Plaintiffs and Class Counsel are likewise well-acquainted with the risks presented by continued litigation.  The Court was presented, both in briefing and at oral argument, with serious questions of law and fact regarding the outcome of this matter, including but not limited to, individual arbitration agreements which on their face bar any class action litigation, class certification and other representative action difficulties, a 2018 decision from the Federal Motor Carrier Safety Administration that if upheld would eradicate Plaintiffs' meal and rest break claims, and numerous other substantive defenses to Plaintiffs' claims (including, but not limited to, federal preemption as well as the fact that certain claims may be barred as a matter of law) that could substantially impact the outcome of the litigation and result in no recovery at all for the Participating Class Members.[85] The outcome of protracted litigation is thus far from certain,

---

[84] *See Pavloff v. Cardinal Logistics Management Corp.*, No. 5:20-cv-00363-PA-KK, ECF No. 50 (C.D. Cal. Oct. 7, 2020).

[85] Docket No. 87-1 at 19-23.

and Plaintiffs face substantial risks of not prevailing on their claims and/or even being able to proceed with any group-wide claims. Further, any result that would come from proceeding with the case is likely years away, given that there are pending arbitration issues, the Parties have not yet litigated the certification issues, and in light of the fact that Defendant has an automatic right to appeal any decision contrary to its position on the arbitration issue. Thus, the value of immediate recovery here is substantial, and the possibility of future recovery for the Class is by no means likely, let alone guaranteed as Objector Cook erroneously suggests.

49.     While Objector Cook raises concerns about the possibility of flawed assumptions and misevaluations of the arbitrations risks, the potential value of a sleeper berth minimum wage theory, and the value of debt forgiveness, after examining the briefs on those issues and the case law cited therein, the Court finds that the Parties have adequately put the issues into context and that Class Counsel and Plaintiffs have thoroughly evaluated the strengths and weaknesses of the Class's claims, including the various risks that could result in no recovery at all. The reality is that there are no clear answers as to these issues, and the Court does not resolve any of those questions here. Objector Cook's Objection raises certain debatable possibilities, but he fails to show an inadequate evaluation by Plaintiffs and Class Counsel, or surprise that could harm the Class. In light of the risks, delay, and costs associated with continued litigation, the Settlement is not just adequate; it is well suited in the Court's view and provides substantial immediate benefits to the entire Class.

50.     As to the effectiveness of the proposed method of distributing relief, the Court finds it to be effective. This is not a claims-made or a coupon settlement so no amount of the funds will revert to Defendant so long as the Settlement becomes completely final and no longer capable of being appealed. Participating Class Members likewise will not need to submit a claim

form or take any other action to recover under this Settlement. On the contrary, every single Participating Class Member will receive a monetary payment.

51.     The debt relief portion of the Settlement will likewise occur automatically, without Participating Class Members needing to take any action. Moreover, the debt relief amount rolls forward as time accrues, to be capped only when the Settlement becomes completely final and no longer capable of being appealed. The Court finds that these methods of distribution benefit the Class.

52.     As to the attorney fee portion of the Settlement, it is fair and reasonable as well. Class Counsel's request for $1.44 million in attorney fees represents a mere 7.74% of the gross value of the $18.6 million Settlement. This percentage is well below the "benchmark" award of 25% recognized in the Tenth Circuit.[86] The Court finds it appropriate to include the debt relief portion of the Settlement in the gross value because the debt relief provides real and tangible benefit to Participating Class Members, and courts routinely include debt relief as part of the total settlement fund, as the cases cited by Plaintiffs demonstrate.[87] The Court thus finds the Settlement adequate to award the proposed attorneys' fees.

53.     The Court also finds that the amount of the Plaintiffs' enhancement awards are fair and reasonable under the circumstances here.  Indeed, Plaintiffs' briefing cited numerous cases where enhancement awards larger than those provided by the Settlement were approved by the court.

54.     Finally, the Court has reviewed the Settlement (i.e., the Stipulation) and finds there are no extraneous agreements that would disadvantage the Class.

---

[86] *Millsap v. McDonnel Douglas Corp.*, 2003 WL 21277124, at *6-7 (N.D. Okla. May 28, 2003).

[87] *See, e.g.*, *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013).

55.     Thus, for all of the reasons stated herein and in the briefs submitted by Plaintiffs and C.R. England, the Court finds that relief provided to the Class is adequate.

### iv.     The Settlement Treats Class Members Equitably Relative to Each Other

56.     The fourth and final criterion of the Rule 23(e) analysis has also been briefed extensively by the Parties and Objector. Based on a careful review of the Settlement and the briefing as well as what was discussed at oral argument on October 26, 2020, the Court finds that the Settlement treats Class Members equitably in relation to each other. Under the Settlement, Participating Class Members will each receive a pro rata share of the Settlement's cash payment according to the number of workweeks the individual Participating Class Member worked. Likewise, the debt relief portion of the Settlement provides the greatest benefit to those Class Members subject to the greatest amount of interest and liquidated damages. C.R. England has further agreed to add $53,224.21 to the Settlement to reimburse those 126 Participating Class Members who paid interest and liquidated damages beyond their principal tuition loan balance. Accordingly, for all of the reasons stated herein and the briefs submitted by Plaintiffs and C.R. England, the Court finds the proposed distribution proportional and equitable to the Class in relation to each other.

57.     The Court further notes that it is impossible in a class action to treat every individual as they would be treated in individual litigation. The benefit of a class action is to provide due and adequate consideration for a large number of individuals in an efficient and equitable manner of distribution. The Court finds that this objective has clearly been met here as shown by the Parties' Settlement.

58.     Further, the Court notes that the concerns Objector raises do not actually apply to him. He is therefore raising theoretical concerns that have no application at all to his personal

situation.  Moreover, no individual actually affected by Objector's concerns has objected or

opted out of the Settlement. Indeed, there has been an adequate opportunity for exclusion or

objection by Class Members that feel the Settlement is inadequate based on their individual

circumstances related to the debt relief, yet none of them have raised any issue at all with the

Settlement. The Court thus finds it notable that the overwhelming majority of Class Members

apparently want the Settlement to be approved.

### E.  The Settlement Further Meets the Requirements of *Rutter & Wilbanks v. Shell Oil Co.*

59.      In the Tenth Circuit, courts likewise consider the following factors in determining

whether a proposed settlement is fair, reasonable, and adequate: "(1) whether the proposed

Settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact

exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an

immediate recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the Settlement is fair and reasonable."[88] The

Court finds that each of these factors weighs heavily in favor of approval.

60.      First, as explained above, the Parties have fairly and honestly negotiated the

Settlement.  The Parties reached this Settlement following meaningful exchange of information

and investigation conducted by Class Counsel. The Settlement is the result of serious, informed,

adversarial, and arms-length negotiations between the Parties.

61.       Second, serious questions of law and fact exist. As set forth more completely

above and in the Parties' briefing, all of which is incorporated by reference, there are significant

risks associated with arbitration, class certification, federal preemption, and numerous other

---

[88] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (applying *Rutter* factors following the 2018 amendments to Fed. R. Civ. P. 23(e)).

substantive defenses.  This is a complex litigation with significant uncertainty in the law on a number of issues. The adequacy concerns Objector Cook raises, while possible, are akin to bar exam questions with no guarantee of result. The ultimate outcome of the litigation is in serious doubt and fairly debatable, which leads to good, negotiated settlements like the one before the Court.

62.     Third, the value of the immediate recovery under the Settlement outweighs the possibility of future relief after protracted and expensive litigation. This litigation commenced in 2016, and, as explained above, any judicial resolution is still likely years away. Immediate recovery under the Settlement is considerably preferable here to only a potential for recovery many years into the future.

63.     Fourth, the judgement of the Parties to the litigation is that the Settlement is fair and reasonable. Experienced counsel for Plaintiffs (which include multiple law firms and numerous lawyers) and Defendant have affirmed as much, given the substantial risk and uncertainty of the outcome of the case on individual arbitration, class certification, preemption, liability, and other substantive issues/defenses. The Court further notes that based on its review of the briefing submitted regarding the Objection and the Settlement, Plaintiffs and Class Counsel's conclusions and evaluations of the risks and uncertainties in this case appear to be well-founded.

64.     Accordingly, the Court finds that the proposed Settlement should be finally approved.  The terms of the Settlement are in all respects fair, adequate, and reasonable. The Court has considered all of the evidence presented, including evidence regarding the strength of the Plaintiffs' case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in the Settlement; and the extent of investigation and

informal discovery completed. The Court has further considered that only one Class Member (Marty Cook) submitted an objection to the Settlement and only eight (8) Class Members submitted valid and timely requests to be excluded from the Class. Accordingly, the Parties and the Settlement Administrator are directed to perform their respective obligations in accordance with the terms set forth in the Stipulation and this Order.

## IV.    ORDER

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

65.    The Court grants final approval of the Parties' Settlement on the terms set forth in the Stipulation.

66.    Except as to any individual claim of those eight persons who have validly and timely requested exclusion from the Class and the Settlement, all of the Claims asserted in the above-captioned Action are dismissed with prejudice as to the Plaintiffs and the Participating Class Members.  The Parties are to bear their own attorneys' fees and costs, except as otherwise provided in the Stipulation.

67.    By this Order and accompanying Judgment, the Plaintiffs are hereby bound by and subject to the general release described in Section XXII.A of the Stipulation. Among other things, this means that Plaintiffs, on behalf of themselves and their estates, executors, administrators, heirs and assigns, hereby release, discharge, and agree to hold harmless C.R. England and any of its parent companies, subsidiaries, divisions and other affiliated or related entities, past and present, as well as all of the aforementioned entities' (including, but not limited to, C.R. England's) employees, officers, directors, agents, attorneys, insurers, partners, shareholders, owners, representatives, joint venturers and successors and assigns of each (i.e., the Released Parties), from any and all claims, damages, costs, obligations, causes of action, actions,

demands, rights, and liabilities of every kind, nature and description whatsoever, whether known or unknown, whether anticipated or unanticipated, arising on or before the end of the Class Period ("Plaintiffs' Released Claims").

68.     By this Order and accompanying Judgment, Participating Class Members are hereby bound and subject to the release described in Section XXII.B of the Stipulation.  Among other things, this means that upon the Effective Date of the Settlement, each and every Participating Class Member hereby releases, discharges, and agrees to hold harmless C.R. England and all of the other Released Parties, and each of them, from any and all Claims (as that term is defined in Section II.G of the Stipulation) that have been asserted, or could have been asserted, up through and including the last day of the Class Period based upon the facts or allegations pled in any of the Complaints filed in the Lawsuits ("Claims Released By Participating Class Members").

69.     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (i) is or may be deemed to be or may be cited or used as an admission of, or evidence of, the validity of any of the released claims described above, any wrongdoing or liability of C.R. England or any of the Released Parties, or whether class action certification or any other group-wide status of any kind is warranted in this Action or any other proceeding or that decertification is not warranted in this Action or any other proceeding; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendant or any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency, arbitration, or other tribunal of any kind, nature, or description whatsoever.  Defendant may file this Decision and Order and the accompanying Judgment from

the above-captioned matter in any other action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

70.     The Action is dismissed on the merits and with prejudice, permanently barring the Plaintiffs and Participating Class Members from prosecuting any of the Claims Released by Participating Class Members against Defendant or any of the other Released Parties.  Plaintiffs are further barred from prosecuting any of Plaintiffs' Released Claims.

71.     The Court hereby confirms the appointment of Plaintiffs as Class Representatives for the Class for purposes of the Settlement.  The Court hereby confirms the appointment of the law firms of Blumenthal Nordrehaug Bhowmik De Blouw LLP and The Van Vleck Law Firm as Class Counsel for the Class for purposes of Settlement and the releases and other obligations therein.

72.     Pursuant to the Stipulation, Defendant shall pay the Settlement Payment in the amount of Three Million Six Hundred Thousand Dollars and No Cents ($3,600,000.00) and shall forgive the Class Members' debts as specified in Section XX of the Stipulation.  Defendant shall not be required to make any other payments of any kind in connection with the Settlement, except for the additional monetary payment described in the following paragraph of this Order.

73.     Pursuant to its statements in the Reply of C.R. England in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Response to Supplemental Brief Filed by Objector Marty Cook[89] and its representations made at the Fairness Hearing held on October 26, 2020, C.R. England shall pay an additional payment equal to Fifty-Three Thousand, Two

---

[89] Docket No. 93.

Hundred Twenty-Four Dollars and Twenty-One Cents ($53,224.21) (the "Additional Payment"). The Additional Payment shall be distributed by the Settlement Administrator to the 126 Participating Class Members who made a payment to C.R. England in an amount exceeding the principal of their tuition loan balance.

74.     The Court finds that the plan of allocation for the Settlement Payment set forth in the Stipulation is fair and reasonable and that distribution of the Settlement Payment shall be made in accordance with the terms outlined in the Stipulation, subject to the following:

75.     The Court hereby awards to Class Counsel attorneys' fees of $1,440,000.00 and costs of $90,000.

76.     The Court hereby approves the payment of settlement administration costs in the amount of $74,146.00 to the Settlement Administrator for services rendered in connection with the Settlement.

77.     The Court hereby awards to Plaintiffs the Service Payments in the amount of $12,000.00 each for their contributions to the Action, the risks they undertook to represent the Class, and for their execution of general releases.

78.     The Court hereby approves the payment in the amount of $54,000.00 to the California Labor and Workforce Development Agency ("LWDA") for its 75% portion of the Private Attorney General Act claims released by this Settlement, with the remaining 25% portion (or $18,000.00) being paid to the Participating Class Members on a pro rata basis based on the number of workweeks worked by each individual.

79.     The Settlement Administrator is directed to make the foregoing payments to Class Counsel, the Settlement Administrator, the Plaintiffs, and the LWDA in accordance with the terms of the Stipulation.  These payments shall come out of the Qualified Settlement Fund.  After

deducting the foregoing, the remaining funds shall constitute the Net Qualified Settlement Fund ("Net QSF"), and the Settlement Administrator shall distribute the Net QSF to the Participating Class Members pursuant to the terms of the Stipulation.

80.     All checks sent to Participating Class Members that remain uncashed after one hundred eighty (180) days, will be paid forthwith to the California Controller's Unclaimed Property Fund in the name of the Participating Class Member.

81.     This Action is hereby dismissed with prejudice.  The Court reserves and retains exclusive and continuing jurisdiction over the above-captioned Action, the Class Representatives, the Class, Class Counsel, and Defendant solely for the purposes of supervising the implementation, effectuation, enforcement, construction, administration and interpretation of the Settlement and this Decision and Order and accompanying Judgment.

82.     Pursuant to the Stipulation, the Court also dismisses with prejudice the Declaratory Relief Action captioned *William Gradie v. C.R. England, Inc.*, Case No. 2:16-cv-001015-DN (D. Utah), which was consolidated with the Action.

IT IS SO ORDERED.

Signed November 20, 2020.

BY THE COURT

David Nuffer
United States District Judge